KEKER, VAN NEST & PETERS LLP
PAVEN MALHOTRA - # 258429
pmalhotra@keker.com
MATAN SHACHAM - # 262348
mshacham@keker.com
WILLIAM S. HICKS - # 256095
whicks@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:     415 391 5400
Facsimile:      415 397 7188

Attorneys for Defendant Facebook, Inc.

UNITED STATES DISTRICT COURT

DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| CHRISTOPHER KING, JD A/K/A KingCast,_<br><br>Plaintiff,<br><br>v.<br><br>FACEBOOK, INC.,<br><br>Defendant. | Case No. 3:19-cv-01987-WHO<br><br>**DEFENDANT FACEBOOK, INC.'S OPPOSITION TO PLAINTIFF'S MOTION FOR INJUNCTIVE RELIEF**<br><br>Date:          June 5, 2019<br>Time:         2p.m.<br>Judge:        Hon. William H. Orrick, Jr.<br>Dept.:         Courtroom 2<br><br>Date Filed: April 12, 2019<br><br>Trial Date:  Not Set |

# TABLE OF CONTENTS

**PAGE(S)**

I. INTRODUCTION ................................................................................................................1

II. BACKGROUND ..................................................................................................................2

III. LEGAL STANDARD............................................................................................................4

IV. ARGUMENT ........................................................................................................................5

    A. Plaintiff Is Not Likely to Succeed on the Merits Because His Defamation Claim Is Barred by Section 230(c)(1) of the CDA ..................................................5

        1. Facebook is an interactive computer service provider................................6

        2. The content at issue was provided by someone other than Facebook .........6

        3. Plaintiff's defamation claim seeks to hold Facebook liable for "exercise of a publisher's traditional editorial functions" ...........................7

    B. Plaintiff has Failed to Establish Any of the Remaining *Winter* Factors..................9

V. CONCLUSION....................................................................................................................10

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Am. Passage Media Corp. v. Cass Commc'ns, Inc.*,
    750 F.2d 1470 (9th Cir. 1985) ...................................................................................................9

*Barnes v. Yahoo!, Inc.*,
    570 F.3d 1096 (9th Cir. 2009), *as amended* (Sept. 28, 2009) ............................................1, 5, 7

*Caraccioli v. Facebook, Inc.*,
    700 F. App'x 588 (9th Cir. 2017) ........................................................................................5, 6, 7

*Carafano v. Metrosplash.com, Inc.*,
    339 F.3d 1119 (9th Cir. 2003) ...................................................................................................5

*Caribbean Marine Servs. Co. v. Baldrige*,
    844 F.2d 668 (9th Cir. 1988) .....................................................................................................9

*Columbus Bar Ass'n v. King*,
    766 N.E.2d 131 (Ohio 2002) .....................................................................................................2

*Crane v. McDonald*,
    2011 WL 3875645 (E.D. Cal. Aug. 31, 2011) ........................................................................10

*In re Excel Innovations, Inc.*,
    502 F.3d 1086 (9th Cir. 2007) ...................................................................................................9

*Fields v. Twitter, Inc.*,
    217 F. Supp. 3d 1116 (N.D. Cal. 2016) (Orrick, J.), *aff'd*, 881 F.3d 739 (9th
    Cir. 2018) ...............................................................................................................................1, 6

*Garcia v. Google, Inc.*,
    786 F.3d 733 (9th Cir. 2015) ..................................................................................................4, 8

*Gaston v. Facebook, Inc.*,
    2012 WL 629868 (D. Or. Feb. 2, 2012) ..................................................................................5, 7

*Igbonwa v. Facebook, Inc.*,
    2018 WL 4907632 (N.D. Cal. Oct. 9, 2018) ....................................................................*passim*

*Jefferson v. Zukerberg*,
    2018 WL 3241343 (D. Md. July 3, 2018) ...............................................................................5, 7

*Kimzey v. Yelp! Inc.*,
    836 F.3d 1263 (9th Cir. 2016) ...................................................................................................6

