### PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF HIS
### MOTION FOR INJUNCTIVE RELIEF

| | | |
|---|---|---|
| CHRISTOPHER KING, JD | ) | CASE NO. 19-CV-1987 |
| A/K/A KingCast,_ | | 5 June 2019 |
| | ) | 2pm Courtroom 2 |
| Plaintiff, | | |
| | ) | JUDGE WILLIAM ORRICK |
| vs. | | |
| | ) | |
| FACEBOOK, INC., | | |
| | ) | |
| Defendant. | | |

### PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF HIS
### MOTION FOR INJUNCTIVE RELIEF

I:  <u>Defendant is Denigrating the Negro with Irrelevant Rule 401/402/403 Materials</u>.

**First of all** Plaintiff has noted already in this case that Counsel and Facebook's Modus Operandi is to denigrate the negro. The sentiment is echoed by yesterday's filing in this matter as we shall see.

**Second,** Plaintiff *is indeed* a frequent ***successful*** litigator in various State and Federal Courts. He is not aware that there is anything wrong with that. He is former daily news reporter and trial attorney and he is an activist with a law degree from a top-50 school at the time. He has helped countless people as an investigative journalist. See Appendix A KingCast Cases in the Public Interest.

They include, *inter alia*: A Mayoral Commendation for Plaintiff's First Amendment work, a Nashua Telegraph story about King working with Alderman Fred Teeboom to craft a lawsuit that changed First Amendment Policy at Nashua Schools, emails from the City of Quincy and the City of Seattle acknowledging that they would provide documents that Plaintiff sued for, a Police Abuse lawsuit settlement in Federal Court, and a letter of referral by one Louis A. Jacobs, sitting member of the Ohio Disciplinary Review Board who recused himself (he was Plaintiff's mentor) stating that "racism, ignorance and reactionary politics" played a role in Plaintiff's one-year suspension from practice.[1]

---

[1] Defendant clings to this as if it has anything to do with the case at bar. This Honorable Court will quickly inform Defendant that they are wrong as they are attempting to introduce some sort of character evidence to undercut Plaintiff's credibility before the Court. It's nonsense.

1

TABLE OF CONTENTS

TABLE OF CONTENTS ……………………………………………………………………….i

STATEMENT OF RELEVANT FACTS………………………………………………………….i

ISSUES TO BE DECIDED……………………………….……………………………………….i

TABLE OF AUTHORITIES…………………………………………………………………....ii

STATEMENT OF RELEVANT FACTS

     This is a simple matter: As noted in Plaintiff's Injunction Request, he has been materially defamed in the most personal manner conceivable, repeatedly, on the Platform. Plaintiff has repeatedly and clearly sought ONLY the user information on three user accounts from Defendant pursuant to Dendrite v. Does analysis.

     Defendant has steadfastly refused to provide any such information and instead argued irrelevant law as if Plaintiff was attempting to hold Defendant directly responsible for the Defamation. Defendant also abusively pointed toward Plaintiff and tried to portray him as a vexatious litigator when in point of fact his record proves distinctly otherwise as he has won 75% of the Public Information Request lawsuits he has filed, and he has been honored for protecting the public's Right to Know and First Amendment Rights.

ISSUES TO BE DECIDED

Again this is a painfully simple matter that Defendant is attempting to obfuscate.

First, were the comments Defamatory.
Yes.

Second, were the comments published to third parties?
Yes.

Third, did the publisher utilize the Defendant's Platform?
Yes.

Fourth, is there any other way for Plaintiff to obtain the sought information?
No.

Fifth, should the entirety of Defendant's attempts to Denigrate Plaintiff be Stricken from the Record as completely irrelevant or needlessly confusing pursuant to Rule 401/402/403 Analysis?

TABLE OF AUTHORITIES

CASES

*King v. Wright, Finlay & Zak*, (WD Washington C16-0397JLR April 20, 2016). ………………..3

*Zerlie Charles v. Vickie D. Vest*, Indiana Ct. App. No. 72A01-1706-SC-01252
(October 24, 2017) ………………………………………………………………………………………...7

and *Dial v. Hammond* 15-CV-05383 N. Carolina Buncombe Superior (2015)……………………7

*Dendrite v. Does* 775 A.2d 756 (N.J. Super. Ct. App. Div. 2001)…………………………… 7, 10

PRESS SOURCES

https://www.theguardian.com/technology/2018/jul/02/facebook-mark-zuckerberg-platform-publisher-lawsuit

