UNITED STATES DISTRICT FEDERAL COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| CHRISTOPHER KING, JD | ) | CASE NO. 19-CV-1987 |
| A/K/A KingCast,_ | | Filed 12 April 2019 |
| | ) | Trial Date: Not Set |
| Plaintiff, | | |
| | ) | JUDGE WILLIAM ORRICK |
| vs. | | |
| | ) | |
| FACEBOOK, INC., | | |
| | ) | |
| Defendant. | | |

**PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF HIS
MOTION FOR RULE 201 JUDICIAL NOTICE**

STATEMENT OF RELEVANT FACTS

On 12 April of this year Plaintiff filed this Action alleging that he is an unwilling victim
to a systemic pattern of racism at Facebook that resulted in several 30-day "Facebook Jail"
sentences for posts that were not actually Hate Speech or in any way violative of Facebook Terms
of Service. He cited a few older cases, often on personal websites and pages.

Approximately twelve (12) days after filed, the U.S.A. Today ran a story in which many
black activists complained of the exact same problem. Facebook personnel was interviewed and
afforded the opportunity to comment or to demand retraction. No retraction requests were made
as to the facts set forth by the multitude of black Facebook users referenced in the story.

STATEMENT OF ISSUES

Is Judicial Notice an appropriate method for registering with the Court the notion that
there is widespread interest on a National level regarding the subject matter pursuant to *Seelig v.
Infinity Broadcasting Broad Corp.* (2002) 97 Call. App.4th 798, 807 n.5, *Farrell v. Boeing*, No.
17-15951 (9th Cir. Jan 29 2019)(fn 1), *Spitzer et al. v. Aljoe et al.,* 13-CV-05442 MEJ (Entry
June 15 2016), and whether the lack of any challenged dispute as to the fact should deem the
allegations in the story accepted as true, given that Defendant's entire Defense is steeped only in
a purported absolute immunity under 47 USC §230.

1

UNITED STATES DISTRICT FEDERAL COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| CHRISTOPHER KING, JD | ) | CASE NO. 19-CV-1987 |
| A/K/A KingCast,_ | | Filed 12 April 2019 |
| | ) | Trial Date: Not Set |
| Plaintiff, | | |
| | ) | JUDGE WILLIAM ORRICK |
| vs. | | |
| | ) | |
| FACEBOOK, INC., | | |
| | ) | |
| Defendant. | | |

**PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF HIS
MOTION FOR RULE 201 JUDICIAL NOTICE**

NOW COMES PLAINTIFF, CHRISTOPHER KING, J.D. to further reflect on the 24 April 2019 USA Today published story, "Facebook while black: Users call it getting 'Zucked,' say talking about racism is censored as hate speech."  (by Jessica Guynn).

I.  Overview and Request for Judicial Notice of Mark Zuckerberg's Instagram Party Admission.

First of all, in a Party Admission tweeted recently, Mark Zuckerberg stated with regard to hate speech (the purported basis for Plaintiff's Facebook multiple Jail terms) that "This is an area where I believe companies should not make these decisions by themselves and there should be a public process with democratically elected governments."[1]

Second, Plaintiff finds it laughable that the World's largest communication portal that makes money from the posting and exchange of people's personal and private information now has a problem admitting its own wretched excess. Particularly because three (3) days ago Facebook co-founder Chris Hughes flat out said it is time to break up Facebook and that:

---

[1] Government intervention is possible. As will be shown shortly herein, and in the Dispositive Motion filings soon, under a proper analysis of the issues at hand this Honorable Court is vested with full authority to consider Plaintiff's substantive arguments. See Macron, Facebook's Zuckerberg meet amidst calls for Tighter Regulation, Reuters, 10 May 2019  (Appendix A).
https://www.reuters.com/video/2019/05/10/like-macron-facebooks-zuckerberg-meet-am?videoId=548346792&feedType=VideoRSS&feedName=Technology&videoChannel=6

"Facebook is a threat to our economy and democracy." "I feel a sense of anger and responsibility."[2]

Defendant's arguments are completely underwhelming and resonate as something the sandlot bully says when the smallest kid rises up and smotes him a blow across the noggin:

"Hey I got hurt!!!"

