1   KEKER, VAN NEST & PETERS LLP
    PAVEN MALHOTRA - # 258429
2   pmalhotra@keker.com
    MATAN SHACHAM - # 262348
3   mshacham@keker.com
    WILLIAM S. HICKS - # 256095
4   whicks@keker.com
    633 Battery Street
5   San Francisco, CA 94111-1809
    Telephone:    415 391 5400
6   Facsimile:    415 397 7188

7   Attorneys for Defendant Facebook, Inc.

8                      UNITED STATES DISTRICT COURT

9                      DISTRICT OF CALIFORNIA

10                     SAN FRANCISCO DIVISION

11  CHRISTOPHER KING, JD                    Case No. 3:19-cv-01987-WHO
    A/K/A KingCast,
12                                          **DEFENDANT FACEBOOK, INC.'S
                                            NOTICE OF MOTION, MOTION TO
13                                          DISMISS, AND MEMORANDUM OF
                                            POINTS AND AUTHORITIES IN
14          Plaintiff,                      SUPPORT**

15      v.                                  Date:      July 17, 2019
                                            Time:      2:00 p.m.
16  FACEBOOK, INC.,                         Judge:     Hon. William H. Orrick, Jr.
                                            Dept.:     Courtroom 2
17          Defendant.
                                            Date Filed:  April 12, 2019
18
                                            Trial Date:  Not Set
19

20

21

22

23

24

25

26

27

28

1329358

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION ...................................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES ........................................................1

I.       INTRODUCTION ..........................................................................................................1

II.      BACKGROUND ............................................................................................................2

III.     ARGUMENT ..................................................................................................................4

         A.      Plaintiff's Claims Against Facebook Are Barred by Section 230(c)(1) of
                 the CDA ..............................................................................................................4

                 1.      Facebook provides an interactive computer service .................................6

                 2.      The content at issue was provided by someone other than Facebook .........6

                 3.      Plaintiff's claims seek to hold Facebook liable for "exercise of a
                         publisher's traditional editorial functions" .................................................7

         B.      The SAC Fails to State any Cause of Action against Facebook ...........................9

                 1.      The SAC fails to state a claim for breach of contract .................................9

                 2.      The SAC fails to state a claim for promissory estoppel............................11

                 3.      The SAC fails to state a claim for violation of 42 U.S.C. § 1981.............11

                 4.      The SAC fails to state a claim for fraud ...................................................13

                 5.      The SAC fails to state a claim for breach of the covenant of good
                         faith and fair dealing ................................................................................14

                 6.      The SAC fails to state a claim for false and deceptive business
                         practices pursuant to Cal. Bus. & Prof. Code § 17200 .............................14

IV.      CONCLUSION .............................................................................................................15

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Barnes v. Yahoo!, Inc.*,
570 F.3d 1096 (9th Cir. 2009) ...................................................................4, 5, 7, 8

*Berenblat v. Apple, Inc.*,
2010 WL 1460297 (N.D. Cal. Apr. 9, 2010) ....................................................14, 15

*Caraccioli v. Facebook, Inc.*,
167 F.Supp.3d 1056 (N.D. Cal. 2016) ...............................................................5, 6, 10

*Carafano v. Metrosplash.com, Inc.*,
339 F.3d 1119 (9th Cir. 2003) .....................................................................................5

*Derr v. Swarek*,
766 F.3d 430 (5th Cir. 2014) ......................................................................................11

*Ebeid v. Facebook, Inc.*,
2019 WL 2059662 (N.D. Cal. May 9, 2019) ..........................................................*passim*

*Ellis v. Gelson's Markets*,
1993 WL 285892, 1 F.3d 1246 (9th Cir. July 29, 1993) ...........................................11

*Fields v. Twitter, Inc.*,
217 F. Supp. 3d 1116 (N.D. Cal. 2016) ..................................................................1, 5

*Jurin v. Google, Inc.*,
695 F. Supp. 2d 1117 (E.D. Cal. 2010) ......................................................................5

*Kearns v. Ford Motor Co.*,
567 F.3d 1120 (9th Cir. 2009) ...................................................................................13

*King v. Friends of Kelly Ayotte*,
860 F. Supp. 2d 118 (D. N.H. 2012)......................................................................12, 13

*King v. Rumbaugh*,
2017 WL 1283501 (W.D. Wash. Apr. 6, 2017)...........................................................2

*KingCast.net v. Kelly Ayotte Senate Campaign, et al.*,
No. 1:10-CV-00492 (D.N.H. filed October 27, 2010)................................................2

*Klayman v. Zuckerberg*,
910 F. Supp. 2d 314 (D.D.C. 2012).................................................................6, 7, 8

*Lancaster v. Alphabet Inc.*,
2016 WL 3648608 (N.D. Cal. July 8, 2016).................................................5, 7, 8, 13

ii

1329358

*Levitt v. Yelp! Inc.*,
   2011 WL 5079526 (N.D. Cal. Oct. 26, 2011) ........................................................ 5, 6, 8

*Mezey v. Twitter, Inc.*,
   2018 WL 5306769 (S.D. Fla. July 19, 2018) ............................................................... 8

*Moss v. Infinity Ins. Co.*,
   197 F. Supp. 3d 1191 (N.D. Cal. 2016) ...................................................................... 14

*Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*,
   591 F.3d 250 (4th Cir. 2009) ...................................................................................... 5

*Nieman v. Versuslaw, Inc.*,
   2012 WL 3201935 (C.D. Ill. June 13, 2012) ............................................................... 6

*Obado v. Magedson*,
   2014 WL 3778261 (D.N.J. July 31, 2014) .................................................................. 6

*Olivera v. Am. Home Mortg. Servicing, Inc.*,
   689 F. Supp. 2d 1218 (N.D. Cal. 2010) ...................................................................... 14

