UNITED STATES DISTRICT FEDERAL COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| CHRISTOPHER KING, JD A/K/A KingCast,_ | ) | CASE NO. 19-CV-1987 |
| Plaintiff, | ) | |
| vs. | ) | JUDGE WILLIAM ORRICK |
| FACEBOOK, INC., | ) | |
| Defendant. | ) | |

**MEMORANDUM OF PLAINTIFF CHRISTOPHER KING, J.D.
IN OPPOSITION TO DEFENDANT'S 12(b)(6) MOTION TO DISMISS**

May it please the Court:

1. <u>Background</u>.

    Defendant's first course of action is to paint Plaintiff as a menace to the Court. This fails for reasons noted at Appendix B.  Moreover, Defendant has continued to attempt to play this case off as just another content-based claim that should receive short shrift from this Honorable Court.

    Nothing could be further from the Truth.

    To wit:  This is the first case of its kind that has a Party Admission from Defendant's CEO with French President Emmanuel Macron that his company needs to be regulated on hate speech. Almost all of my suspensions were based on purported hate speech.

    To wit:  Facebook is not a pure platform. There is a Party Admission by a Facebook staff attorney that Facebook is a Publisher. None other than noted Internet 47 USC §230 analyst Eric Goldman, Esq. (Santa Clara Law, 9th Circuit) has stated that he finds Facebook's position disingenuous.

    To wit:  Facebook's co-founder Chris Hedges noted in the New York Times that Facebook needs to be broken up, just as Plaintiff has been arguing for the better part of a year now.

https://howtosuefacebook.blogspot.com/2019/05/kingcast-and-national-review-writer.html

1

To wit:   This is the first case of its kind to incorporate actual claims of viable systemic Civil Rights issues against Defendant by 77 Civil Rights, media and legal associations including a boycott by the NAACP, Country's oldest Civil Rights Organization & a forced Civil Rights Audit

To wit:  This is the first case of its kind to incorporate legal tools of analysis provided by legal scholars including a Facebook Amicus lawyer that provide a legal framework for this Court to help regulate Defendant without engaging in imprudent Judicial Activism.

To wit:  This is the first case in which we have a Facebook Vice President of Diversity who publicly stated in his resignation that discrimination is palpable and is occurring all over the place – in the workplace and on the platform according to its former VP of Diversity Mark S. Luckie.[1]

II.     Law and Argument.

A.     The Correct Framework for Evaluation belongs to Plaintiff and Attorneys Lukmire and JP  Dyer.

First of all, Defendant's citation to Plaintiff's one-year suspension from practice 17 or 18 years ago is completely irrelevant to this case. This is particularly true when highly-esteemed Ohio State University/Moritz Law School Professor Louis Jacobs has stated that the suspension was a byproduct of "racism, ignorance and reactionary politics." See Appendix B. If that information was relevant then so too would be Plaintiff's citation to dozens if not hundreds of cases he has either won on paper, in front of a Jury, or settled. As usual and as Mark S. Luckie would concur, this is all part of the Facebook denigrate the negro modus operandi and it is quite frankly, shameful. Children have been born and gone to college in the time since that ruling occurred.

But since Defendant wanted to journey down that path Plaintiff has provided several KingCast Cases in the Public Interest, including the Nashua, NH Mayoral Commendation from the longest-sitting member of the NH Board of Governors.[2]

---

[1] His opinion must be taken as True in a 12(b)(6) Motion of course, as all facts as alleged must be liberally construed in favor of the non-moving Party. So this is more than quite serious. This is lethal to Defendant's Motion because if he is correct there is a Breach of Contract against black users, i.e. Plaintiff. It's really quite simple. Attorney Lukmire tells us so.

[2] In Appendix B, Plaintiff notes that the fact is he actually PREVAILED on most of the cases cited by Defendant at Fn 1 of its Memorandum, including Quincy, Academy of Canine Behavior. Seattle and more. This is simply Defendant attempting to make Plaintiff into a vexatious litigant, much as Defendant tried on another attempt to claim that Plaintiff filed a "frivolous" Motion to Compel. The State Court made no such finding; and that case is on Appeal because the only thing Plaintiff did wrong was to file his Motion 2 days early, but AFTER a Discovery Conference in which Counsel for Defendant made it clear Facebook was NOT going to provide Discovery. Plaintiff has researched that most courts do not award Attorney fees for such things.

