UNITED STATES DISTRICT FEDERAL COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| CHRISTOPHER KING, JD A/K/A KingCast,_ | ) | CASE NO. 19-CV-1987 |
| | ) | |
| Plaintiff, | ) | JUDGE WILLIAM ORRICK |
| vs. | ) | |
| FACEBOOK, INC., and DOES UNKNOWN, | ) ) | |
| | ) | |
| Defendants. | | |

**SUPPLEMENTAL PRUNEYARD BRIEFING VIS A VIS**
**FREEDOM WATCH/LAURA LOOMER V. GOOGLE ET AL.**
**U.S. CT. APP D.C.  19-730 (AUGUST 20, 2019)**

Now comes the Plaintiff to provide an historical backdrop for his prior request that the Court ORDER him to File an Amended Complaint contemplating a First Amendment Claim:

We recall that Defendant was fond of trying to use the one case that Plaintiff lost against NH AG/U.S. Senator Kelly Ayotte against him. Yes of course Plaintiff actually won three (3) of the four (4) cases he fought against her but most important now is the one that he lost because in it, Plaintiff cited to Pruneyard and two other cases involving private property rights vis a vis public speaking rights: NAACP v. Thompson, 648 F.Supp. 195 D.Md.,(1986), Pruneyard v. Robbins, 447 U.S. 74 (1980). Moose Lodge No. 107 v. Irvis, 407 U.S. 163 (1972). From Plaintiff's Appellate Brief  in Christopher King A/K/A Kingcast v. Friends of Kelly Ayotte, (1st Cir. Ct. App. 12-1891):

It bears repeated emphasis that we do not have under consideration the property or privacy rights of an individual homeowner or the proprietor of a modest retail establishment. A handful of additional orderly persons soliciting signatures and distributing handbills in connection therewith, under reasonable regulations adopted by defendant to assure that these activities do not interfere with normal business operations ... would not markedly dilute defendant's property rights. Pruneyard at 78, 100 S.Ct. at 2039 (citations omitted).

Pruneyard and its progeny all sustained a slow death in the brick-and-mortar era of private shopping malls. Whether the litigants or the Court in this case agree was that development is of small moment now however:

1

The rationale for that death was steeped largely in the fact that the essential function of the shopping mall was that of a private enterprise not established for the purpose of activities consonant with the First Amendment. Attorney Craig L. Finger provides a succinct history in his published piece, "**Rights of Shopping Center Owners To Regulate Free Speech and Public Discourse.**"

https://www.foxrothschild.com/publications/rights-of-shopping-center-owners-to-regulate-free-speech-and-public-discourse/

More than 20 years later, in 1968, in *Amalgamated Food Employees Union Local 590 et al. v. Logan Valley Plaza, Inc.*, a Pennsylvania state court granted an injunction prohibiting union members from picketing a supermarket in a shopping center on the basis that the union's conduct constituted a trespass on the property of the supermarket and the shopping center. However, the U.S. Supreme Court, following the rationale in *Marsh v. Alabama*, reversed the state court's decision and held that since the shopping center was freely accessible and open to the public, the state could not use its trespass laws to exclude members of the public wishing to exercise their First Amendment rights. The opinion of the U.S. Supreme Court noted that circumstances might exist where reasonable regulations governing the exercise of First Amendment rights might be warranted, such as where the property is not ordinarily open to the public, where the exercise of First Amendment rights would unduly interfere with the normal use of the property by other members of the public, etc. The U.S. Supreme Court reserved judgment as to the right to prohibit such protests if unrelated to the operations of the shopping center.