*King v. Rumbaugh*,
  2017 WL 1283501 (W.D. Wash. Apr. 6, 2017), *motion for relief from judgment denied*, 2017 WL 2443769 (W.D. Wash. June 6, 2017), *appeal dismissed for failure to prosecute*, 2017 WL 6879998 (9th Cir. Nov. 28, 2017) ..................2

*KingCast.net v. Kelly Ayotte Senate Campaign, et al.*,
  No. 1:10-CV-00492 (D.N.H. filed October 27, 2010) ..................2

*Klayman v. Zuckerberg*,
  753 F.3d 1354 (D.C. Cir. 2014) ..................6

*La'Tiejira v. Facebook, Inc.*,
  272 F. Supp. 3d 981 (S.D. Tex. 2017), *appeal dismissed*, 2018 WL 1224417 (5th Cir. Feb. 15, 2018) ..................5, 7

*Perfect 10, Inc. v. CCBill LLC*,
  481 F.3d 751 (9th Cir. 2007), *opinion amended and superseded on denial of reh'g*, 488 F.3d 1102 (9th Cir. 2007) ..................5

*Ransom v. Hubbard*,
  2011 WL 4345863 (E.D. Cal. Sept. 15, 2011) ..................10

*Sikhs for Justice "SFJ", Inc. v. Facebook, Inc.*,
  144 F. Supp. 3d 1088 (N.D. Cal. 2015) ..................6

*Taleff v. Sw. Airlines Co.*,
  828 F. Supp. 2d 1118 (N.D. Cal. 2011) ..................10

*Winter v. Natural Res. Def. Council*,
  555 U.S. 7 (2008) ..................4, 9

*Zeran v. Am. Online, Inc.*,
  129 F.3d 327 (4th Cir. 1997) ..................7

**State Cases**

*Cross v. Facebook, Inc.*,
  14 Cal. App. 5th 190, 206 (2017) ..................6

*King v. Academy of Canine Behavior*,
  No. 18-2-19210-2 (Wash. Super., filed August 1, 2018) ..................2

*King v. City of Quincy*,
  No. CV2015-01392 (Mass. Super. filed October 28, 2015) ..................2

*King v. City of Seattle*,
  No. 18-2-22718-6 (Wash. Super., filed September 11, 2018) ..................2

*King v. McKenna*,
   2015 WL 4040437 (Del. Super. June 29, 2015), *motions to alter or amend judgment and for relief from judgment denied*, 2015 WL 5168481 (Del. Super. Aug. 24, 2015) ............................................................................................................2

**Federal Statutes**

42 U.S.C. § 1981 ...........................................................................................................................3

47 U.S.C. § 230(c)(1) ........................................................................................................5, 6, 7, 8

47 U.S.C. § 230(f)(2) ....................................................................................................................6

47 U.S.C. § 230(f)(3) ....................................................................................................................6

Communications Decency Act, 47 U.S.C. § 230 .............................................................1, 5, 6, 8

**Rules**

Rule 41 ..........................................................................................................................................3

**Other Authorities**

https://howtosuefacebook.blogspot.com .................................................................................2, 3

I.  **INTRODUCTION**

*Pro se* plaintiff Christopher King seeks the "extraordinary remedy" of a preliminary injunction because he wishes to unmask another Facebook user who allegedly posted offensive statements about him to his current and former girlfriends. *See* Dkt. No. 5, ¶ 69 ("I have a VALID CLAIM FOR DEFAMATION ON MY OWN. So you need to give me that goddamn information right now. . . . [T]he offending Party—who will be sued—removed the content so it is no longer available…"); *see* Dkt. No. 6-3 (Proposed Order). Notwithstanding that Facebook did not author the posts at issue, Plaintiff contends that Facebook nevertheless has defamed him by purportedly "allowing" the third-party content to be posted. The Court should deny Plaintiff's unprecedented motion because he has failed to demonstrate ***any*** of the four elements required for issuance of a preliminary injunction.