THE GUARDIAN (DATE UNCERTAIN 2018/2019)
Is Facebook a publisher? In public it says no, but in court it says yes………………………...…..7


https://townhall.com/columnists/rachelalexander/2019/05/06/big-tech-trying-to-have-it-both-ways-as-platform-and-publisher-n2545882?fbclid=IwAR1yxIBncnvUGv-vOCj5z3m-M6egh6xEu4vTEluNotTIO6ehbcejT87FRvk
TOWN HALL
Big Tech Trying to Have it Both Ways as Platform and Publisher
By Rachel Alexander
May 6, 2019……………………………………………………………………………………………..8


https://www.nationalreview.com/2019/05/the-first-rule-of-social-media-censorship-is-that-there-are-no-rules/
https://howtosuefacebook.blogspot.com/2019/05/kingcast-and-national-review-writer.html
NATIONAL REVIEW (as reproduced on Plaintiff's blogs that are now "in violation of
Community Standards.")

The First Rule of Social-Media Censorship Is That There Are No Rules
By David French
May 7, 2019…………………………………………………………………………………...………9

STATUTES

CDA Section 230(c)(1). ……………………………………………..………………….…..6

47 USC §230…………………………………………………………………………..6, 9

FRCP 12(b)(6) ……………………………………………………………………...………..9



In the event that Defendant can't read the Award, it says:

*"In recognition of his leadership role in protecting our citizens' freedom
Of speech and the public's right to know, Christopher King is awarded this
First Amendment Commendation."*
*********

The cases cited by Defendant were all successfully settled, with Plaintiff obtaining the sought relief in the public information cases and obtaining a reasonable settlement in the Academy of Canine Behavior lawsuit that forms the basis for some of his Complaint in this case:

He was accosted by a young angry white mail who yelled "Fuck you" five (5) times into Plaintiff's face while other support staff telephoned 911 and told other people to call 911 because Plaintiff was allegedly violent and had a weapon on hand when all he had was a desire for his dog's records – one of Plaintiff's dogs was killed in a bad kennel owned by a former AOCB staffer mind you -- and an iPhone.

The white Sheriff's report ignored all of this even though Plaintiff showed him the video from said iPhone, so Plaintiff claimed that he knows why, because everyone else was white. Facebook immediately blocked him and put him in Facebook Jail for 30 days.[2]

As such, Plaintiff is not exactly sure what point Defendant is attempting to make, other than yet another attempt to denigrate the negro.[3]

---

[2] In that case Plaintiff and others helped educate thousands of people as to outright abusive practices at the Academy so one would think that is a Good Thing. Apparently not according to Facebook.

[3] The entire exercise is tiresome and pointless:  Plaintiff prevails on several cases in the past. Defendant for some reason doesn't like this and tells the Court in condescending manner that Plaintiff is a frequent litigator, trying to imply that he is a vexatious litigant. Defendant then falsely claims in discourse with Plaintiff that his conduct in the Washington case was "frivolous" when *no such finding ever occurred*. Defendant is being abusive, obfuscatory and wasting much time and Judicial Resources, indeed.

2

While we are at it however Plantiff will remind Defendant of a case that they missed: KingCast v. Wright, Finlay & Zak: These racist white lawyers falsely accused Plaintiff of issuing a Death threat. There was absolutely no basis for it, they were just angry that Plaintiff had them on video and audio being rude to them and was exposing them in a case where their client last a substantial judgment to a homeowner in Federal Court. They tried to run off to Federal Court in the KingCast litigation but Plaintiff artfully drafted his Motion to Remand that was GRANTED and whereupon the case settled because they knew they were wrong and did not want to be seen on video in State Court. There is absolutely NOTHING wrong with Plaintiff or his actions, period. See *King v. Wright, Finlay & Zak*, (WD Washington C16-0397JLR April 20, 2016). https://www.leagle.com/decision/infdco20160421d73

Yet there is more. In *KingCast v. NH AG Kelly Ayotte and Town of Franconia* (Case number ending in 068) – before the *McLeod* case that Defendant cites as a loss– Plaintiff prevailed on yet another Information Lawsuit regarding a multiple homicide in North Country involving Liko Kenney, Corporal Norman Bruce McKay and a multiple felon named Greg Floyd. Regarding the video of the 5/11 dash cam:

[KingCast] may copy the original video under supervision of custodial police authority.

And the AG's office got dinged for failing to provide protocol regarding homicide investigations:

"The Court has reviewed the cases and affidavits on which the Attorney General's office relied in originally denying the Petitioner access to its protocols for investigation of a homicide and finds that such withholding was not justified."