Too bad, so sad, hard cheese fella'. You have been hurting too many people for far too long to complain about Distributive Justice. In the words of Facebook co-founder Chris Hughes, seen with Mark Zuckerberg in 2004:



Facebook has earned the prize of domination. It is worth half a trillion dollars and commands, by my estimate, more than 80 percent of the world's social networking revenue. It is a powerful monopoly, eclipsing all of its rivals and erasing competition from the social networking category. This explains why, even during the annus horribilis of 2018, Facebook's earnings per share increased by an astounding 40 percent compared with the year before.

Facebook has responded to many of the criticisms of how it manages speech by hiring thousands of contractors to enforce the rules that Mark and senior executives develop. After a few weeks of training, these contractors decide which videos count as hate speech or free speech, which images are erotic and which are simply artistic, and which live streams are too violent to be broadcast. (The Verge reported that some of these moderators, working through a vendor in Arizona, were paid $28,800 a year, got limited breaks and faced significant mental health risks.).[3]

---

[2] Opinion "It's Time to Break Up Facebook" By Chris Hughes New York Times May 9, 2019.
https://www.nytimes.com/2019/05/09/opinion/sunday/chris-hughes-facebook-zuckerberg.html?login=email&auth=login-email
as republished at the two Plaintiff blogs Defendant banned for "violation of Community Standards."
https://howtosuefacebook.blogspot.com/2019/05/kingcast-and-national-review-writer.html
https://christopher-king.blogspot.com/2019/05/kingcast-and-national-review-writer.html

[3] Id. Defendant would do well to recall that Plaintiff's Breach of Contract Claim and his Discovery Requests, when granted, address his allegation that there is no meaningful review and that Facebook's representations in this regard are fraudulent.

II.      Law and Argument: Defendant's Positions Debunked.


A.      The Website in Question is a Newspaper and is Presumed Reliable and its Reliability and the Underlying Claims Have not Been Challenged.

Defendant tries to equate this news feature with private websites who hosted materials about data-breaching.

Writes Defendant, "Courts routinely decline to grant judicial notice regarding materials published on private websites because "they are not inherently reliable." Rollins, 338 F. Supp. 3d at 1032; see also id. at 1032-33 ("There are at least a trillion web pages on the Internet, and many of the documents within those pages are unsupported, poorly supported, or even false.").

Cute. It's as if Defendant forgot that Plaintiff has a Pacer account as well, so let's finish that paragraph shall we?

> Of course, that does not make all of those documents inadmissible for all purposes. But they are not inherently reliable, and courts should be cautious before taking judicial notice of documents simply because they were published on a website. That is particularly so when a party seeks to introduce documents it created and posted on its own website, as Dignity does here.

Unfortunately for Defendant, the *Rollins* concerns are not present here. This is the USA Today, the Nation's largest newspaper. Clear-cut allegations of unfair treatments were made and Defendant was contacted for the story. Defendant had a full opportunity to ask for retractions or to in any way contradict the story. ***It did nothing of the sort.***  Again: The heinous facts as alleged in that story ***have not been challenged in spite of their notoriety in the Country's largest newspaper***. In contrast see *Perkins v. LinkedIn Corp.*, 53 F. Supp. 3d 1190, 1204 (N.D. Cal. 2014) in which case the Parties actually disputed whether or not a screenshot on a private website was authentic. Since there was a colorable dispute the Request for Judicial Notice was properly DENIED.[4]

Furthermore, the Standard in this Court is not demonstrably different from that of the California State Court or any other Court in the Country on this issue where Judicial Notice of Newspaper articles was GRANTED: Judicial notice of newspaper articles is proper under Evidence Code section 452, subdivision (h) ["Facts and propositions that are not reasonably

---

[4] As to Defendant's arguments that there is Hearsay in the newspaper story this may be true, however much of the information came from the subjects' direct and personal observations and the last time Plaintiff checked, that is not Hearsay. Furthermore to the extent that there is any Hearsay the Defendant has not taken any action to contradict any of it, and the Court is free not to allow the elements of the story that are indeed, purely Hearsay as it deems appropriate.

subject to dispute and are capable of immediate and accurate determination by resort to sources of reasonably indisputable accuracy. (*People v. Hardy* (1992) 2 Ca1.4th 86, 174, fn. 24, see also *Norgart v. Upjohn Co.* (1999) 21 Ca1.4th 383, 408 [judicial notice of controversy as evidenced by articles in the press].)