*Perfect 10, Inc. v. CCBill LLC*,
   481 F.3d 751 (9th Cir. 2007) ...................................................................................... 5

*Qureshi v. Countrywide Home Loans, Inc.*,
   2010 WL 841669 (N.D. Cal. Mar. 10, 2010) .............................................................. 14

*Riggs v. MySpace, Inc.*,
   444 F. App'x 986 (9th Cir. 2011) ................................................................................ 8

*Shahangian v. Bank of Am. Nat'l Ass'n*,
   2015 WL 12696038 (C.D. Cal. Dec. 1, 2015) ............................................................ 13

*Sikhs for Justice "SFJ", Inc. v. Facebook, Inc.*,
   144 F. Supp. 3d 1088 (N.D. Cal. 2015) ................................................................. 6, 8, 9

*Solomon v. N. Am. Life & Cas. Ins. Co.*,
   151 F.3d 1132 (9th Cir. 1998) .................................................................................... 14

*Stringer v. Combe, Inc.*,
   2017 WL 6539779 (N.D. Cal. Dec. 21, 2017) (Orrick, J.) ........................................ 12

*Vess v. Ciba-Geigy Corp. USA*,
   317 F.3d 1097 (9th Cir. 2003) .................................................................................... 15

*Warfield v. AlliedSignal TBS Holdings, Inc.*,
   267 F.3d 538 (6th Cir. 2001) ...................................................................................... 11

DEFENDANT FACEBOOK INC.'S MOTION TO DISMISS
Case No. 3:19-cv-01987-WHO

1329358

*Young v. Facebook, Inc.*,
   2010 WL 4269304 (N.D. Cal. Oct. 25, 2010)..........................................................10

**State Cases**

*Cel-Tech Communications, Inc. v. Los Angeles Cellular Tel. Co.*,
   20 Cal. 4th 163 (1999) .................................................................................14, 15

*Columbus Bar Ass'n v. King*,
   766 N.E.2d 131 (Ohio 2002) .....................................................................................2

*Cross v. Facebook, Inc.*,
   14 Cal. App. 5th 190, 206 (2017) ..........................................................................5, 6

*Fontenot v. Wells Fargo Bank, NA*,
   198 Cal. App. 4th 256 (2011) ....................................................................................11

*Kajima/Ray Wilson v. Los Angeles Cnty. Metro. Transp. Auth.*,
   23 Cal.4th 305 (2000) .................................................................................................11

*King v. Academy of Canine Behavior*,
   No. 18-2-19210-2 (Wash. Super., filed August 1, 2018)............................................2

*King v. City of Quincy*,
   No. CV2015-01392 (Mass. Super. filed October 28, 2015) .......................................2

*King v. City of Seattle*,
   No. 18-2-22718-6 (Wash. Super., filed September 11, 2018) ....................................2

*King v. McKenna*,
   2015 WL 4040437 (Del. Super. June 29, 2015) ........................................................2

*Roybal v. Univ. Ford*,
   207 Cal. App. 3d 1080 (Ct. App. 1989)....................................................................11

**Federal Statutes**

42 U.S.C. § 1981...............................................................................................2, 3, 11, 12

Communications Decency Act § 230(c)(1) ...........................................................*passim*

47 U.S.C. § 230(f)(2) ..........................................................................................................6

47 U.S.C. § 230(f)(3) ..........................................................................................................7

**State Statutes**

Cal. Bus. & Prof. Code § 17200 ...........................................................................*passim*

iv

1329358

1

**Rules**

2

Federal Rule of Civil Procedure 12(b)(6) ........................................................................................1

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT FACEBOOK INC.'S MOTION TO DISMISS
Case No. 3:19-cv-01987-WHO

1329358

## NOTICE OF MOTION AND MOTION

Notice is hereby given to Plaintiff Christopher King that Defendant Facebook, Inc. ("Facebook") hereby moves the Court to dismiss claims 1-6 in the Second Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). This motion is noticed for hearing on July 17, 2019 at 2:00 p.m., in Courtroom 2, 450 Golden Gate Avenue, San Francisco, CA 94102.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiff Christopher King has filed suit against Facebook for blocking certain content that he wished to share on Facebook and for temporarily suspending his Facebook privileges. The crux of Plaintiff's complaint is that Facebook is applying its policies on permissible content, known as the Community Standards, unfairly so as to discriminate against black activists. Plaintiff contends that Facebook's terms of service "have been, and continues to be, disingenuously applied in a manner that restricts our speech in the World's largest portal, or 'Nation State' if you will." Accordingly, Plaintiff seeks "to hold Facebook accountable to its Terms of Service Contractual arrangements, on an objective basis, free from racism and cultural hegemony."

Facebook emphatically rejects Plaintiff's allegations; however, a dive into the merits is unnecessary and improper on the complaint before this Court. Instead, this action must be dismissed with prejudice for two reasons:

*First*, Facebook is immune from Plaintiff's claims under Section 230(c)(1) of the Communications Decency Act ("CDA"), a federal statute that immunizes interactive service providers, like Facebook, from claims premised on content provided by third parties. *See, e.g., Fields v. Twitter, Inc.,* 217 F. Supp. 3d 1116, 1121 (N.D. Cal. 2016) (Orrick, J.), *aff'd,* 881 F.3d 739 (9th Cir. 2018). The complaint reveals on its face that all the requirements for Section 230(c)(1) immunity are satisfied. Accordingly, Plaintiff's claims must be dismissed for that reason alone.

*Second*, Plaintiff has failed to allege facts sufficient to support any cause of action. Indeed, Facebook's terms of use expressly permit it to review content posted by users and to

1329358

remove any content that it believes violate its Community Standards—the very conduct upon which all of Plaintiff's claims are based.