2

Similarly, the case of *King v. Friends of Kelly Ayotte*, 860 F. Supp. 2d 118, 128 (D. N.H. 2012) has no place in this race because that case was entirely tainted as Magistrate Landya B. McCafferty (and all of the Defendant's lawyers involved including Jack Middleton) failed to disclose that McCafferty **actually worked for Plaintiff's opposing Counsel (Jack) as well as next to Defendant Kelly Ayotte before issuing her ruling**. That's right: Jack Middleton was both Kelly Ayotte's boss and Landya B. McCafferty's boss within a year of each other. If that doesn't smack of back-door dirty politicking then nothing does. Plaintiff places substantially more faith in the integrity of this Honorable Court than that one.[3]

That case involved a publicly-advertised rally for U.S. Senate Candidate Kelly Ayotte at a hotel open to the public. After Plaintiff interviewed the Arizona Sheriff Joe Arpaio (a convicted Criminal) the Ayotte team ran him out of the press area for no reason and one person even slapped his camera with her paperwork.

https://www.youtube.com/watch?v=b8E5y04ryb4
The Definitive GOP, Arpaio, and Kelly Ayotte Immigration movie, Nashua NH.

The Case also ignored case law that Plaintiff set forth as well as the fact that Nashua Police were present in uniform, which is entirely inconsistent with a private meeting. See *NAACP v. Thompson,* 648 F.Supp. 195 D.Md.,(1986).

Magistrate McCafferty issued a back-door quiet Recusal after a mole tipped him to the Injustice.

**https://www.youtube.com/watch?v=2vT7_uhnElQ**
Judge McCafferty Backdoor Recusal Taints NH Bar Ass'n & Courts in Free Press Racial case.

For what it's worth, however, Appendix B *does* contain a reference to *King v. Town of Franconia and Kelly Ayotte* Grafton 07-E-268 (2007) in which case Plaintiff prevailed in that lawsuit over Ayotte. So what. Win some lose some. That's law. To the extent that Defendant is trying to say that Plaintiff is offering "conclusory" statements, he is NOT. He is offering documented examples of blacks who have been victimized by Facebook's algorithms and policies as noted by the U.S.A Today and Mark S. Lukie, Director of Diversity at Facebook. At this stage of litigation it is impossible to expect more without Discovery.

Moreover, these allegations are not "conclusory" at all from SAC para 47:

47.  Facebook has allowed whites to say the same thing that blacks have been banned for: From the Reveal News story *How activists of color lose battles against Facebook's moderator army* by Aaron Sankin, 17 August 2017:

---

[3] Who in their right mind brags about a case so clearly tainted? Facebook brags about a case so clearly tainted. Who celebrates a Reporter with daily newspaper experience being roosted from a publicly-advertised campaign event? Face celebrates that. Plaintiff hopes that this Court certainly doesn't.

3



Mary Canty Merrill was fed up. So she turned to Facebook:

> "Dear White People: The terminology we use to define a problem determines how we attempt to solve it," she wrote in an April 4 Facebook post. "You are so accustomed to defining racism as people of color being the problem that you want to fix us, patronize us, save us and heal us. You rarely perceive yourselves as the problem (which is where its root lies). Thus, your interventions are most often ill-informed, misdirected and yield no meaningful or sustainable results."

> She logged in the next day to find her post removed and profile suspended for a week. A number of her older posts, which also used the "Dear white people" formulation, had been similarly erased.

> Perhaps most Facebook users would've simply waited out the weeklong ban. But Merrill, a psychologist who advises corporations on how to avoid racial bias, wondered whether she was targeted because she is African American. So she asked some white friends to conduct an experiment:

> They copied what she had written word for word and had others report it as inappropriate content. In most cases, Facebook allowed the content to remain active. None of their profiles were suspended.[4]
> https://www.revealnews.org/article/how-activists-of-color-lose-battles-against-facebooks-moderator-army/

******

Moving along to something relevant, *Sikhs for Justice v. Facebook 144 F.Supp. 3d 1088 (ND 2015)(Aff'd 2017)* is hardly on point. The 9th Circuit Affirmation speaks primarily to First Amendment claims and Plaintiff does not have one of those in play. Plaintiff says Defendant is ***not*** a Good Samaritan:

---

[4] Plaintiff is aware of many many more black activists who have had, and who continue to have, substantial problems with Facebook.