Just four years later, in 1972, the U.S. Supreme Court decided *Lloyd Corp., Ltd. v. Tanner et al*. In this case, the shopping center owner sought to prevent protesters from distributing hand bills protesting the Vietnam War in keeping with its strict policy prohibiting handbilling. The district court (following the decisions in *Marsh v. Alabama* and *Amalgamated Food Employees Union Local 590 et al. v. Logan Valley Plaza, Inc*.) found that since the shopping center was generally open to the public, it was the equivalent of a public business district and the prohibition against distributing hand bills violated the protesters' First Amendment rights. The district court issued an injunction restraining the shopping center owner from interfering with such rights. The U.S. Court of Appeals for the Ninth Circuit upheld the district court's ruling. The shopping center owner appealed to the U.S. Supreme Court claiming the court's decision violated its private property rights protected by the First and Fifth Amendments. The U.S. Supreme Court reversed the decision of the lower courts and vacated the injunction on the grounds that the activity in this case was not related to the shopping center's operations.

In 1976, the U.S. Supreme Court decided *Hudgens v. National Labor Relations Board.* In this case, striking warehouse employees picketed their employer's retail store in a privately owned shopping center. The owner threatened to have the striking employees arrested for trespass if they continued to picket. The union then filed an unfair labor practice charge against the owner with the National Labor Relations Board. Relying on the *Logan Valley Plaza* case, the NLRB issued a cease and desist order against the owner. The case was appealed to the U.S. Court of Appeals for the Fifth Circuit, which remanded the case back to the NLRB in light of the U.S. Supreme Court's decision in the *Lloyd Corp*. case. The U.S. Supreme Court overruled the circuit court's order and held the striking union members did not have a First Amendment right to enter the mall for the purpose of picketing. The U.S. Supreme Court stated "that the rationale of *Logan Valley* did not survive the Court's decision in the *Lloyd* case." This case essentially overruled the *Logan Valley case*, and the pendulum began to swing back in favor of shopping center owners.

**Fortunately, there is good news for shopping center owners in most states. Except for California, which still follows the rationale set forth in the *Pruneyard* case, and several other states such as New Jersey, Massachusetts and Colorado, which have adopted versions of the *Pruneyard* rationale**, the majority of state court decisions since *Pruneyard* have protected the rights of private property owners to enact regulations governing political protests, demonstrations and similar activities at their shopping centers and have held that individuals and groups do not have the unfettered right to enter private property for the purpose of picketing, demonstrating or conducting similar types of activities. [Emphasis Added]

*******

Fortunately for Free Speech Advocates, Facebook fights assiduously to have cases against them heard in California Courts, as they proudly point out they have never lost a case in the Continental U.S on such matters. [1] This brings us squarely to the point:

1.   Pruneyard 2019 Applies and Provides the Appropriate Framework for Resolution.

This case, and many others like it, involves public speech rights on the World's largest speech platforms and whether or not these platforms are treating their users fairly or whether they are engaged in various types of viewpoint-based restrictions when Hate Speech is not actually involved.[2] See again the U.S.A. Today Feature on which he requested Judicial Notice on prior occasion:

https://www.usatoday.com/story/news/2019/04/24/facebook-while-black-zucked-users-say-they-get-blocked-racism-discussion/2859593002/?fbclid=IwAR1v3n_Duzo3ynbDepsmjtdfYDJyrkgmpIT8LpDXiW2M7vLzJ_V22NsxjoQ

**Facebook while black: Users call it getting 'Zucked,' say talking about racism is censored as hate speech**

In reading the First Amendment Complaint of Plaintiff-Appellant Loomer, one is immediately struck by the fact that the language tracks the language of Pruneyard and progeny:

---

[1] They did lose a Canadian case on this issue; *Douez v Facebook, Inc., 2017 SCC 33*. Plaintiff is not aware of how *Loomer v. Google* came to be heard in the DC District Court; perhaps this was because Google was the lead Defendant and does not avail itself of the same Forum Selection Clause as Facebook but that matter is not crucial to our review of this issue.

[2] Recall that Defendant Facebook's Manifest Destiny was to become a virtual "Nation State" according to its first Director of Policy. To that end Facebook also owns

4. <u>The First Amendment to the United States Constitution</u>.