First, Plaintiff has failed to demonstrate the threshold requirement that he is likely to succeed on the merits, because Facebook is immune from Plaintiff's underlying defamation claim under federal law. In 1996, Congress passed the Communications Decency Act ("CDA"), 47 U.S.C. § 230, to protect internet platforms like Facebook against lawsuits seeking to hold them liable for content posted by third parties. Since then, courts have routinely dismissed defamation claims, like the one asserted here, that seek to treat an internet platform as the publisher of third-party content. *See, e.g.*, *Igbonwa v. Facebook, Inc.*, 2018 WL 4907632, at *1–2 (N.D. Cal. Oct. 9, 2018) (dismissing with prejudice defamation claim against Facebook based on offensive content posted by third-party Facebook user). This not surprising because, as the Ninth Circuit and this Court have recognized, Congress enacted CDA Section 230, in part, to respond to a state court decision holding that an internet service provider could be liable for defamation. *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1101 (9th Cir. 2009), *as amended* (Sept. 28, 2009); *Fields v. Twitter, Inc.*, 200 F. Supp. 3d 964, 969 (N.D. Cal. 2016) (Orrick, J.) ("Congress enacted section 230(c)(1) in part to respond to a New York state court decision, *Stratton Oakmont, Inc. v. Prodigy Servs. Co.*, 1995 WL 323710 (N.Y. Sup. Ct. May 24, 1995), finding that an internet service provider could be held liable for defamation based on third-party content posted on its message boards."). Because Plaintiff's defamation claim is barred by CDA Section 230, his motion for injunctive

relief based on that claim likewise fails.

Moreover, even if Plaintiff could demonstrate a likelihood of success on the merits (which he cannot), his motion still must be denied because he has failed to demonstrate any of the other requirements for injunctive relief—namely, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest. Plaintiff's showing with respect to these factors consists entirely of conclusory assertions that are insufficient, as a matter of law, to carry his burden.

## II.     BACKGROUND

Facebook operates the world's leading social media service. Over two billion people worldwide use Facebook to create personal profiles, build community, and share content.

Plaintiff Christopher King is a frequent litigant in state and federal courts around the country[1] and maintains a number of websites and blogs, including https://howtosuefacebook.blogspot.com. Notwithstanding that Plaintiff touts his prior work in government and private practice law in Ohio, he was previously suspended from the practice of law in Ohio due to "numerous sanctions that [he] received during his term of probation for his conduct in several courts."[2]

In November 2018, Plaintiff sued Facebook in King County Superior Court (Washington), asserting many of the claims that he asserts in this case. *See* Case No. 18-2-28075-3, filed November 7, 2018. Case No. 18-2-28075-3 (King Co. Super. Ct.). Plaintiff voluntarily dismissed,

---

[1] *See, e.g.*, *King v. City of Seattle*, No. 18-2-22718-6 (Wash. Super., filed September 11, 2018); *King v. Academy of Canine Behavior*, No. 18-2-19210-2 (Wash. Super., filed August 1, 2018); *King v. Rumbaugh*, 2017 WL 1283501, at *8 (W.D. Wash. Apr. 6, 2017) (granting defendant's motion to dismiss and dismissing King's complaint with prejudice), *motion for relief from judgment denied*, 2017 WL 2443769 (W.D. Wash. June 6, 2017), *appeal dismissed for failure to prosecute*, 2017 WL 6879998 (9th Cir. Nov. 28, 2017); *King v. City of Quincy*, No. CV2015-01392 (Mass. Super. filed October 28, 2015); *King v. McKenna*, 2015 WL 4040437, at *10 (Del. Super. June 29, 2015) (granting defendants' motions for judgment on the pleadings), *motions to alter or amend judgment and for relief from judgment denied*, 2015 WL 5168481, at *11 (Del. Super. Aug. 24, 2015); *KingCast.net v. Kelly Ayotte Senate Campaign, et al.*, No. 1:10-CV-00492 (D.N.H. filed October 27, 2010).