And

The Franconia Defendants must therefore undertake another search, since this search lacks indicia of reasonableness. In order to establish to the Court that the Town has undertaken an adequate, reasonable search, affidavits by any personnel involved in the search should describe the locations searched, as well as the terms and results of any computerized searches. After a reasonable and adequate search, the Court will be able to determine whether RSA 91-A was or was not violated, even if the documents cannot be found.

In any event Plaintiff cannot locate the actual filings as they are somewhere in his co-writer's possession because they have a SAG-registered movie script and are moving forward on that and two other matters that cannot be discussed publicly.

3

See Circle of Stones – The Liko Kenney Story.

https://kingcast955.wixsite.com/circle-of-stones
https://www.youtube.com/watch?v=2Fx8klkFwmY



That case involved a very bad Law Enforcement Officer and Plaintiff – a former LEO Attorney – helped the town show it and twice testified before the NH House and Senate with the townspeople in preventing a public roadway from being named after Norman Bruce McKay. One would think that Keker would be happy for Plaintiff as they too, have worked many pro bono cases involving injustice. Instead they attempt – and fail – to Denigrate the Negro once again. It's repulsive but it fits right in with Plaintiff and Mark Luckie's observations of Facebook M.O.[4]

**Third,** Plaintiff's suspension from practice was the result of "Racism Ignorance and Reactionary Politics," as noted by a Law Professor of such wide acclaim that the Moritz Ohio State School of Law named the snack bar after him![5]

**Fourth,** the Defendant is attempting to manipulate the facts and law of what happened in the Washington State Facebook lawsuit. In that case the Court expressly ruled that it was NOT making ANY JUDGMENTS as to the merits of the case. The Court is quoted in part in saying as much in video that Plaintiff has sent to Defendant and Counsel.

As to the Dismissal WITH PREJUDICE in that case, frankly, so what? It is a complete non sequitur and the Court will now remind Defendant of such fact. It was dismissed in order to allow Plaintiff to run video in State Court. Plaintiff is fully free to argue whatever he wants to argue in this case, and there is no legal principle to the contrary whatsoever.

---

[4] So then, to be clear, Plaintiff won 75% of the public information lawsuits he has ever filed, and resolved many other prior to litigation. Where exactly is Defendant attempting to go with this nonsense? All the way to a Jury Trial is the Answer.

[5] Moreover, Plaintiff is making payments on that suspension and looks to rejoin the bar within the next 12-24 months. Again, completely irrelevant to this case but that is Defendant's M.O. Deflect and finger-point at its accusers. If they will do it to George Soros they will do it to Plaintiff.

4

Furthermore Plaintiff's case is on appeal on that matter because as the Court knows, there is no automatic Stay on Discovery because a Motion to Dismiss is contemplated or been filed. In that case all that happened was Plaintiff miscalendared the event and filed his Motion to Compel 2-3 days early. That's it. Plaintiff has already instructed Counsel for Defendant on this issue on 2 May 2019:

Also,

I am quite certain your client will educate the Court and me as to whether my Substantive and Procedural Right to take an Appeal on the Washington case has been suspended somehow.

I know Facebook gets to suspend a LOT of things and people at its whimsy.  Whether or not they can actually reach beyond their "Naiton State" and into the Constitution remains to be seen.

Very Truly Yours,
Christopher King, J.D.

5

II:     Substantive Issues that Actually Matter.

A.     The Court Must Apply the Dendrite Standard on Subornation of Perjury.[6]

Now then since Defendant has caused Plaintiff and the Court substantial amounts of time
and Judicial Resources that were completely unnecessary, we will move on to the substance and
find that Defendant is again engaging in rampant obfuscation:

Courts routinely dismiss defamation claims against interactive computer service
providers, including Facebook, given the protections afforded by CDA Section 230(c)(1).
(Defendant's Memorandum p. 5).

Plaintiff clearly states that he is not seeking to hold Defendant liable for the Defamatory
content per se. He is suing them in that portion of the Complaint only in a third-party capacity as
the cases that Plaintiff cited to clearly sustain. Right there in para 71 that is part of a letter written
to Counsel for Facebook it reads, in pertinent part, see emphasis clearly noted in red:

No one should have to live under this type of racist, defamatory abuse and I will not…
nor will any of my past girlfriends or present girlfriend  It's complete shit.  In fact, she
will send a complaint to Facebook within the next 24 hours and will reply on this email
chain immediately to confirm her complete agreement that she is harassed and finds the
communication to be Defamatory towards me. And you will note that I am not holding
your client responsible for the Defamation as that would of course be *outside* the purview
of 47 USC §230, unlike my pending Claims in the case.