See also *Seelig v. Infinity Broadcasting Broad Corp*. (2002) 97 Call. App.4[th] 798, 807 n.5 taking judicial notice of news articles discussing the reality TV show "Who Wants to Marry a Multi-Millionaire?"; judicial notice granted to show matter of widespread interest and *Hofmann Co. v. E.I. DuPont de Nemourse  Co* (202 Cal. App. 3d 390 395 n.3; 1988) and *Weingarten v. Block* 102 Cal.App.3d 129, 137. 1980.

So even if the Court only admits the information to admit the serious nature of the issues being countenanced in this Complaint, Defendant's attempts to compare Apples to Oranges resolutely fails.  Witness one such allegation from one Ayo Henry, with whom Plaintiff has discussed this case as they have friends in common back in Rhode Island:

> Her Facebook post drew attention to an antique store in nearby Massachusetts that refused to remove racist memorabilia hanging on its walls, including a vintage advertisement for smoking tobacco with a caricature of two black men. "Still perpetuating white supremacy through 'nostalgia," she wrote.
>
> One person challenged whether the image was in fact racist so Henry replied with a similar image of a jigsaw puzzle box from the same era which was labeled "Chopped Up N------."
>
> That comment, which Facebook deleted, sent her to Facebook jail for a month. Henry appealed the suspension but Facebook would not relent. She says she knows of no one in the black community who has had a post reinstated by appealing.[5]

Discovery may indeed reveal that black users don't get their posts reinstated as white users do.

That could very well be a Contractual AND Civil Rights issue that Attorney Lukmire claims is

off-limits to immunity and for good reason.[6]

http://migration.nyulaw.me/sites/default/files/upload_documents/NYU-Annual-Survey-66-2-Lukmire.pdf

> Second, before deciding whether an online entity is immune because of the type of entity it is or the type of role it played in disseminating illegal content, courts should consider whether section 230 should apply based on the theory of liability advanced by the plaintiff.

---

[5] Defendant, in Section II of its arguments, claims that information like this is "irrelevant." This is nonsense. A trier of fact may find that it provides indicia of a pattern and practice of racism. See the following section.

[6] Recall that the full Lukmire Learned Treatise was removed from NYU Law Internet the day after Plaintiff referenced it in Open Court so obviously Defendant is feeling vulnerable on the topic, as well it should: The Emperor has no clothes.

The case for restricting the subject matter of section 230 immunity is equally strong...... **One thing is for certain: unless courts narrow their interpretations of section 230, deserving plaintiffs will be without redress.** As discussed, the statute should be interpreted in light of its language, which clearly sounds in defamation law. Allowing certain claims that are close to textbook defamation will help clear up whether the plaintiff has artfully pleaded garden variety tort claims in order to evade the proper boundaries of section 230. **Courts should almost never dismiss other claims, such as allegations under civil rights laws or breach of contract claims, on section 230 grounds, for they are much too far removed from the tort of defamation.**

B.      The Stories are Directly Relevant and Contain Minimal Hearsay.

Defendant claims that information like this is "irrelevant." Nonsense. It goes to the core of Plaintiff's argument – and that of former Diversity VP Mark Luckie – that Facebook is not treating is black employees and users fairly. That then becomes a question for the Court to determine using the David Lukmire and other analyses such as the Ryan JP Dyer law review piece that Plaintiff is providing in terms of this Court applying rules of Statutory Construction and Congressional Intent when it comes to Defendant's claims of blanket immunity via 47 USC §230.

This is all relatively new information that is indeed crucial in this case. As to *Gerritsen v. Warner Bros. Entm't Inc*.  112 F.Supp.3d 1011, 1030 (C.D. Cal. 2015) the 9th Circuit followed that case thusly, in GRANTING a Motion for Judicial Notice in Part.  See *Farrell v. Boeing*, No. 17-15951 (9th Cir. Jan 29 2019)(fn 1).