Accordingly, the claims against Facebook must be dismissed with prejudice.

## II.    BACKGROUND

Facebook operates the world's leading social media service. Over two billion people worldwide use Facebook to create personal profiles, build community, and share content.

Plaintiff Christopher King is a frequent litigant in state and federal courts around the country[1] and maintains a number of websites and blogs, including https://howtosuefacebook.blogspot.com.Notwithstanding that Plaintiff touts his prior work in government and private practice in Ohio, he was previously suspended from the practice of law in Ohio due to "numerous sanctions that [he] received during his term of probation for his conduct in several courts."[2]

In November 2018, Plaintiff sued Facebook in King County Superior Court (Washington), asserting many of the claims that he asserts in this case. *See* Hicks Decl., Ex. A (Complaint, Case No. 18-2-28075-3, filed November 7, 2018). Plaintiff voluntarily dismissed, ***with prejudice***, his claim for violation of 42 U.S.C. § 1981. *See* Hicks Decl., Ex. B (11/13/2018 Stipulation and Rule 41 Dismissal of Sole Federal Claim). The Washington court later dismissed the remaining claims for improper venue, but not before ordering Plaintiff to pay Facebook's fees and costs incurred to respond to a premature discovery motion filed before Facebook's responses were even due. *See* 2/21/2019 Order at 2 ("[T]he court is unable to find that the Plaintiff's motion was 'substantially

---

[1] *See, e.g.*, *King v. City of Seattle*, No. 18-2-22718-6 (Wash. Super., filed September 11, 2018); *King v. Academy of Canine Behavior*, No. 18-2-19210-2 (Wash. Super., filed August 1, 2018); *King v. Rumbaugh*, 2017 WL 1283501, at *8 (W.D. Wash. Apr. 6, 2017) (granting defendant's motion to dismiss and dismissing King's complaint with prejudice), *motion for relief from judgment denied*, 2017 WL 2443769 (W.D. Wash. June 6, 2017), *appeal dismissed for failure to prosecute*, 2017 WL 6879998 (9th Cir. Nov. 28, 2017); *King v. City of Quincy*, No. CV2015-01392 (Mass. Super. filed October 28, 2015); *King v. McKenna*, 2015 WL 4040437, at *10 (Del. Super. June 29, 2015) (granting defendants' motions for judgment on the pleadings), *motions to alter or amend judgment and for relief from judgment denied*, 2015 WL 5168481, at *11 (Del. Super. Aug. 24, 2015); *KingCast.net v. Kelly Ayotte Senate Campaign, et al.*, No. 1:10-CV-00492 (D.N.H. filed October 27, 2010).

[2] *Columbus Bar Ass'n v. King*, 766 N.E.2d 131, 133 (Ohio 2002) (ordering the suspension of King from the practice of law due to "numerous sanctions that [he] received during his term of probation for his conduct in several courts").

justified or that other circumstances make an award of expenses unjust.'"); 2/25/2019 Order (awarding Facebook fees and costs pursuant to CR 37(A)(4)). On March 25, 2019, after denying Plaintiff's motion seeking relief from the imposition of attorneys' fees, the court entered final judgment against Plaintiff in the amount of $2504.49 plus interest. 3/25/2019 Order Denying Motion for Reconsideration; 3/25/2019 Judgment.  Plaintiff has yet to pay that judgment.

Shortly after dismissal of the Washington action, on April 12, 2019, Plaintiff filed a substantially similar suit against Facebook in this Court. *See* Dkt. No. 1. In his initial complaint, Plaintiff asserted six causes of action: (i) breach of contract; (ii) promissory estoppel; (iii) violation of 42 U.S.C. § 1981; (iv) fraud (v) breach of the covenant of good faith and fair dealing; and (vi) false and deceptive business practices pursuant to Cal. Bus. & Prof. Code. § 17200. *Id*. at 24.

On April 22, 2019, Plaintiff filed a First Amended Complaint ("FAC") purporting to assert an additional claim against Facebook for "Subornation of Defamation, Internet Stalking, Cyber-Bullying and Invasion of Privacy." Dkt. No. 5 at 27. However, pursuant to the parties' stipulation (Dkt. No. 18), Plaintiff later filed a Second Amended Complaint ("SAC") withdrawing the seventh cause of action as to Facebook and asserting it against the Doe defendant(s) who allegedly posted defamatory content about Plaintiff. *See* Dkt. No. 19.

Facebook now brings this motion to dismiss the remaining six causes of action. With respect to those claims, Plaintiff alleges that Facebook "banned" him on multiple occasions for posting content that Facebook determined violates its Community Standards. *See* SAC, ¶¶ 29-32. Plaintiff alleges that, on one such occasion, he was unfairly "banned" after using Facebook to post the following text:

> Nigger, Nigger, Nigger . . . . How dare you challenge me.  I am a white male of some sort of privilege.  I can basically spit in your face and drop 5 F-Bombs And the local Sheriff will find a way to ignore it. You stupid nigger.

*Id*., ¶ 33. Plaintiff contends that "every contested Facebook suspension in this case (Discovery will reveal 4-5 bans) was executed without any objective basis, in Complete Bad Faith and sustained fraudulently and with actual malice in outright willful and targeted violations of ToS by

1329358

Defendant as part of a larger corporate scheme of power, control and corporate hegemony." *Id*., ¶ 32.