Seattle area attorney Ryan JP Dyer weighed in just for years ago:

The first courts to apply section 230 inferred an exaggerated statutory meaning and intent to the statute's immunity-granting provision, rarely reexamining the basis of those findings.

Turning the tide against a lawless no-man's-land on the Internet starts with a reexamination of Congress's intended scope of immunity and the implicit preemptive effect of section 230. Beginning with the presumption that Congress did not intend to preempt an entire field of traditional state police power, and after closely examining the textual components of section 230 as well as the legislative history, it soon becomes apparent that immunity is only applicable in a specific set of circumstances. In applying this analysis, courts could incorporate some form of objective bad faith determination to distinguish between websites that are furthering the purposes of section 230, as opposed to those that are merely posing as good Samaritans.

*The Communication Decency Act Gone Wild: A Case for Renewing the Presumption Against Preemption* (2014 Seattle University JD Candidate Ryan JP Dyer).
https://digitalcommons.law.seattleu.edu/cgi/viewcontent.cgi?article=2223&context=sulr

Thus, Defendant's argument at p.9 of its Motion to Dismiss don't work well for them under any objective analysis that is truly called for:

"The terms of use to which Plaintiff agreed gave Facebook the express permission to "remove any content or information you post on Facebook if **we believe** that it violates this Statement." Duffey Decl., ¶¶ 4-6, Exs. A-D § 5.2 (emphasis added);

The problem is that *nobody* reasonably believes that Plaintiff violated anything; same with the USA Today Facebook victims in Plaintiff's Judicial Notice Motion. Facebook is hiding behind a law and using it as sword and shield to play Thought Police on the Internet, and this Court is entitled to – indeed must – allow a Jury to take an objective look into this because it completely dovetails with Attorney Lukmire's analysis and Plaintiff's analysis.

See David Lukmire's excellent piece, *Can the Courts Tame the Communications Decency Act? The Reverberations of Zeran v. America Online*.   Attorney Lukmire has written *Amici* Briefs alongside and in support of Facebook and Microsoft: He is an Industry expert:

http://migration.nyulaw.me/sites/default/files/upload_documents/NYU-Annual-Survey-66-2-Lukmire.pdf

Second, before deciding whether an online entity is immune because of the type of entity it is or the type of role it played in disseminating illegal content, courts should consider whether section 230 should apply based on the theory of liability advanced by the plaintiff.

> The case for restricting the subject matter of section 230 immunity is equally strong...... **One thing is for certain: unless courts narrow their interpretations of section 230, deserving plaintiffs will be without redress.** As discussed, the statute should be interpreted in light of its language, which clearly sounds in defamation law. Allowing certain claims that are close to textbook defamation will help clear up whether the plaintiff has artfully pleaded garden variety tort claims in order to evade the proper boundaries of section 230. **Courts should almost never dismiss other claims, such as allegations under civil rights laws or breach of contract claims, on section 230 grounds, for they are much too far removed from the tort of defamation.** (emphasis added)

If Plaintiff needs to clarify or to add in all of the information gleaned since he filed his Complaint, the Ninth Circuit provides A "district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000). Continuing from *Darnaa*:

> Plaintiff's claim for breach of the implied covenant of good faith and fair dealing, however, is not precluded by § 230(c)(1) because it seeks to hold defendants liable for breach of defendants' good faith contractual obligation to plaintiff, rather than defendants' publisher status. Even though the claim is based on the same factual allegations as plaintiff's intentional interference claim, the source of defendants' alleged liability is different.
>
> Plaintiff has alleged sufficient facts to support its claim that defendants did not act in good faith, which is a requirement under § 230(c)(2) immunity. As acknowledged by defendants, "[r]emovals must still be 'in good faith,' so the provider must actually believe that the material is objectionable for the reasons it gives." Dkt. 34 at 13 n.4.