Plaintiff's Complaint alleged, *inter alia*,

17. According to Senator Ted Cruz, as reported in the New York Times, "if internet companies are not a 'neutral platform,' they should not be protected by a law known as Section 230 of the Communications Decency Act, which (some claim) gives companies broad legal immunity for what people put on their services." 1

18. In the same article, Rep. Kevin McCarthy stated, "Social media platforms are increasingly serving as today's town squares….But sadly, conservatives are too often finding their voices silenced."[3]

98. Defendants created, operate, and control public platforms that are for public use and public benefit and invite the public to utilize their platforms as a forum for free speech.

99. Defendants act as quasi-state actors because they regulate their public platforms, thereby regulating free speech within their public forums, Google/YouTube, Facebook, and Twitter, Apple, Instagram as well as the other social media companies or entities.

The Lower Court incorrectly DISMISSED all of these concerns. In rejecting the entire opinion of the Lower Court the Court of Appeals succinctly stated in its per curiam ORDER:

"Upon consideration of the motion for summary affirmance, the oppositions thereto, and the replies, it is ORDERED that the motion for summary affirmance be denied. The merits of the parties' positions are not so clear as to warrant summary action. See Taxpayers Watchdog, Inc. v. Stanley, 819 F.2d 294, 297 (D.C. Cir. 1987) (per curiam). It is FURTHER ORDERED that the Appellees be limited to one joint brief, not to exceed 13,000 words. See Fed. R. App. P. 32(a)(7). (Appendix B).

\*\*\*\*\*\*\*\*\*\*\*

So where does that leave us, then: That leaves us a quick drive up the motorway from Pruneyard to this Court is where it leaves us:

Because appellants have not shown that the limited right of access held to be afforded by the California Constitution burdened their First and Fourteenth Amendment rights in the circumstances presented, I join the judgment of the Court. I do not interpret our decision today as a blanket approval for state efforts to transform privately owned commercial property into public forums. Any such state action would raise substantial federal constitutional questions not present in this case. (Pruneyard, 101)

---

[3] So too are blacks.  Protected Class. Insular Minority. We all know the Rules here. All of it has to stop, and when a particular Plaintiff can show the presence of active bad faith and deceit, that Plaintiff is entitled to a Jury Trial, just as Attorney Lukmire opined. It's really simple: The Emperor has no clothes…. at least not anymore S/He doesn't.

4

That leaves us with a horse of another color because unlike private shopping malls with an incidental Free Speech component, we have privately-owned speech platforms that are *specifically designed* to host speech, allegedly on a neutral basis and free from Retaliatory viewpoint or content-based discrimination. As such, the California case of *Ralphs Grocery Co. v. United Food and Commerical Workers Union Local 8*, No. S185544 (Dec. 27, 2012) is inapposite because, again, Facebook was designed to facilitate public speech. As such, there is no argument of an unauthorized taking to be made because they are already in the business of speech, *ab initio*.

But neutrality is clearly not what is happening, at least in this case and while this case naturally has larger implications, this is not a Class Action case and the Court has only to rule on the facts of this particular case as presented, using relevant older and developing Law.[4] As such, it is clear that the time has come for *Pruneyard* to again make its presence known such that Plaintiff be ORDERED to file a final Amended Complaint that will indeed include a valid Justiciable First Amendment Claim for a Trier of Fact to hear and pass Judgment on. Accord Fashion Valley Mall, LLC v. National Labor Relations Bd.

> Prohibiting speech that advocates a boycott is not a time, place, or manner restriction ecause it is not content neutral. The Malls rule prohibiting persons from urging a boycott is improper because it does not regulate the time, place, or manner of speech, but rather bans speech urging a boycott because of its content. Restrictions upon speech " 'that by their terms distinguish favored speech from disfavored speech on the basis of the ideas or views expressed are content based.' [Citation.]" (DVD Copy Control Assn., Inc. v. Bunner (2003) 31 Cal.4th 864, 877, 4 Cal.Rptr.3d 69, 75 P.3d 1.)
>
> The Mall argues that its rule prohibiting speech that urges a boycott is "a 'content-neutral' restriction under California law because it applies to any and all requests for a consumer boycott of the Mall's merchants . regardless of the subject matter or viewpoint of the speaker advocating the boycott." The Mall is mistaken. The Mall's rule prohibiting all boycotts may be viewpoint neutral, because it treats all requests for a boycott the same way, but it is not content neutral, because it prohibits speech that urges a boycott while permitting speech that does not.. but it is not content neutral, because it prohibits speech that urges a boycott while permitting speech that does not.