[2] *Columbus Bar Ass'n v. King*, 766 N.E.2d 131, 133 (Ohio 2002) (ordering the suspension of King from the practice of law due to "numerous sanctions that [he] received during his term of probation for his conduct in several courts").

with prejudice, his claim for violation of 42 U.S.C. § 1981. *See* 11/13/2018 Stipulation and Rule 41 Dismissal of Sole Federal Claim ("[Plaintiff] further hereby DISMISSES his 42 U.S.C. § 1981 Claim with Prejudice"). The Washington court later dismissed the remaining claims for improper venue, but not before ordering Plaintiff to pay Facebook's fees and costs incurred to respond to a premature discovery motion. *See id*, 2/21/2019 Order at 2 ("[T]he court is unable to find that the Plaintiff's motion was 'substantially justified or that other circumstances make an award of expenses unjust.'"); 2/25/2019 Order (awarding Facebook fees and costs pursuant to CR 37(A)(4)). On March 25, 2019, after denying Plaintiff's motion seeking relief from the imposition of attorneys' fees, the court entered final judgment against Plaintiff in the amount of $2504.49 plus interest. 3/25/2019 Order Denying Motion for Reconsideration; 3/25/2019 Judgment. Plaintiff has yet to pay that judgment.

Shortly after dismissal of the Washington action, on April 12, 2019, Plaintiff filed a substantially similar suit against Facebook in this Court "to help hold Facebook accountable to its Terms of Service Contractual arrangements, on an objective basis, free from racism and cultural hegemony." *See* Dkt. No. 1 at 1. Plaintiff asserted six causes of action in his initial complaint, including a claim for violation of 42 U.S.C. § 1981, which Plaintiff had previously dismissed ***with prejudice*** in the Washington action. *See* Case No. 18-2-28075-3 (King Co. Super. Ct.), 11/13/2018 Stipulation and Rule 41 Dismissal of Sole Federal Claim.

On April 22, 2019, Plaintiff filed a First Amended Complaint ("FAC") purporting to assert an additional claim for "Subornation of Defamation, Internet Stalking, Cyber-Bullying and Invasion of Privacy." Dkt. No. 5 at 27. With respect to that claim, Plaintiff alleges that Facebook "allowed Defamatory remarks to be published to Plaintiff's last girlfriend 'MH' in 2018 without recourse from Facebook User 'Troy.'" *See* FAC, ¶ 65. He also alleges that, in 2019, "[Facebook] and Counsel in this case again allowed such Defamatory remarks to be leveled against Plaintiff towards his current girlfriend 'SW' by two Facebook accounts 'Facebook User' and 'Lisa Marie.'" *Id*., ¶ 66. Plaintiff contends that "[t]he comments in 2018 and in 2019 all indicate, with certainty devoid of any speculation, that Plaintiff 'cheats on all of his women' and 'Every single woman that he as dated he has used and mentally abused.'…. and goes on to state that Plaintiff

seeks out white women as gullible, to use for money etc. etc. ad nauseam, basically every negative racist stereotype of black men in this Fine Country." *Id.*, ¶ 67.

Concurrent with the filing of his FAC, Plaintiff also filed the instant motion for preliminary injunction based on his defamation claim. *See* Dkt. No. 6-1 ("PI Motion") at 5. In it, plaintiff asserts that he has been "materially harmed by the[] intentionally malicious and materially false comments targeted at his lovers [by other Facebook users]" and that he is "seeking emotional counseling from this racist, culturally hegemonic and defamatory conduct that has invaded not only his privacy but that of his last two (2) girlfriends and his present girlfriend." PI Motion at 6.

To remedy these alleged injuries, and to prevent the irreparable harm that he purportedly may suffer absent injunctive relief, Plaintiff seeks an order requiring Facebook "to provide any and all identifying information relating to the Facebook User Profiles identified as 'Troy Frasier,' 'Facebook User' and 'Lisa Marie.'" Dkt. No. 6-3 (Proposed Order).