───────────────

[6] When Plaintiff receives Defendant's Motion to Dismiss as to holding Facebook directly liable
for Breach, Fraud, and Racism he will be more than happy to address their purported Defenses
at such time. In short, even if that were the correct analysis Plaintiff has more information to
support the notion that Facebook is materially, wilfully breaching its express and implied
contracts as noted in Plaintiff's pending Motion for Judicial Notice.

Wysinger glared at her phone, but wasn't surprised. She says black people can't talk about
racism on Facebook without risking having their posts removed and being locked out of their
accounts in a punishment commonly referred to as "Facebook jail."

For Wysinger, the Neeson post was just another example of Facebook arbitrarily deciding that
talking about racism is racist.

"It is exhausting," she says, "and it drains you emotionally."

Black activists say hate speech policies and content moderation systems formulated by a
company built by and dominated by white men fail the very people Facebook claims it's trying
to protect. Not only are the voices of marginalized groups disproportionately stifled, Facebook
rarely takes action on repeated reports of racial slurs, violent threats and harassment
campaigns targeting black users, they say.

Many of these users now think twice before posting updates on Facebook or they limit how
widely their posts are shared. Yet few can afford to leave the single-largest and most powerful
social media platform for sharing information and creating community.

6

Case law clearly supports Plaintiff's contention, Appendices B and C.

*Zerlie Charles v. Vickie D. Vest*, Indiana Ct. App. No. 72A01-1706-SC-01252 (October 24, 2017) and *Dial v. Hammond* 15-CV-05383 N. Carolina Buncombe Superior (2015).Case settled for $500,000.00.

In point of fact, Counsel for Defendant is engaging in obfuscation yet again because the pleadings clearly indicate that Plaintiff is approaching Facebook on a Dendrite argument and Plaintiff queried Defendant on **4 May 2019:**

> …..And did Congress then intend to say that it is permissible for these same privileged predominately white males then ignore blacks when other users on the platform stalk them and Defame them, or should Defendant be compelled to produce the account information of the Defaming agent under a *Dendrite v. Does* analysis?

> **2 May 2019:**

> First of all:  My Appealed case in Seattle is a non sequitur in this case. Your client might not like that fact, but then I'm not really here to do what your client likes.

> Second:  File your Motion for Protective Order then and I will vigorously opposite it. Your Client's Amicus Lawyer disagrees with you. But of course his opinion disappeared from the Internet after our last Court Hearing, didn't it. That's right. It sure did.

> Third:  Am I to understand that your client also believes it has no Dendrite duty to provide me any information about the Defamatory Agent?

> I look forward to your client's response to #3 and whatever Motions they have to put forward.

As such, Defendant is well aware of the theory of liability here and that it is for information only. But once again Defendant spins the wheel of obfuscation and hopes that the Court will become mesmerized by it and blindly rule against Plaintiff. Clearly an insult to His Honor's intelligence, frankly,

B.    <u>Defendant is Indeed, a Publisher</u>.

Even if we were proceeding under the wrong analysis on this issue, it is now questionable as to whether it is a Platform or a Publisher anyway, and that is a disputed matter of Fact best suited for a Jury after it digests the following information, which again was communicated to Counsel for Defendant, this time on 6 May, 2019.

Let's examine Facebook's phony do-it-all approach to fit the situation, shall we?

https://www.theguardian.com/technology/2018/jul/02/facebook-mark-zuckerberg-platform-publisher-lawsuit

7

## Is Facebook a publisher? In public it says no, but in court it says yes
**In its defense against a former app startup, Facebook is contradicting its long-held claim to be simply a neutral platform**

In court, Sonal Mehta, a lawyer for Facebook, even drew comparison with traditional media: "The publisher discretion is a free speech right irrespective of what technological means is used. A newspaper has a publisher function whether they are doing it on their website, in a printed copy or through the news alerts."

Facebook has rejected all claims. Mehta argued in court Monday that Facebook's decisions about data access were a "quintessential publisher function" and constituted "protected" activity, adding that this "includes both the decision of what to publish and the decision of what not to publish".

David Godkin, an attorney for Six4Three, later responded: "For years, Facebook has been saying publicly that it's not a media company. This is a complete 180."

Questions about Facebook's moral and legal responsibilities as a publisher have escalated surrounding its role in spreading false news and propaganda, along with questionable censorship decisions.

Eric Goldman, a Santa Clara University law professor, said it was frustrating to see Facebook publicly deny that it was a publisher in some contexts but then claim it as a defense in court.

"It's politically expedient to deflect responsibility for making editorial judgements by claiming to be a platform," he said, adding, "But it makes editorial decisions all the time, and it's making them more frequently." (Appendix D).