> Farrell also filed a Motion for Judicial Notice regarding the Defense Finance and Accounting Service's website. Granting the motion in part, we take judicial notice "of the existence of the website in the public realm, but decline[] to notice that the contents of the website are true." *Farrell v. Boeing Emps. Credit Union*, No. 16- cv-02711-NC, 2017 WL 1508993, at *3 n.1 (N.D. Cal. Apr. 26, 2017) (citing Spitzer v. Aljoe, No. 13-cv-05442-MEJ, 2016 WL 3275148, at *4 (N.D. Cal. June 15, 2016); Gerritsen v. Warner Bros. Entm't Inc., 112 F. Supp. 3d 1011, 1029 (C.D. Cal. 2015)).

Plaintiff submits that in this case, given these facts, the Court must not only accept the presence of the controversy based on racial lines that implicate 42 USC §1981 but must accept them as alleged for reasons just noted. This case merits such an approach even more than *Spitzer et al. v.  Aljoe et al.,* 13-CV-05442 MEJ (Entry June 15 2016).  (However, the Court does not take judicial notice of facts in the public record that are "subject to reasonable dispute." ) because there is no dispute on the facts as set forth by each of the subjects in the USA Today story!  It bears noting that *Sptizer* occurred in this very Courthouse, as opposed to *Gerritsen,*

Further, as to another of Defendant's cited cases, while at least out of this Courthouse -- is not truly on point when reviewed with a careful eye: *Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074, 1088 (N.D. Cal. 2017 (denying judicial notice of publicly available articles because "the fact that publications made statements . . . , thus putting that information in the public realm, is not relevant to determining [any disputed issue]

Defendant would be well-advised not to bet the farm on this case because the true nature of the request for Judicial Notice varies from case to case. In this case Plaintiff is arguing that the Court, based on empirical evidence and other materials heretofore not presented in any similar case, may address the alleged immunity of 47 USC §230 with a fresh pair of eyes on Civil Rights and Contractual arguments.

Defendant cannot dictate Plaintiff's theory of the case and this is where the Court must be aware of Defendant's attempted sleight-of-hand:  *Hadley* involved news articles about the sugar industry IN GENERAL and Plaintiff attempted to bootstrap those into the underlying case. That approach was properly DENIED.

C.        <u>Defendant Cannot Dictate Plaintiff's Theory of the Case</u>.

In this case the material is helpful because it involves people in Plaintiff's protected class making SPECIFIC claims of disparate treatment that have not been denied.  It shows that potential Facebook racism and breaches are a major issue. Facebook does not deny any of it, but rather opts to claim absolute immunity under the Statute. That's a material World of Difference.

Regardless of the purported immunities Plaintiff feels certain Courts would not allow Defendant to have an express written *de facto* policy that stated "we are going to be discriminating against black users."  So why should the Courts allow it in a *de jure* manner?

The Answer is that Courts must not allow it under *any* circumstances while realizing that Courts have been getting it wrong for YEARS about the reach of 47 USC §230, as seen by two scholars below, one of whom is a Facebook Amicus Lawyer no less.  Plaintiff is well aware of what sorts of media a Court can and should consider. For example, Plaintiff initiated a poll on a certain BMW forum for vintage BMWs. The thread was named Facebook is a public utility that must be regulated.[7]

---

[7] The prescience of Plaintiff's statement last winter cannot now be denied. It's everywhere in the news whether Facebook likes it or not. Zuckerberg even met with French President Emmanuel Macron this month about it.

A commenter replied:

> Facebook does what Facebook wants. No matter how good a lawyer you might be, I bet
> Facebook has better and enough lawyers to just bury you procedurally if not by the letter
> of the law. Zuckerberg's testimony before Congress could best be summed up as "I'm
> worth 40 billion dollars" Over and over and over again. And it would have been more
> honest even. That's what he cares about, not you, not your Mother, not about being fair.[8]
> http://www.mye28.com/viewforum.php?f=17
> http://www.mye28.com/viewtopic.php?f=17&t=149815

So much as Plaintiff would love to have the Court take Judicial Notice of such opinion, it simply is not appropriate.