The gravamen of Plaintiff's complaint—and the purported basis for every remaining cause of action—is an allegation that Facebook has applied its terms of service in an unfair manner because of Plaintiff's race and message. *See, e.g.*, SAC, ¶ 30 (alleging that Facebook improperly "banned Plaintiff in spring, 2018 for complaining about how white establishment lawyer Mark Rattan traversed an entire room to grab Plaintiff's camera in defiance of a Court Order allowing such cameras at a lawyer discipline hearing in Wisconsin. Plaintiff's point was that he, as a black man, feels like he is being treated like a nigger and cannot fight back physically or he will be at fault."); *id*., ¶ 31 ("Facebook again banned Plaintiff on or about 2 November in a case in which a white man got in his face and dropped 5 F-Bombs, but when the Sheriff came to 'investigate' he ignored all of that and made Plaintiff into the aggressor. Plaintiff put up a picture of an official document and drew parentheses around the races of the witnesses (all white) and juxtaposed those with his (black). He stated 'Now I know why the report was biased.' Incredibly, Facebook banned him from that and after his appeal, still has not told him how such post purportedly violated ToS."); *id*., ¶ 36 ("Plaintiff was wrongfully banned after he critiqued Facebook's banning of politically progressive rapper Lil B the BASEGOD: Plaintiff and Lil' B are both members of the same Protected Class, i.e. black men, or niggers. Nonetheless Defendant banned Plaintiff yet again after he wrote two posts within 2 minutes of each other that read: 'Facebook gunned down another nigger…' and 'we're dropping like flies around here.'").

## III.   ARGUMENT

### A.   Plaintiff's Claims Against Facebook Are Barred by Section 230(c)(1) of the CDA

All of Plaintiff's claims fail, and should be dismissed with prejudice, because they are barred as a matter of law by CDA Section 230(c)(1), 47 U.S.C. § 230(c)(1). The Complaint seeks to hold Facebook liable for regulating what content it permits on its platform. But Section 230(c)(1) directly prohibits such claims. *See, e.g., Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1102 (9th Cir. 2009), *as amended* (Sept. 28, 2009); *Ebeid v. Facebook, Inc.*, 2019 WL 2059662, at *5

4

1329358

(N.D. Cal. May 9, 2019).

Section 230(c)(1) provides that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1).[3] Section 230(c)(1) "establish[es] broad federal immunity to *any cause of action* that would make service providers liable for information originating with a third-party user of the service." *Perfect 10, Inc. v. CCBill LLC*, 481 F.3d 751, 767 (9th Cir. 2007) (emphasis added) (internal quotations and citations omitted), *opinion amended and superseded on denial of reh'g*, 488 F.3d 1102 (9th Cir. 2007); *accord Fields*, 200 F. Supp. 3d at 969.

Immunity extends to activities of a service provider that involve its moderation of third-party content, such as "reviewing, editing, and deciding whether to publish or to withdraw from publication third-party content." *Barnes*, 570 F.3d at 1102. "[S]o long as a third party willingly provides the essential published content, the interactive service provider receives full immunity regardless of the editing or selection process." *Carafano v. Metrosplash.com, Inc*., 339 F.3d 1119, 1124 (9th Cir. 2003).

CDA Section 230(c)(1) immunity, "like other forms of immunity, is generally accorded effect at the first logical point in the litigation process," because "immunity is an *immunity from suit* rather than a mere defense to liability." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 254 (4th Cir. 2009) (*quoting Brown v. Gilmore*, 278 F.3d 362, 366 n.2 (4th Cir. 2002)) (internal quotation marks omitted) (emphasis in original; *accord Levitt v. Yelp! Inc.*, 2011 WL 5079526, at *8–9 (N.D. Cal. Oct. 26, 2011).

Courts have applied Section 230(c)(1) at the pleading stage to dismiss a wide variety of claims, including the causes of action asserted here. *See, e.g*., *Caraccioli v. Facebook, Inc.*, 167 F.Supp.3d 1056, 1064–66 (N.D. Cal. 2016) (breach of contract; § 17200); *Cross v. Facebook, In*c., 14 Cal. App. 5th 190, 206 (2017) (same); *Lancaster v. Alphabet Inc.*, 2016 WL 3648608, at *5 (N.D. Cal. July 8, 2016) (covenant of good faith and fair dealing); *Jurin v. Google, Inc.*, 695 F.

---

[3] The CDA provides a second form of immunity under Section 230(c)(2). While Facebook reserves the right to assert Section 230(c)(2) immunity at a later stage, if necessary, it relies solely on Section 230(c)(1) for purposes of this motion, in the interest of judicial economy.

1329358

Supp. 2d 1117, 1122–23 (E.D. Cal. 2010) (fraud); *Levitt*, 2011 WL 5079526, at *8-9 (§ 17200); *Nieman v. Versuslaw, In*c., 2012 WL 3201935, at *5 (C.D. Ill. June 13, 2012) (42 U.S.C. § 1981), *report and recommendation adopted*, 2012 WL 3201931 (C.D. Ill. Aug. 3, 2012), *aff'd*, 512 F. App'x 635 (7th Cir. 2013); *Obado v. Magedson*, 2014 WL 3778261, at *7 (D.N.J. July 31, 2014) (proposed claim for promissory estoppel would "still fail to circumvent § 230 immunity"), *aff'd*, 612 F. App'x 90 (3d Cir. 2015).

Facebook is entitled to immunity under Section 230(c)(1) if (1) it is a "provider . . . of an interactive computer service," (2) the allegedly offending content was "provided by another information content provider," and (3) Plaintiff's claims treat Facebook as the "publisher" of that content. 47 U.S.C. § 230(c)(1); *Sikhs for Justice "SFJ", Inc. v. Facebook, Inc*., 144 F. Supp. 3d 1088, 1093 (N.D. Cal. 2015) *affirmed sub nom, Sikhs for Justice, Inc. v. Facebook, Inc*., 697 F. App'x 526 (9th Cir. 2017); *Ebeid*, 2019 WL 2059662, at *3. The Complaint reveals that all three requirements for Section 230(c)(1) immunity are met.