While Plaintiff Darnaa lost eventually based on a limitation of liability clause (affirmed at *Daarna v. Google LLC* No. 17-16233 (Ninth Cir. Nov 21 2018) Plaintiff Darnaa did not plead Gross Negligence or Fraud. At this point Plaintiff has enough evidence that a reasonable trier of fact could find that Defendant's conduct is indeed grossly negligent or fraudulent and so Amendment may be in Order. *NavCom Tech., Inc. v. Oki Electric Indus. Co., Ltd.,* No. 12-04175, 2014 WL 991102, at *9 (N.D. Cal. Mar. 11, 2014) (Judge Edward Davila); [Civic Ctr. Drive Apartments Ltd. Partn. v. S.W. Bell Video Services, 295 F.Supp.2d 1091, 1106 (N.D. Cal. 2003)](#)

> See also *Song fi Inc. v. Google, Inc*., 108 F. Supp. 3d 876 (2015).
>
> But the fact that the statute requires the user or service provider to subjectively believe the blocked or screened material is objectionable does not mean anything or everything YouTube finds subjectively objectionable is within the scope of Section 230(c). On the contrary, Judge Fisher on the Ninth Circuit expressed concern that such an "unbounded" reading of "otherwise objectionable" would enable content providers to "block content for anticompetitive purposes or merely at its malicious whim, under the cover of considering such material `otherwise objectionable.'" See [Zango, Inc. v. Kaspersky Lab, Inc., 568 F.3d 1169, 1178 (9th Cir.2009) (Fisher, J., concurring)](#).

6

>Because the allegedly inflated view count associated with "Luv ya" is not "otherwise objectionable" within the meaning of Section 230(c)(2), YouTube is not entitled to immunity from Plaintiffs' contract or tortious interference claims.

Song Fi eventually lost as well (No. 14-CV-05080-CW May 15 2018) but owing to reasons not present in the Case at Bar. It requires a factual analysis based on Discovery.

Once again note the Good Samaritan issue because Plaintiff and scores of blacks have argued that Facebook is in no ways being a Good Samaritan in this case because our discussion of racism does not connote hate speech by any plausible objective – or even subjective – standard.

The time has come for Mark Zuckerberg to get his wish: This Court can help start the regulation effort by declaring that the words that Plaintiff has used to describe being quote "treated like a nigger" simply do not denote or connote hate speech as defined by Defendant itself in its Terms of Service and in its training and policy materials.

Plaintiff has no doubt that if Facebook had a policy manual that provided for de jure discrimination Courts would have already found a way to circumvent the alleged Absolute Immunity that Facebook claims. Plaintiff submits that given the facts of this case it is clear that de facto discrimination is occurring all over the place – in the workplace and on the platform according to its former VP of Diversity Mark S. Luckie.[5]

As such, the onus is now on Facebook to explain why this Court should give all of this a pass and to allow the abuse to continue, even as we still wait for the culmination of the ongoing Civil Rights Audit that Facebook was forced into conducting.

---

[5] His opinion must be taken as True in a 12(b)(6) Motion of course, as all facts as alleged must be liberally construed in favor of the non-moving Party until Plaintiff takes his Deposition to determine the factual backdrop for his allegations in further detail. So this is more than quite serious. This is lethal to Defendant's Motion because if he is correct there is a Breach of Contract against black users, i.e. Plaintiff. It's really quite simple. Attorney Lukmire tells us so.

B.      Summary of Claims:

The Cause of Action against Facebook is not subject to immunity in general. That much has been shown by arguments never before advanced by any Facebook litigant including the Darnaa case and the Lukmire and Dyer Treatises.

**The Breach of Contract and Promissory Estoppel** elements have been met by any objective standard that the Court must apply in this case. Mark S. Luckie's commentary is very explicit must be taken at full value and as such, black users are being denied the Benefit of the Bargain at Facebook. Further, Plaintiff noted that he relied upon the Terms of Service being fairly implemented as well as the promises for prompt and transparent moderating that did not happen when his Appeal sat rotting for two (2) whole weeks out of a four (4) week Facebook Jail Sentence.