In sum, you can't pick and chose. This is particularly true as a Publisher. See Section II, i*nfra*.

II.     Facebook is a Publisher.

Mehta argued in court Monday that Facebook's decisions about data access were a "quintessential publisher function" and constituted "protected" activity, adding that this "includes both the decision of what to publish and the decision of what not to publish".

David Godkin, an attorney for Six4Three, later responded: "For years, Facebook has been saying publicly that it's not a media company. This is a complete 180."

Eric Goldman, a Santa Clara University law professor, said it was frustrating to see Facebook publicly deny that it was a publisher in some contexts but then claim it as a defense in court.

"It's politically expedient to deflect responsibility for making editorial judgements by claiming to be a platform," he said, adding, "But it makes editorial decisions all the time, and it's making them more frequently."

Facebook may be resistant to embrace its role as a publisher due to stricter laws and regulations outside of the US that could cause the company trouble, Goldman said.

https://www.theguardian.com/technology/2018/jul/02/facebook-mark-zuckerberg-platform-publisher-lawsuit
"Is Facebook a publisher? In public it says no, but in court it says yes"

"The **publisher** discretion is a free speech right irrespective of what technological means is used. A newspaper has a **publisher** function whether they are doing it on their website, in a printed copy or through the news alerts," **Sonal Mehta**, a lawyer for **Facebook**, said in court.
https://gizmodo.com/facebook-called-itself-a-publisher-in-court-after-repea-1827348844
Facebook Called Itself a 'Publisher' in Court After Repeatedly Rejecting the Label in Public

The contradictory claim is Facebook's latest tactic against a high-profile lawsuit, exposing a growing tension for the Silicon Valley corporation, which has long presented itself as neutral platform that does not have traditional journalistic responsibilities.

The suit, filed by an app startup, alleges that Mark Zuckerberg developed a "malicious and fraudulent scheme" to exploit users' personal data and force rival companies out of business. Facebook, meanwhile, is arguing that its decisions about "what not to publish" should be protected because it is a "publisher".

In court, Sonal Mehta, a lawyer for Facebook, even drew comparison with traditional media: "The publisher discretion is a free speech right irrespective of what technological means is used. A newspaper has a publisher function whether they are doing it on their website, in a printed copy or through the news alerts."
http://www.milwaukeeindependent.com/syndicated/facebook-publisher-either-lying-public-court/
"Is Facebook a Publisher? Either it's Lying to the Public or in Court"

CONCLUSION

Plaintiff has been resolute throughout this case as he told the Court: "Now is the time to make this right without engaging in unwarranted Judicial Activism." As time, history and perspective grace the legal landscape on this issue the entire Judiciary and the Free World will soon see that J.P. Dyer, Facebook Amicus Counsel David Lukmire, the Darnaa Court and Plaintiff KingCast were all correct, and everyone else….. was indeed, wrong.

It is time to usher in a new era of corporate accountability and responsibility and Plaintiff his honored to have presented one of the leading and most thoroughly-briefed cases on these issues. The Court should ORDER Plaintiff to file a final Amended Complaint to Countenance a First Amendment Claim as well as a Sherman Act Claim.

Respectfully submitted,

_____
Christopher King, J.D.


CERTIFICATE OF SERVICE

I the undersigned swear that a true and accurate copy of this Update
was submitted to ECF
And was delivered via email to Counsel for Defendant at:

Keker Van Nest & Peters,

PAVEN MALHOTRA - # 258429
pmalhotra@keker.com

MATAN SHACHAM - # 262348
mshacham@keker.com

WILLIAM S. HICKS - # 256095
whicks@keker.com

this 31st Day of August 2019

_____
CHRISTOPHER KING, J.D.