### III.     LEGAL STANDARD

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 24 (2008). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Id.* at 20. The first *Winter* factor—likely success on the merits—is the most important. *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015). Because it is a threshold inquiry, when "a plaintiff has failed to show the likelihood of success on the merits," courts "need not consider the remaining three [*Winter* elements]." *Id.* (internal quotations and citations omitted).

Where, as here, a plaintiff seeks a mandatory injunction (*i.e.*, an injunction ordering the responsible party to take some affirmative action), the plaintiff "must establish that the law and facts ***clearly favor*** her position, not simply that she is likely to succeed." *Garcia*, 786 F.3d at 740 (emphasis in original). Such mandatory injunctions are "particularly disfavored" because they go "well beyond simply maintaining the status quo *pendente lite*." *Id.*

IV.     **ARGUMENT**

    A.     **Plaintiff Is Not Likely to Succeed on the Merits Because His Defamation Claim Is Barred by Section 230(c)(1) of the CDA**

Plaintiff's request for injunctive relief fails at the outset because it is predicated entirely on a defamation claim that is barred by Section 230(c)(1) of the CDA. 47 U.S.C. § 230(c)(1). At its core, Plaintiff's defamation claim seeks to hold Facebook responsible for content posted on its platform by third parties—something that Section 230(c)(1) directly prohibits.

Section 230(c)(1) provides that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). Section 230(c)(1) "establish[es] broad federal immunity to any cause of action that would make service providers liable for information originating with a third-party user of the service." *Perfect 10, Inc. v. CCBill LLC*, 481 F.3d 751, 767 (9th Cir. 2007) (internal quotations and citations omitted), *opinion amended and superseded on denial of reh'g*, 488 F.3d 1102 (9th Cir. 2007). Immunity extends to activities of a service provider, such as "reviewing, editing, and deciding whether to publish or to withdraw from publication third-party content." *Barnes*, 570 F.3d at 1102. "[S]o long as a third party willingly provides the essential published content, the interactive service provider receives full immunity regardless of the editing or selection process." *Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1124 (9th Cir. 2003) (affirming dismissal of defamation claim under CDA Section 230(c)(1)).

Courts routinely dismiss defamation claims against interactive computer service providers, including Facebook, given the protections afforded by CDA Section 230(c)(1). *See, e.g.*, *Caraccioli v. Facebook, Inc.*, 167 F.Supp.3d 1056, 1066 (N.D. Cal. 2016), *aff'd*, 700 F. App'x 588, 590 (9th Cir. 2017); *Igbonwa*, 2018 WL 4907632, at *1–2; *La'Tiejira v. Facebook, Inc.*, 272 F. Supp. 3d 981, 992–95 (S.D. Tex. 2017), *appeal dismissed*, 2018 WL 1224417 (5th Cir. Feb. 15, 2018); *Gaston v. Facebook, Inc.*, 2012 WL 629868, at *7 (D. Or. Feb. 2, 2012), *report and recommendation adopted*, 2012 WL 610005 (D. Or. Feb. 24, 2012); *Jefferson v. Zukerberg*, 2018 WL 3241343, at *4–5 (D. Md. July 3, 2018). Indeed, as this Court has previously recognized, "[t]he prototypical cause of action seeking to treat an interactive computer

service provider as a publisher or speaker is defamation." *Fields v. Twitter, Inc.*, 217 F. Supp. 3d 1116, 1121 (N.D. Cal. 2016) (Orrick, J.), *aff'd*, 881 F.3d 739 (9th Cir. 2018).