See also the Town Hall op-ed piece:

https://townhall.com/columnists/rachelalexander/2019/05/06/big-tech-trying-to-have-it-both-ways-as-platform-and-publisher-n2545882?fbclid=IwAR1yxIBncnvUGv-vOCj5z3m-M6egh6xEu4vTEluNotTIO6ehbcejT87FRvk


## Big Tech Trying to Have it Both Ways as Platform and Publisher
By Rachel Alexander
May 6, 2019

"…….As publishers, the companies can restrict speech on their platforms as they see fit. Their editorial decisions (not those of their customers) are protected by the First Amendment. However, they are open to lawsuits over the content.

As a platform, or provider of a computer service, a company cannot be liable for content users post on their sites. This is from Section 230 of the Communications Decency Act.

When Facebook was sued by the app startup Six4Three, the tech giant's lawyers claimed it was a publisher. Six4Three accused Facebook of maliciously removing app developers' access to friends' data, forcing it out of business.

Facebook claimed it was acting as a publisher and was allowed discretion of what to permit. But in that same case, Facebook asserted that it was a platform and not liable for users' content.

The big tech giants act as publishers when they weed out offensive content, much like a news publication would. A true platform does not engage in these kinds of restraints. For example, a PC is a platform. You can do whatever you want on your PC and no one is going to censor you…."

….If they are a platform protected by Section 230, tech companies are allowed a limited amount of moderation to ban "offensive" speech. However, this is not the same as regulating political speech, which goes too far. Big tech regularly engages in censorship, especially of conservative viewpoints. Banning Infowars, Laura Loomer and Milo Yiannopoulos is banning political speech. It may not be likable speech, but it is nevertheless political speech, not the offensive type of speech Section 230 had in mind. (Appendix E).

C.    <u>Social Realities will Successfully Challenge 47 USC §230</u>

Again, while this is more appropriate for Plaintiff's Reply Memorandum in Opposition to Defendant's upcoming FRCP 12(b)(6) Motion, the issues in this case are, quite frankly, huge. As much as Defendant tries to deflect the Court cannot stick its head in the sand and ignore the thorny issues contained in the filed U.S.A. Today story as a possible contract or fraud issue cutting against 47 USC §230 nor can it ignore the fact that the National Review is clearly calling for the same Standards that Plaintiff espouses:

https://www.nationalreview.com/2019/05/the-first-rule-of-social-media-censorship-is-that-there-are-no-rules/

https://howtosuefacebook.blogspot.com/2019/05/kingcast-and-national-review-writer.html

## The First Rule of Social-Media Censorship Is That There Are No Rules
**By David French**
**May 7, 2019**

"I have long argued that social-media companies should voluntarily adopt First Amendment–based speech policies. A First Amendment analysis does not mean "anything goes," but it does mean that rules and regulations restricting speech must be viewpoint-neutral. Harassment, incitement, invasion of privacy, and intentional infliction of emotional distress are speech limitations with viewpoint-neutral definitions, and one of the fastest ways to violate the First Amendment is with selective enforcement even of viewpoint-neutral rules."

Twitter, Facebook, et al. need transparent, viewpoint-neutral, First Amendment-based content policies....... (Appendix F).

CONCLUSION

It is patently clear that Defendant has no Defenses on this issue so it has attempted to Denigrate the Negro and to waste the Plaintiff and the Court's time on issues that are so far removed from this case as to be laughable, then by attempting to argue the wrong law while basically ignoring *Dendrite v. Does* 775 A.2d 756 (N.J. Super. Ct. App. Div. 2001) in which the Court noted:

> Yahoo! may also disclose account information in special cases when we have reason to believe that disclosing this information is necessary to identify, contact or bring legal action against someone who may be violating Yahoo!'s Terms of Service or may be causing injury to ... anyone ... that could be harmed by such activities.

Plaintiff has done all that he can do to determine who is Defaming him, repeatedly. He has also requested Defendant's policy on Defamation and to this point has been squarely refused. Judging by the tenor of Defendants present filing, Facebook will continue to refuse him at until this Honorable Court sets them straight.

Respectfully submitted,

_____
Christopher King, J.D.


CERTIFICATE OF SERVICE

I the undersigned swear that a true and accurate copy of the foregoing was submitted to ECF And was delivered via email to Counsel for Defendant at:

Keker Van Nest & Peters,

PAVEN MALHOTRA - # 258429
pmalhotra@keker.com

MATAN SHACHAM - # 262348
mshacham@keker.com

WILLIAM S. HICKS - # 256095
whicks@keker.com

this 8th Day of May, 2019

_____
CHRISTOPHER KING, J.D.

10