***The news feature at issue however, is a horse of another color:*** It is a meticulously-researched news feature published in the Country's largest newspaper, and legal issues at hand are being impacted and shaded by social nuance that was hardly contemplated by 47 USC §230 when it was drafted. How does the Court apply the law in the face of these nuances? Ninth Circuit/Seattle area attorney Ryan JP Dyer has weighed in on this already just four (4) short years ago :

> Turning the tide against a lawless no-man's-land on the Internet starts with a reexamination
> of Congress's intended scope of immunity and the implicit preemptive effect of section 230.
> Beginning with the presumption that Congress did not intend to preempt an entire field of
> traditional state police power, and after closely examining the textual components of section
> 230 as well as the legislative history, it soon becomes apparent that immunity is only
> applicable in a specific set of circumstances. In applying this analysis, courts could
> incorporate some form of objective bad faith determination to distinguish between websites
> that are furthering the purposes of section 230, as opposed to those that are merely posing as
> good Samaritans.[9]

*The Communication Decency Act Gone Wild: A Case for Renewing the Presumption Against Preemption* (2014 Seattle University JD Candidate Ryan JP Dyer).
https://digitalcommons.law.seattleu.edu/cgi/viewcontent.cgi?article=2223&context=sulr

Again, see David Lukmire's excellent piece, Can the Courts Tame the Communications Decency Act? *The Reverberations of Zeran v. America Online*., supra.  Attorney Lukmire has of course written Amici Briefs alongside and in support of Facebook and Microsoft so he's an Industry expert:http://migration.nyulaw.me/sites/default/files/upload_documents/NYU-Annual-Survey-66-2-Lukmire.pdf (link removed after Plaintiff noted it in open Court).

---

[8] Accord Facebook founder Chris Hughes Opinion "It's Time to Break Up Facebook" By Chris Hughes New York Times May 9, 2019, *supra*. The link itself is a private forum within the MyE28 forum.

[9] Again, in case Defendant missed it, Plaintiff is arguing that Defendant is not acting in Good Faith in general, nor is it truly a Good Samaritan.

CONCLUSION

This is a relatively simple matter: The Court clearly has authority to, at a minimum, accept the materials as proof of controversy. At the maximum there is substantial argument to be had that the Court can even accept the allegations contained in the feature as true: Facebook was interviewed. They were present. They have not once disputed the claims even though the claims paint an extremely negative picture of their policies and practices such that a reasonable person would have contested the facts if they had a basis to do so.

Facebook declined to do so, now it must entirely rest its case on the notion that it has blanket immunity in the face of anything and everything. This of course will be interesting because as Plaintiff recently noted, Defendant is masquerading as both Publisher and Platform.

https://townhall.com/columnists/rachelalexander/2019/05/06/big-tech-trying-to-have-it-both-ways-as-platform-and-publisher-n2545882?fbclid=IwAR1yxIBncnvUGv-vOCj5z3m-M6egh6xEu4vTEluNotTIO6ehbcejT87FRvk

## Big Tech Trying to Have it Both Ways as Platform and Publisher

By Rachel Alexander
May 6, 2019

And in:

https://www.theguardian.com/technology/2018/jul/02/facebook-mark-zuckerberg-platform-publisher-lawsuit
Guardian, fall 2018 by Sam Levin

Is Facebook a publisher? In public it says no, but in court it says yes

**In its defense against a former app startup, Facebook is contradicting its long-held claim to be simply a neutral platform**

In court, Sonal Mehta, a lawyer for Facebook, even drew comparison with traditional media: "The publisher discretion is a free speech right irrespective of what technological means is used. A newspaper has a publisher function whether they are doing it on their website, in a printed copy or through the news alerts."

Eric Goldman, a Santa Clara University law professor, said it was frustrating to see Facebook publicly deny that it was a publisher in some contexts but then claim it as a defense in court.

"It's politically expedient to deflect responsibility for making editorial judgements by claiming to be a platform," he said, adding, "But it makes editorial decisions all the time, and it's making them more frequently." (Appendix B).

As we shall soon see, Defendant cannot have it Both Ways.

Respectfully submitted,

_____

CHRISTOPHER KING, J.D.

9

CERTIFICATE OF SERVICE

I the undersigned swear that a true and accurate copy of the foregoing was submitted to ECF
And was delivered via email to Counsel for Defendant at:

Keker Van Nest & Peters,

c/o Gavin Thole, Esq.
gthole@keker.com

c/o William Hicks, Esq.
whicks@keker.com

this 12 day of May, 2019

_____
CHRISTOPHER KING, J.D.