### 1.    Facebook provides an interactive computer service

Facebook undoubtedly qualifies as a "provider" of an "interactive computer service." The CDA defines "interactive computer service" as "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server." 47 U.S.C. § 230(f)(2). Not surprisingly, every court to consider whether Facebook meets this definition has rightly concluded that it does. *See e.g., Ebeid*, 2019 WL 2059662, at *3; *Igbonwa*, 2018 WL 4907632, at *5; *Sikhs for Justice*., 144 F. Supp. 3d at 1093; *Caraccioli*, 167 F. Supp. 3d at 1065; *Klayman v. Zuckerberg*, 910 F. Supp. 2d 314, 318 (D.D.C. 2012); *Cross*, 14 Cal. App. 5th at 206.

Here, the FAC itself alleges that Facebook "is without question the largest single platform in existence for social media and the marketplace of ideas." *See, e.g.*, SAC, ¶ 4. The first requirement for Section 230(c)(1) immunity is thus met.

### 2.    The content at issue was provided by someone other than Facebook

For the second requirement, the content at issue must come from an "information content provider" other than Facebook. "Information content provider" is broadly defined as "any person

6

or entity that is responsible, in whole or in part, for the creation or development" of the content at issue. 47 U.S.C. § 230(f)(3). Facebook's users, including Plaintiff, fit this definition, as numerous courts have held. *See, e.g., Ebeid*, 2019 WL 2059662, at *4 ("Plaintiff argues that the information at issue was not provided by another information content provider because plaintiff himself—not some other third-party—provided the information. That argument has been repeatedly rejected."); *Lancaster*, 2016 WL 3648608, at *3 (N.D. Cal. July 8, 2016) (holding that plaintiff's own content satisfied second prong of the CDA immunity test); *Klayman*, 753 F.3d at 1358.

Here, Plaintiff's claims arise entirely out of content that he allegedly created. *See, e.g.,* SAC, ¶ 29 ("Defendant has removed or blocked Plaintiff's content several times in 2018 for reasons it falsely labels as violations of Terms of Service"); ¶ 30 ("Defendant banned Plaintiff in spring, 2018 for complaining about how white establishment lawyer Mark Rattan traversed an entire room to grab Plaintiff's camera…"); ¶ 31 (alleging that Facebook improperly banned him for "put[ting] up a picture of an official document [on which he] drew parentheses around the races of the witnesses (all white) and juxtaposed those with his (black)."); ¶ 36 ("Plaintiff was wrongfully banned after he critiqued Facebook's banning of politically progressive rapper Lil B the BASEGOD: Plaintiff and Lil' B are both members of the same Protected Class, i.e. black men, or niggers."); *id*. ("Defendant banned Plaintiff yet again after he wrote two posts within 2 minutes of each other that read: 'Facebook gunned down another nigger…' and 'we're dropping like flies around here.'").

Consequently, the second requirement for Section 230(c)(1) immunity is met.

### 3.  Plaintiff's claims seek to hold Facebook liable for "exercise of a publisher's traditional editorial functions"

The third requirement for Section 230(c)(1) immunity is satisfied if a plaintiff "seek[s] to hold a service provider liable for its exercise of a publisher's traditional editorial functions—such as deciding whether to publish, withdraw, postpone or alter content." *Zeran,* 129 F.3d at 330. "[W]hat matters is not the name of the cause of action" but rather "whether the cause of action inherently requires the court to treat the defendant as the 'publisher or speaker' of content provided by another." *Barnes*, 570 F.3d at 1101–02. If "the duty that the plaintiff alleges the defendant violated derives from the defendant's status or conduct as a 'publisher or speaker,'"

7

1  then "[S]ection 230(c)(1) precludes liability." *Id*. at 1102.

2  Here, each of Plaintiff's claims seeks to hold Facebook liable for, and is derived from,

3  Facebook's "exercise of a publisher's traditional editorial functions—such as deciding whether to

4  publish, withdraw, postpone or alter content." *Zeran*, 129 F.3d at 330. Plaintiff's claims are

5  predicated entirely on allegations that Facebook improperly applied its Community Standards to

6  block content that he created or that Facebook improperly suspended his Facebook privileges,

7  thereby preventing him from posting content for the term of his suspension. SAC, ¶¶ 29-40.

8  These sorts of editorial decisions go to "the very essence of publishing" under Section 230(c)(1)

9  of the Act, and thus are entitled to immunity. *Klayman*, 753 F.3d at 1359; *see also Barnes*., 570

10  F.3d at 1102 ("publication involves reviewing, editing, and deciding whether to publish ***or to***

11  ***withdraw from publication*** third-party content") (emphasis added). Accordingly, courts have

12  consistently held that the conduct alleged in this case—blocking or removing content or

13  suspending a plaintiff's account—is immunized by Section 230(c)(1). *See, e.g., Ebeid*, 2019 WL

14  2059662, at *5 ("[Facebook's] decision to remove plaintiff's posts undoubtedly falls under

15  'publisher' conduct. The same is true for Facebook's on-and-off again restriction of plaintiff's use

16  of and ability to post on the Facebook platform.") (internal quotations and citations omitted).[4]

17  Moreover, to the extent Plaintiff may argue that Section 230(c)(1) does not apply here

18  because Facebook has allegedly applied its Community Standards in a discriminatory manner,

19  Plaintiff is wrong. Courts have repeatedly confirmed that there is no intent-based exception to

20  Section 230(c)(1) immunity and have applied the immunity even in cases where the defendant

21  was alleged to have acted for discriminatory reasons. *See, e.g.*, *Sikhs for Justice*, 144 F. Supp. 3d

22  at 1095; *Ebeid*, 2019 WL 2059662, at *4; *see also, e.g., Levitt*, 2011 WL 5079526, at *7-8.