**The 42 U.S.C. §1981 Claims** survive at this point as well. Mark S. Luckie's commentary is very explicit and it must be taken at full value and as such, black users are being denied the Benefit of the Bargain at Facebook. The 77 Civil Rights and Media groups feel the same way but he has firsthand knowledge and observations that are relevant, particularly since Attorney Lukmire and others have clarified the proper scope of 47 USC §230.

**The Fraud and False and Deceptive Claims** survive as well because Facebook is promising something to black users that it is intentionally not providing, and the gravity of the Facebook oppression is devastating given Facebook's rather successful attempts at creating a monopoly that even Lindsey Graham noted in the Congressional Hearings with Mark Zuckerberg last year.

For their part Defendant falsely claims at p. 13 that "Plaintiff also fails to allege that he suffered any damages, much less that "the damages in question were the direct result of the misrepresentation in question." *Shahangian v. Bank of Am. Nat'l Ass'n*, 2015 WL 12696038, at *4 (C.D. Cal. Dec. 1, 2015); Ebeid, 2019 WL 2059662, at *8.

Defendant is well aware that they had Plaintiff in Facebook jail when his mother passed from this Earth, and that they were denying him the right to talk about it with his 1,900 friends.

Defendant's argument on failure to identify the prongs of §17200 is similarly unavailing. Plaintiff clearly notes that there is Fraud involved throughout this case and he has shown by any reasonable indicia that we need to look further into the promises that Facebook is making and failing to uphold, particularly toward its black users. See again the USA Today Judicial Notice and the Mark S. Luckie observations that require DISCOVERY to flush out.

It's as of Defendant expects Plaintiff at this stage of litigation to pull a rabbit out of a hat and present a memo to the Court from its corporate office lunch table that states "Hey, let's discriminate against black users who discuss racism."

That's preposterous. But given reasonable Discovery Plaintiff assures the Court that there is going to be more than enough on the table to put before a Jury to determine how they digest things.

III.     Conclusion.

Courts have been getting it wrong for YEARS about the reach of 47 USC §230, as seen by two scholars below, one of whom is a Facebook Amicus Lawyer no less.   The Claims that Plaintiff are bringing are Contractual and Civil-Rights based and as Attorney Lukmire opines, Courts should almost never dismiss other claims, such as allegations under civil rights laws or breach of contract claims, on section 230 grounds, for they are much too far removed from the tort of defamation.

Interestingly, Plaintiff initiated a poll on a certain BMW forum for vintage BMWs. The thread was named Facebook is a public utility that must be regulated.[6]

A commenter replied:

> Facebook does what Facebook wants. No matter how good a lawyer you might be, I bet Facebook has better and enough lawyers to just bury you procedurally if not by the letter of the law. Zuckerberg's testimony before Congress could best be summed up as "I'm worth 40 billion dollars" Over and over and over again. And it would have been more honest even. That's what he cares about, not you, not your Mother, not about being fair.[7]
> http://www.mye28.com/viewforum.php?f=17
> http://www.mye28.com/viewtopic.php?f=17&t=149815

This case is a shining example of Facebook's corporate overbreadth and substantial deviation from its own stated policies. As such, we are already well past a 12(b)(6) Motion to Dismiss or even a Summary Judgment Motion when that time arises. These are clearly issues for a Jury to determine, after a full and principled Discovery period.

Respectfully submitted,

_____
Christopher King, J.D.

---

[6] The prescience of Plaintiff's statement last winter cannot now be denied. It's everywhere in the news whether Facebook likes it or not. Zuckerberg even met with French President Emmanuel Macron this month about it.

[7] Accord Facebook founder Chris Hughes Opinion "It's Time to Break Up Facebook" By Chris Hughes New York Times May 9, 2019, *supra*. The link itself is a private forum within the MyE28 forum.

9

CERTIFICATE OF SERVICE

I the undersigned swear that a true and accurate copy of the foregoing was submitted to ECF And was delivered via email to Counsel for Defendant at:

Keker Van Nest & Peters,

PAVEN MALHOTRA - # 258429
pmalhotra@keker.com

MATAN SHACHAM - # 262348
mshacham@keker.com

WILLIAM S. HICKS - # 256095
whicks@keker.com

this 26th Day of June, 2019

_____
CHRISTOPHER KING, J.D.