Facebook is entitled to immunity under Section 230(c)(1) if (1) it is a "provider . . . of an interactive computer service," (2) the allegedly offending content was "provided by another information content provider," and (3) Plaintiffs' claim treats Facebook as the "publisher" of that content. 47 U.S.C. § 230(c)(1); *accord Kimzey v. Yelp! Inc.*, 836 F.3d 1263, 1268 (9th Cir. 2016). Plaintiff's FAC, and his motion for preliminary injunction, reveals that all three requirements for Section 230(c)(1) immunity are met.

### 1. Facebook is an interactive computer service provider

Facebook undoubtedly qualifies as a "provider" of an "interactive computer service." The CDA defines "interactive computer service" as "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server." 47 U.S.C. § 230(f)(2). Not surprisingly, every court to consider whether Facebook meets this definition has rightly concluded that it does. *See e.g., Igbonwa*, 2018 WL 4907632, at *5; *Sikhs for Justice "SFJ", Inc. v. Facebook, Inc.*, 144 F. Supp. 3d 1088, 1093 (N.D. Cal. 2015); *Caraccioli*, 167 F. Supp. 3d at 1065; *Cross v. Facebook, Inc.*, 14 Cal. App. 5th 190, 206 (2017).

Here, the FAC itself alleges that Facebook "is without question the largest single platform in existence for social media and the marketplace of ideas." *See, e.g.*, FAC, ¶ 3. The first requirement for Section 230(c)(1) immunity is thus met.

### 2. The content at issue was provided by someone other than Facebook

For the second requirement, the content at issue must come from an "information content provider" other than Facebook. "Information content provider" is broadly defined as "any person or entity that is responsible, in whole or in part, for the creation or development" of the content at issue. 47 U.S.C. § 230(f)(3). Facebook's users fit this definition, as numerous courts have held. *See, e.g.*, *Igbonwa*, 2018 WL 4907632, at *6; *Klayman v. Zuckerberg*, 753 F.3d 1354, 1358–59 (D.C. Cir. 2014); *Sikhs for Justice*, 144 F. Supp. 3d at 1093–94; *Caraccioli v. Facebook, Inc.*, 700 F. App'x 588, 590 (9th Cir. 2017).

Here, because Plaintiff "alleges that the offensive posts were [created] by other Facebook

users and does not allege that Facebook had any role in creating the content of the posts," the "second requirement is met." *Igbonwa*, 2018 WL 4907632, at *6 (requirement met where plaintiff alleged that "the offensive posts were [created] by other Facebook users and [did] not allege that Facebook had any role in creating the content of the posts"); *Jefferson*, 2018 WL 3241343, at *5 (requirement met where "nothing in the Complaint suggests that Facebook was itself 'responsible' for the 'creation' or 'development' of any content"); *see also* PI Motion at 2 (alleging that alleged defamatory remarks were posted by Facebook users "Troy," "Facebook User," and "Lisa Marie"); FAC, ¶¶ 65-67.

### 3. Plaintiff's defamation claim seeks to hold Facebook liable for "exercise of a publisher's traditional editorial functions"

The third requirement for Section 230(c)(1) immunity is met if a plaintiff "seek[s] to hold a service provider liable for its exercise of a publisher's traditional editorial functions—such as deciding whether to publish, withdraw, postpone or alter content." *Zeran v. Am. Online, Inc.*, 129 F.3d 327, 330 (4th Cir. 1997) (holding that Section 230(c)(1) barred defamation claim against internet service provider based on content provided by third party). In determining whether the third requirement is met, "what matters is not the name of the cause of action" but rather "whether the cause of action inherently requires the court to treat the defendant as the 'publisher or speaker' of content provided by another." *Barnes*, 570 F.3d at 1101–02. If "the duty that the plaintiff alleges the defendant violated derives from the defendant's status or conduct as a 'publisher or speaker,'" then "[S]ection 230(c)(1) precludes liability." *Id.* at 1102.