23  In *Sikhs for Justice*, for instance, the plaintiff sued Facebook for Title II discrimination,

24  alleging that Facebook had engaged in "blatant discriminatory conduct by blocking Plaintiff's

---

[4] *See also, e.g., Sikhs for Justice*, 144 F. Supp. 3d at 1095 (concluding Facebook was immunized from suit under the Act for "blocking Plaintiff's content" in India); *Riggs v. MySpace, Inc.*, 444 F. App'x 986, 987 (9th Cir. 2011) (Section 230(c)(1) immunized "decisions to delete [plaintiff's] user profiles"); *Lancaster v. Alphabet, Inc.*, 2016 WL 3648608, at * 2-3 (N.D. Cal. July 8, 2016) (dismissing claims based on removal of plaintiff's videos under Section 230(c)(1)); *Mezey v. Twitter, Inc.*, 2018 WL 5306769, at *1 (S.D. Fla. July 19, 2018) (Section 230(c)(1) immunized Twitter from liability for blocking the plaintiff's content).

8

1329358

content in the entire India." *Sikhs for Justice,* 144 F. Supp. 3d at 1095. The district court

dismissed that claim based on Section 230(c)(1), noting that "removing content is something

publishers do, and to impose liability on the basis of such conduct necessarily involves treating

the liable party as a publisher." *Id.* (quoting *Barnes,* 570 F.3d at 1103); *see also, e.g., Ebeid,* 2019

WL 2059662, at *5 ("the Ninth Circuit has rejected plaintiff's argument that CDA immunity does

not apply to Title II claims" and "[t]his court sees no reason why plaintiff's UCRA claim and

plaintiff's UCL claim, to the extent it is based on discrimination, should be treated differently").

   In sum, all three requirements for Section 230(c)(1) immunity are met, and Plaintiff's

claims are barred in their entirety.

### B.     The SAC Fails to State any Cause of Action against Facebook

   Even if Section 230(c)(1) did not bar Plaintiff's claims, the complaint still fails to state a

claim because it fails to allege facts sufficient to support any plausible claim for relief.

### 1.     The SAC fails to state a claim for breach of contract

   Plaintiff contends that he "has been treated unfairly and in violation of [Facebook's]

Terms of Service that constitute a Contract." SAC, ¶ 42; *id.,* ¶ 59 ("Terms of Service (ToS) are

tantamount to a Contract as Defendant selectively proclaims on its own behalf when it suits them

so Plaintiff has a Right to believe in them."). In particular, Plaintiff alleges that Facebook has

removed posts that use racially-charged language "in a 'self-referential' or in an 'empowering

way,'" even though such content is allowed under Facebook's Community Standards. *See id.,*

¶15; *see also id.,* ¶¶ 19, 29-36, 49, 52, 54. Even accepting this allegation as true, the SAC fails to

state any plausible claim for breach of contract, for three reasons.

   ***First***, Facebook's terms of use expressly permit it determine whether content posted by

users violates the terms of use—exactly the sort of conduct that allegedly provides the basis for

Plaintiff's breach of contract claim. The terms of use to which Plaintiff agreed gave Facebook the

express permission to "remove any content or information you post on Facebook if ***we believe***

that it violates this Statement." Duffey Decl., ¶¶ 4-6, Exs. A-D § 5.2 (emphasis added); Hicks

Decl., Ex. A (Complaint in Washington action) ¶ 7 (alleging that Plaintiff "joined Facebook in or

1329358

about 2010").[5] Thus, while Plaintiff may believe that Facebook misapplied its Community Standards in blocking his content, Facebook's removal of content cannot, as a matter of law, give rise to liability for breach of contract. *See Caraccioli*, 167 F. Supp. 3d at 1063-64 (dismissing breach of contract claim based on allegation that Facebook failed to remove allegedly objectionable content in violation of its terms of service; "[B]y relying on the . . . Terms of Service . . . [Plaintiff] cannot contradict the provision clarifying that Facebook is not responsible for content shared by other users"); *see also Ebeid*, 2019 WL 2059662, at *7 (dismissing breach of contract claim, among other reasons, because "plaintiff does not allege that Facebook failed to perform its obligations under the contract. Assuming the complaint attempts to allege a breach of Facebook's Self-Serve Ad Terms (the 'SSAT'), the SSAT specifically reserved Facebook's right to 'reject or remove any ad for any reason'").

*Second*, even accepting as true Plaintiff's allegation that Facebook has somehow violated its own Community Standards, "court[s] ha[ve] correctly recognized [that], while Facebook's Terms of Service 'place restrictions on users' behavior,' they 'do not create affirmative obligations.'" *Caraccioli,* 167 F. Supp. 3d at 1064; *see also Young v. Facebook, Inc*., 2010 WL 4269304, at *3 n. 6 (N.D. Cal. Oct. 25, 2010) ("While the Statement of Rights and Responsibilities indicates that it 'derives from the Facebook Principles,' the Facebook Principles do not create legal obligations or grant a user the right to enforce those principles in court."). Nothing in Facebook's terms of use create any affirmative obligation to Plaintiff.

*Third*, Plaintiff has failed to allege any damages caused by the purported breach. *Ebeid*, 2019 WL 2059662, at *8. Plaintiff does not allege that he was ever charged for the use of Facebook's platform, nor does he allege any pecuniary harm allegedly caused by Facebook's application of its Community Standards. *Id*. (dismissing breach of contract claims against

---

[5] Moreover, Facebook's Community Standards permit Facebook to remove posts if it is "unclear" whether such posts are intended as hate speech. The Community Standards explain that Facebook may "remove the content" posted by its users—even if it is used self-referentially or in an empowering way—where "the intention [of the content] is unclear." *See* Dkt. No. 1 (Appendix A) ("In some cases, words or terms that might otherwise violate our standards are used self-referentially or in an empowering way. When this is the case, we allow the content, but we expect people to clearly indicate their intent, which helps us better understand why they shared it. Where the intention is unclear, we may remove the content.").