Here, Plaintiff's defamation claim seeks to hold Facebook liable for, and is derived from, Facebook's "exercise of a publisher's traditional editorial functions—such as deciding whether to publish, withdraw, postpone or alter content." *Zeran,* 129 F.3d at 330. Plaintiff alleges that Facebook improperly "allowed Defamatory remarks to be published." FAC, ¶¶ 65-66; *see also id.*, ¶¶ 67-71; PI Motion at 2-3. But such conduct falls squarely with the "exercise of a publisher's traditional editorial function." *See, e.g., Caraccioli*, 167 F.Supp.3d at 1066; *Igbonwa*, 2018 WL 4907632, at *1–2; *La'Tiejira,* 272 F. Supp. 3d at 992–95; *Gaston,* 2012 WL 629868, at *7; *Jefferson*, 2018 WL 3241343, at *4–5.

In *Igbonwa*, for instance, the plaintiff sued Facebook for defamation (among other claims) alleging that Facebook allowed other Facebook users to post falsehoods about him on the platform. 2018 WL 4907632, at *1. The falsehoods allegedly contained in the posts "rang[ed] from criminal activities that never took place to falsehoods about Plaintiff's personal life, and include[d] allegations that he is a money-launderer, a wife beater, and a scammer." *Id*.; *see also id*. at *2. To remedy the alleged defamation, the plaintiff sought money damages and an order compelling Facebook, among other things, to "unmask the true identity [of the Facebook users who allegedly posted the defamatory content] so that he or she would face the ramification of their ill action." *Id*. at *2. The Court concluded that all of the claims (including defamation) were barred by Section 230(c)(1) and dismissed the complaint with prejudice. *Id*. at *7. As the court explained:

> [A]ll of [Plaintiff's] claims turn on the theory that [Facebook] wrongfully permitted third parties to post defamatory and threatening statements about him and refused to remove the content or provide . . . the information he needed to pursue claims against the individuals directly. The harm he alleges though (injury to his reputation and being subject to harassment and death threats) is the result of the *content* of the posts, not the mere fact that [Facebook] permitted third parties to post statements about [Plaintiff]. Because [Plaintiff] can only establish causation of harm on his claims based on the content of the messages that were posted, the Court concludes that all of his claims treat [Facebook] as [a] publisher.

*Id*. (emphasis in original).

So too here. Just as in *Igbonwa*, Plaintiff seeks to hold Facebook liable for allowing defamatory content to be posted by third parties. And, just as in *Igbonwa*, he seeks injunctive relief requiring Facebook to "unmask" the Facebook user(s) who allegedly posted the offending content. Because Plaintiff's defamation claim falls squarely within the immunity provided by Section 230(c)(1), as a matter of law, Plaintiff cannot establish *any* probability of success on the merits—much less "that the law and facts **clearly favor** [his] position." *Garcia*, 786 F.3d at 740.[3]

---

[3] Plaintiff relies on two inapposite state court cases—*Dial v. Hammond* and *Charles v. Vest*—for the sweeping proposition that "[d]efamation on the platform is actionable." PI Motion at 1, 5. But those cases have no application here because each involved allegations of defamation **against the author of the defamatory content**—not Facebook. *See Vest*, 90 N.E. 667, 669-72 (Ind. Ct. App. 2017); *Hammond*, 2017 WL 1423288, at *1 (N.C. Super. Feb. 8, 2017). Neither case sought to hold Facebook liable for hosting the posts at issue and neither case involved application of CDA Section 230.

### B. Plaintiff has Failed to Establish Any of the Remaining *Winter* Factors

Even if Plaintiff could establish that he is likely to prevail on the merits (which he cannot), issuance of a preliminary injunction would still be improper because Plaintiff has failed to carry his burden with respect to any of the three remaining *Winter* factors.

Plaintiff's showing regarding irreparable harm (the second *Winter* factor), for instance, consists of nothing more than a promise to provide evidence at a later date. *See* PI Motion at 6 ("[Plaintiff] continues to suffer irreparable mental and emotional harm from this, and his emotional counselors will testify to same as expert witnesses at Trial."). But a plaintiff must do more than merely allege irreparable harm to qualify for injunctive relief. *See Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988). Instead, a plaintiff must present admissible **evidence** to demonstrate an **immediate threatened injury**. *Id.; Am. Passage Media Corp. v. Cass Commc'ns, Inc.*, 750 F.2d 1470, 1473 (9th Cir. 1985) (reversing the entry of a preliminary injunction because the movant had adduced no evidence of irreparable harm).