Facebook where "plaintiff does not allege that he was charged for ads that were not boosted" and "plaintiff's counsel [at the hearing] was unable to articulate an alternative basis for harm tied to Facebook's alleged failure to adequately boost plaintiff's posts").

### 2.    The SAC fails to state a claim for promissory estoppel

Plaintiff does not allege that Facebook made any promise to him, much less that he justifiably relied on any such promise to his detriment. Accordingly, the SAC fails to plead any actionable claim for promissory estoppel.[6] In any event, given Plaintiff's concession that he entered into a written contract with Facebook, no claim for promissory estoppel can lie. *See, e.g., Fontenot v. Wells Fargo Bank, NA*, 198 Cal. App. 4th 256, 275 (2011) (promissory estoppel claim does not lie where a contract exists).

### 3.    The SAC fails to state a claim for violation of 42 U.S.C. § 1981

As an initial matter, Plaintiff is barred from asserting his Section 1981 claim because he voluntarily dismissed that claim **with prejudice** in the earlier Washington action. Hicks Decl., Ex. B. "A final judgment on the merits precludes the parties from relitigating issues that were or could have been raised in that action." *Ellis v. Gelson's Markets*, 1993 WL 285892, at *4, 1 F.3d 1246 (9th Cir. July 29, 1993) (Unpub. Disp.). Moreover, "[a] voluntary dismissal with prejudice operates as a final adjudication on the merits and has a res judicata effect." *Warfield v. AlliedSignal TBS Holdings, In*c., 267 F.3d 538, 542 (6th Cir. 2001); *see also, e.g., Ellis*, 1993 WL 285892, at *4 ("A voluntary dismissal with prejudice has the effect of a final judgment on the merits."); *Derr v. Swarek*, 766 F.3d 430, 439-41 (5th Cir. 2014) (holding that a "unilateral dismissal with prejudice in the [previous] litigation was a final judgment on the merits invoking a res judicata bar to re-asserting the dismissed claims" in a later-filed action); *Roybal v. Univ. Ford*, 207 Cal. App. 3d 1080, 1085 (Ct. App. 1989) ("[Plaintiff's] voluntary dismissal with prejudice constituted a determination on the merits and was res judicata"). Having previously dismissed

---

[6] To state a claim for promissory estoppel, Plaintiff must sufficiently allege: (1) a promise, (2) the promisor should reasonably expect the promise to induce action or forbearance on the part of the promisee or a third person, (3) the promise induces action or forbearance by the promisee or a third person (which we refer to as detrimental reliance), and (4) injustice can be avoided only by enforcement of the promise. *See Kajima/Ray Wilson v. Los Angeles Cnty. Metro. Transp. Auth.*, 23 Cal.4th 305, 310 (2000).

1   with prejudice his Section 1981 claim, Plaintiff is barred by application of res judicata from

2   reasserting the same claim against Facebook in this action.

3       In any event, Plaintiff's allegations are facially insufficient to support a claim for violation

4   of Section 1981.[7] *First*, Plaintiff has not alleged and cannot plausibly allege a violation of his

5   right to make or enforce contracts. Plaintiff does not allege that his right to contract was in any

6   way impaired; to the contrary, Plaintiff freely admits that he entered into a contract with

7   Facebook. Nor can Plaintiff's allegation that Facebook has unfairly applied its Community

8   Standards plausibly give rise to a claim under Section 1981. As noted above, the agreement upon

9   which Plaintiff relies gives Facebook the sole discretion to remove content or information that it

10  believes violates its terms of use. Duffey Decl., Exs. A-D § 5.2.

11      *Second*, Plaintiff has not sufficiently alleged that Facebook intended to discriminate

12  against him based on race. As another district court explained in dismissing a Section 1981 case

13  brought by Plaintiff, "[f]or Mr. King's [Section 1981] claim to survive the motion to dismiss, 'the

14  events of the intentional and purposeful discrimination, as well as the racial animus constituting

15  the motivating factor for the defendant's actions must be specifically pleaded in the complaint.'"

16  *King v. Friends of Kelly Ayotte*, 860 F. Supp. 2d 118, 128 (D. N.H. 2012), *aff'd* (Apr. 5, 2013).

17  "Conclusory allegations of generalized racial bias do not establish discriminatory intent." *Id*.

18  (citations omitted). "Moreover, 'conclusory' allegations are 'not entitled to be assumed true.'" *Id*.

19  (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009). Here, just as in *Friends of Kelly Ayotte*,

20  Plaintiff's SAC is "replete with conclusory and factually unsupported allegations" of

21  discrimination. *Id*.; *see also, e.g.,* SAC, ¶¶ 32 ("Each and every contested Facebook suspension in

22  this case (Discovery will reveal 4-5 bans) was executed without any objective basis, in Complete

23  Bad Faith and sustained fraudulently and with actual malice in outright willful and targeted

24  violations of ToS by Defendant as part of a larger corporate scheme of power, control and

25  corporate hegemony."); ¶ 48 ("Dr. Boyce Watkins has noted that 'Facebook appears to be

---

[7] "To state a claim under Section 1981: (1) the plaintiff must be a member of a racial minority; (2) the defendant intended to discriminate on the basis of race; and (3) the discrimination concerns one of the activities enumerated in the statute which includes the right to make and enforce contracts." *Stringer v. Combe, Inc*., 2017 WL 6539779, at *3–5 (N.D. Cal. Dec. 21, 2017) (Orrick, J.) (citing *Brown v. Philip Morris Inc*., 250 F. 3d 789, 797 (3d Cir. 2001)).