Here, because Plaintiff has failed to present any evidence of an immediate threatened injury, issuance of a preliminary injunction would be "inconsistent with [the Supreme Court's] characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22; *see also, e.g., In re Excel Innovations, Inc.*, 502 F.3d 1086, 1098 (9th Cir. 2007) ("Speculative injury cannot be the basis for a finding of irreparable harm.").[4]

Plaintiff's showing on the third and fourth *Winter* elements—the balance of equities and the public interest—is also facially inadequate. As with the first two elements, Plaintiff provides nothing but conclusory assertions that are insufficient, as a matter of law, to carry his burden. *See*

---

[4] Plaintiff's bald assertion in his declaration that he "has been in emotional counseling for issues relating to racism and continues to be materially harmed by this conduct" is insufficient to establish that he is likely to suffer imminent irreparable harm. *See* Dkt. No. 6-2, ¶ 6. The remainder of his declaration consists of nothing more than inadmissible hearsay regarding the statements and beliefs of third parties. *See id.,* ¶ 2 (asserting that "[t]hree recent girlfriends have all been adversely affected by, and upset by messages on the Platform directed at them personally."); *id.* at ¶ 3 ("Each of them concurs with Plaintiff…"); *id.* at ¶ 4 ("Each of them finds it deplorable…"); *id.* at ¶ 5 ("Plaintiff's current girlfriend agreed with Plaintiff's position…").

PI Motion at 6; *see also, e.g., Ransom v. Hubbard*, 2011 WL 4345863, at *2 (E.D. Cal. Sept. 15, 2011) ("Plaintiff also merely makes conclusory statements regarding the balance of equities and the public interest components, which is insufficient to be granted injunctive relief."); *Taleff v. Sw. Airlines Co.*, 828 F. Supp. 2d 1118, 1123 (N.D. Cal. 2011) ("[T]he Court finds that Plaintiffs' conclusory assertion that the 'balance of hardships is ... clear' does not constitute a 'demonstration' that [injunctive relief] is warranted."); *Crane v. McDonald*, 2011 WL 3875645, at *5 (E.D. Cal. Aug. 31, 2011) (denying preliminary injunction where "petitioner's allegations . . . are conclusory and unsupported by any evidence, and petitioner has not demonstrated that he is likely to succeed on the merits, that the balance of equities tips in his favor, or that an injunction is in the public interest").

## V. CONCLUSION

For the foregoing reasons, Facebook respectfully requests the Court to deny Plaintiff's motion for preliminary injunction.

Dated:  May 6, 2019                                          KEKER, VAN NEST & PETERS LLP

                                                             By:  /s/ *William S. Hicks*
                                                                  WILLIAM S. HICKS

                                                             Attorneys for Defendant Facebook, Inc.

# PROOF OF SERVICE

I am employed in the City and County of San Francisco, State of California in the office of a member of the bar of this court at whose direction the following service was made. I am over the age of eighteen years and not a party to the within action. My business address is Keker, Van Nest & Peters LLP, 633 Battery Street, San Francisco, CA 94111-1809.

On May 6, 2019, I served the following document(s):

> **DEFENDANT FACEBOOK, INC.'S OPPOSITION TO PLAINTIFF'S MOTION FOR INJUNCTIVE RELIEF**

☑ by **ELECTRONICALLY POSTING** to the ECF website of the United States District Court, District of California, San Francisco Division. The Court performed service electronically on all ECF-registered entities in this matter.

Executed on May 6, 2019, at San Francisco, California.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

*Michele Knox-Thomas*
Michele Knox Thomas