1329358

purging black people on a systemic basis."); ¶ 50 ("Black activists on Facebook know that ToS have been, and continues to be, disingenuously applied in a manner that restricts our speech in the World's largest portal, or 'Nation State' if you will."); ¶ 54 ("Facebook's Policy-in-Fact is to slam people who condemn white racism against minorities and people of color."). Plaintiff may believe that Facebook has unfairly enforced its Community Standards to prevent him from posting certain content, but the SAC "fails to make adequate factual allegations that the motivating factor behind [such enforcement] was his race." *Friends of Kelly Ayotte*, 860 F. Supp. 2d at 128.

### 4.    The SAC fails to state a claim for fraud

Plaintiff's fraud claim must be dismissed because he has failed to sufficiently plead any of the required elements.[8] "In addition to *Iqbal*'s plausibility requirement, fraud claims are subject to Rule 9(b), which requires a plaintiff to 'state with particularity the circumstances constituting fraud,' including "the who, what, when, where, and how of the misconduct charged." *Lancaster*, 2016 WL 3648608, at *3 (quoting *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124-25 (9th Cir. 2009)). "Fraud claims must be based on facts 'specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge.'" *Id*.

Here, Plaintiff has failed to allege any purported misrepresentation, nor does he sufficiently allege that he justifiably relied on any such misrepresentation. Neither does Plaintiff "allege non-conclusory facts indicating [Facebook's purported] knowledge of falsity or intent to induce reliance." *Lancaster*, 2016 WL 3648608, at *4. Plaintiff also fails to allege that he suffered any damages, much less that "the damages in question were the direct result of the misrepresentation in question." *Shahangian v. Bank of Am. Nat'l Ass'n*, 2015 WL 12696038, at *4 (C.D. Cal. Dec. 1, 2015); *Ebeid*, 2019 WL 2059662, at *8.

---

[8] To state a claim for fraud under California law, a plaintiff must plead: "(a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009).

1329358

### 5. The SAC fails to state a claim for breach of the covenant of good faith and fair dealing

This claim fails as a matter of law because it is premised on an allegation that Facebook "removed or blocked Plaintiff's content"—conduct that Facebook's terms of use express permit. *See* Duffey Decl., Exs. A-D § 5.2; *see also Solomon v. N. Am. Life & Cas. Ins. Co.*, 151 F.3d 1132, 1137 (9th Cir. 1998) ("a party cannot be held liable on a bad faith claim for doing what is expressly permitted in the agreement"); *Ebeid*, 2019 WL 2059662, at *8 (dismissing claim against Facebook for breach of the covenant of good faith and fair dealing because "Facebook had the contractual right to remove or disapprove any post or ad at Facebook's sole discretion").

### 6. The SAC fails to state a claim for false and deceptive business practices pursuant to Cal. Bus. & Prof. Code § 17200

Plaintiff does not specify which of the three Section 17200 prongs (unlawful, unfair, or fraudulent) he contends Facebook has violated.[9] His § 17200 claim must be dismissed for that reason alone. *See, e.g., Moss v. Infinity Ins. Co.*, 197 F. Supp. 3d 1191, 1199 (N.D. Cal. 2016) ("It is unclear from Plaintiff's allegations which prong her UCL claim falls under. For this reason, the Court dismisses the eleventh cause of action for violation of the UCL . . . ."); *Qureshi v. Countrywide Home Loans, Inc.*, 2010 WL 841669, at *7 (N.D. Cal. Mar. 10, 2010) (granting motion to dismiss where the complaint "fail[ed] to identify which prongs of the UCL form the basis of this claim and fail[ed] to allege any particular facts in support thereof"); *Olivera v. Am. Home Mortg. Servicing, Inc.*, 689 F. Supp. 2d 1218, 1225 (N.D. Cal. 2010) ("[T]he Court is persuaded that dismissal of Plaintiffs' UCL claim is warranted due to the uncertainty with respect to which prong or prongs of the UCL form the basis of Plaintiffs' second claim for relief.").

In any event, Plaintiff's allegations are insufficient to state a claim under any theory. To the extent Plaintiff's Section 17200 claim is based on alleged "unlawful" conduct, it must be dismissed because Plaintiff has failed to sufficiently allege any predicate offense, as explained above. *See, e.g., Berenblat v. Apple, Inc.*, 2010 WL 1460297, at *6 (N.D. Cal. Apr. 9, 2010)

---

[9] California Business & Professions Code § 17200 prohibits "unlawful, unfair or fraudulent business act[s] or practice[s]." Cal. Bus. & Prof. Code § 17200; *Cel-Tech Communications, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999).

14

1329358

("Without a predicate violation, the . . . UCL claim as to the unlawful prong cannot be sustained."); *see also Cel–Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180, 83 (1999) (for an action based upon an allegedly unlawful business practice, the UCL "borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable").

To the extent Plaintiff contends that Facebook has engaged in fraudulent business acts or practices, that theory fails as well because Plaintiff has not alleged with specificity any misrepresentation or omission, nor has he alleged that any such misrepresentation or omission was likely to deceive members of the public. *See Berenblat*, 2010 WL 1460297, at *8; *see also Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1102 (9th Cir. 2003) (Rule 9(b)'s heightened pleading requirement applies to § 17200 claims based on alleged fraud).

Finally, Plaintiff has failed to state a claim for violation of Section 17200 under the "unfair" prong because the conduct about which he complains is expressly allowed by Facebook's terms of service, as explained above.

## IV.   CONCLUSION

For the foregoing reasons, Facebook respectfully requests the Court to dismiss the case with prejudice as to Facebook.

Dated:  June 11, 2019                                    KEKER, VAN NEST & PETERS LLP


By:  /s/ *William S. Hicks*
WILLIAM S. HICKS

Attorneys for Defendant Facebook, Inc.

DEFENDANT FACEBOOK, INC.'S MOTION TO DISMISS
Case No. 3:19-cv-01987-WHO

1329358