UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CHRISTOPHER KING,

    Plaintiff,

    v.

FACEBOOK, INC., and DOES

    Defendants.

Case No. 19-cv-01987-WHO

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**

Re: Dkt. Nos. 20, 28

Section 230(c)(1) of the Communications Decency Act ("CDA," 47 U.S.C. § 230(c)(1)) provides broad immunity for interactive computer services providers against claims that treat the providers as publishers. In this case, pro se plaintiff Christopher King alleges six causes of action against defendant Facebook, Inc. ("Facebook"), all of which are predicated on Facebook's acts of removing King's posts from its platform or suspending King's Facebook account.[1] King alleges Facebook removed multiple posts by him, and temporarily suspended his Facebook access on several occasions in 2018, for posts that Facebook deemed a violation of its terms of service ("ToS"). The crux of his claim is that Facebook has violated its ToS in removing his posts and suspending his account, and that Facebook treats black activists and their posts differently than it does other groups, particularly white supremacists and certain "hate groups." Because each cause of action accuses Facebook of wrongful acts it took as a publisher, none survives the application of Section 230(c)(1) of the CDA, and Facebook's motion to dismiss is granted.[2]

---

[1] King's six causes of action against Facebook are (1) breach of contract, (2) promissory estoppel, (3) violation of 42 U.S.C. § 1981, (4) fraud, (5) breach of the covenant of good faith and fair dealing, and (6) false and deceptive business practices under Cal. Bus. & Prof. Code. § 17200. *See* Second Amended Complaint ("SAC") [Dkt. No. 19] at 27.

[2] King asserts a seventh cause of action for "Defamation, Internet Stalking, Cyber-Bullying and Invasion of Privacy" exclusively against "unknown" Doe defendants. This claim is based on his allegations that these Does posted defamatory statements on Facebook about him and his former

**BACKGROUND**

**I.    FACTUAL BACKGROUND**

Facebook runs a web-based social media service with over two billion users. SAC ¶¶ 4, 11. King asserts that Facebook is the "World's largest single alleged protector of Public Speech Rights the World has ever seen," but has a mission to create a "Nation State" that intends to "crush all competition." *Id.* ¶¶ 11, 13–14. King is a former civil rights attorney and journalist. *Id.* ¶¶ 9–10. He joined Facebook in or around 2010, and often uses the site to post about his activism. *Id.* ¶¶ 10, 19, 37. He also created the following site: https://howtosuefacebook.blogspot.com. *Id.* ¶ 38.

King filed this action to "hold FB accountable to its TOS contractual arrangements." *Id.* at 1. Facebook has a contractual, adhesive set of Terms of Service ("ToS") for its users, which King claims includes provisions that protect minority users from being punished for using certain terms in a "self-referential" or "empowering way." *Id.* ¶ 15. He alleges that Facebook removed his access to the service or blocked content he posted on several occasions in 2018 for reasons it labeled as violations of the ToS. In Spring 2018, he "was banned" by Facebook when he posted a complaint regarding a confrontation he had with an attorney where he commented that he "feels like he is being treated like a nigger and cannot fight back physically or he will be at fault." *Id.* ¶ 30. On November 2, 2018, Facebook "banned" him again for violating its ToS after plaintiff posted about an argument with a "white male" who "got in his face and dropped 5 F-Bombs." *Id.* ¶ 31. King posted the sheriff's report of the incident on Facebook, describing the report as biased and pointing out the race of the witnesses juxtaposed with his own race. *Id.* He was "banned" four to five more times for posting about this incident, including when he uploaded photos of the confrontation and the following text:

> Nigger, Nigger, Nigger.... How dare you challenge me. I am a white male of some sort of privilege. I can basically spit in your face and drop 5 F-Bombs And the local

---

girlfriend "MH" and his current girlfriend "SW." Those posts were made through Facebook accounts held by users "Troy," "Facebook User," and "Lisa Marie." *Id.* ¶¶ 66–69. King and Facebook agree that his defamation-claim is asserted only against these Does. *Id.* ¶ 73. There is no proof that King has served the Doe defendants as of the date of this Order.

Sheriff will find a way to ignore it. You stupid nigger.

*Id.* at ¶¶ 32–33.

King was banned again "on his birthday" for a violation of Facebook's ToS, and banned again in Fall 2018 for another ToS violation. *Id.* ¶¶ 34–35. He was banned on another occasion for posts referencing Facebook's banning of "politically progressive rapper Lil B the BASEGOD," writing that "Facebook gunned down another nigger…" and "we're dropping like flies around here." *Id.* ¶ 36. Finally, his blog howtosuefacebook.blogspot.com was blocked from being linked to or shared through Facebook's "Messenger" service due to an unspecified violation of Facebook's "Community Standards."

King alleges that Facebook's treatment of black posters is not equivalent to its treatment of others, alleging that Facebook "has allowed whites to say the same thing that blacks have been banned for." *Id.* ¶¶ 47-49. He relies on published comments and articles from Facebook users, attorneys, and a former Facebook strategic manager to support his allegation that Facebook treats its black employees and users differently than its white ones, and bans them for the exact sort of activism, content creation, and posting that he himself engages in. *Id.* at 1–3, ¶¶ 17, 22, 25, 26–28, 44, 47–48. King alleges that Facebook's own breach of its ToS is actionable because Facebook's removal of his posts was in "bad faith" and "retaliatory" based solely on the content of his speech. *Id.* at 1, ¶¶ 24, 38–40.

Since the hearing on this motion, King has filed a post-hearing update, explaining more clearly an additional theory of liability; that Facebook has retaliated against him for his speech critical of Facebook. He notes that Facebook has not blocked access to King's First Amendment page but has blocked access to his How to Sue Facebook page. As of August 20, 2019, Facebook has apparently reversed course and now allows linking to and sharing of King's How to Sue Facebook page. Dkt. Nos. 33, 40.

II.    IPROCEDURAL BACKGROUND

King filed this case on April 12, 2019, days after an action alleging similar claims based on similar allegations was dismissed with prejudice in King County Superior Court (Seattle, Washington). *See* Declaration of William Hicks ("Hicks Decl.") [Dkt. No. 20-2], Exs. A & B. In

1   that case, filed on November 7, 2018, King asserted three of the same causes of action against
2   Facebook that he alleges here, Violation of 42 U.S.C. § 1981, Breach of Contract, and Promissory
3   Estoppel. Hicks Decl., Ex. A. Those claims were based on materially similar allegations to ones
4   asserted here, that Facebook improperly removed his posts, suspended his account, and
5   discriminated against him and other black activists. Ex. A at 14.

6   In the Washington state court action, King voluntarily dismissed with prejudice his claim
7   for violation of 42 U.S.C. § 1981. Hicks Decl., Ex. B (11.13.2018 Stipulation and Rule 41
8   Dismissal of Sole Federal Claim with Prejudice). The Washington state court dismissed the
9   remaining claims for improper venue and ordered King to pay Facebook's fees and costs incurred
10  to respond to a premature discovery motion filed before Facebook's responses were even due. *See*
11  2/21/2019 Order at 2 ("[T]he court is unable to find that plaintiff's motion was 'substantially
12  justified or that other circumstances make an award of expenses unjust.'"). The Washington state
13  court entered final judgment against King, denying a motion for reconsideration, on March 25,
14  2019.

15  King filed a First Amended Complaint in this case on April 22, 2019. He filed a Second
16  Amended Complaint – the pleading at issue on this motion to dismiss – on May 23, 2019, to
17  clarify that his seventh (defamation-style) claim is asserted against the unknown Doe defendants
18  who posted the alleged defamatory content about plaintiff and his girlfriends on Facebook.
19  Facebook now moves to dismiss the six claims asserted against it.

**LEGAL STANDARD**

21  Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint
22  if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to
23  dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its
24  face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). A claim is facially plausible when
25  the plaintiff pleads facts that "allow the court to draw the reasonable inference that the defendant
26  is liable for the misconduct alleged." *Ashcroft v.* Iqbal, 556 U.S. 662, 678 (2009) (citation
27  omitted). There must be "more than a sheer possibility that a defendant has acted unlawfully." *Id*.
28  While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts

4

sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570.

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the Court accepts the plaintiff's allegations as true and draws all reasonable inferences in favor of the plaintiff. *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

Pro se complaints are held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). "[P]articularly in civil rights cases," the court has an obligation "to construe the pleadings liberally and to afford the [pro se plaintiff] the benefit of any doubt." *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985) (en banc). However, pro se pleadings must still allege facts sufficient to allow a reviewing court to determine whether a claim has been stated. *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

## DISCUSSION

Facebook argues, dispositively, that all of plaintiff's claims are barred by Section 230 of the Communications Decency Act, 47 U.S.C. § 230(c)(1). Section 230(c)(1) of the CDA provides full immunity for interactive computer services providers against claims that treat the service provider as publishers of others' information, which is what Facebook contends King is doing here. Facebook also argues, in the alternative, that King's claims must be dismissed for failure to plead sufficient facts.

Each of King's claims against Facebook seeks to hold it liable as a publisher for either removing his posts, blocking his content, or suspending his accounts. These types of acts are barred by the immunity provided under Section 230 of the CDA. As the Ninth Circuit has explained, Section 230 of the CDA "immunizes providers of interactive computer services against liability arising from content created by third parties." *Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC* ("Roommates"), 521 F.3d 1157, 1162 (9th Cir. 2008) (en banc). Under Section 230(c)(1), "providers or user of an interactive computer service shall not be treated

1  as the publisher or speaker of any information provided by another information content provider."
2  47 U.S.C. § 230(c)(1).

3     The goal of Section 230(c)(1) is to provide immunity to service providers from responsibility for posts made by their users and to allow for an editing and moderating process that does not hold providers liable for all defamatory or otherwise unlawful messages that they did not edit or delete. *Roommates.com, LLC,* 521 F.3d. at 1163. Section 230(c)(1) immunity extends to service providers' activities where they moderate third-party content, such as "reviewing, editing, and deciding whether to publish or to withdraw from publications third party content." *Barnes v. Yahoo*, 570 F.3d 1096, 1102 (9th Cir. 2009). The service provider receives full immunity, regardless of their moderation process. *Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1124 (9th Cir. 2003).

   Numerous courts have applied Section 230(c)(1) at the pleading stage to dismiss the exact types of claims asserted here by King. *See,* e.g., *Caraccioli v. Facebook, Inc.*, No. 5:15–cv–04145–EJD, 167 F. Supp.3d 1056, 1064-66 (N.D. Cal. 2016) (dismissing breach of contract claim and § 17200 unfair practices claim); *Lancaster v. Alphabet Inc*, No. 15-cv-05299-HSG, 2016 WL 3648608, at *5 (N.D. Cal. July 8, 2016) (dismissing claim for breach of covenant of good faith and fair dealing); *Jurin v. Google, Inc.*, 695 F. Supp. 2d 1117, 1122–23 (E.D. Cal. 2010) (dismissing claim for fraud); *Federal Agency of News LLC, et al. v. Facebook, Inc.*, No. 18-CV-07041-LHK, 2019 WL 3254208, at *3 (N.D. Cal. July 20, 2019) (dismissing discrimination claims under Title II and 42 U.S.C. § 1983); *Obado v. Magedson*, 2014 WL 3778261, at *7 (D.N.J. July 31, 2014) (dismissing claim for promissory estoppel), *aff'd*, 612 F. App'x 90 (3d Cir. 2015).

   Most recently, the Hon. Yvonne Gonzalez Rogers in this District dismissed materially similar claims with prejudice as barred by the CDA. *Brittain v. Twitter, Inc*., No. 19-CV-00114-YGR, 2019 WL 2423375, at *2 (N.D. Cal. June 10, 2019). In that case, the plaintiff alleged that Twitter improperly suspended his accounts. But as recognized and applied by Judge Gonzalez Rogers, the CDA protects from liability (1) a provider of an interactive computer service, (2) whom a plaintiff seeks to treat as a publisher or speaker (3) of information provided by another information content provider. *Brittain*, 2019 WL 2423375 at *2.

Here, as in *Brittain*, there is no dispute on any of those elements. First, King admits that Facebook is an interactive computer service provider.[3] SAC ¶ 4. Second, each of King's claims seeks to treat Facebook as a publisher, because each is based on Facebook's provision of the service for use by others or its moderator decisions on which posts to remove or not and which accounts to suspend or not. *Brittain*, 2019 WL 2423375 at *3 (finding that claims that "ultimately arise from Twitter's alleged decision to suspend" plaintiff's Twitter accounts "seek to treat Twitter as a publisher under the CDA"); *cf. Fields v. Twitter, Inc.*, No. 16-cv-00213-WHO, 200 F. Supp. 3d 964, 972 (N.D. Cal. 2016) (provision of accounts is a publishing decision and claims based on provision of, or failure to suspend, accounts are barred by 230(c)(1)). Third, all of King's allegations rest on treatment of speakers (who make posts or otherwise provide content) and differential treatment of specific posts made either by himself or by other Facebook users. *Brittain*, 2019 WL 2423375 at *4; *see also Lancaster*, 2016 WL 3648608, at *3 (holding that plaintiff's own content satisfies the "published by another information content provider" prong of the CDA immunity test).

At oral argument, I asked King to explain why – if I followed this line of cases – his claims could survive dismissal. He essentially asked me to depart from these cases and follow instead *Darnaa, LLC v. Google, Inc.*, 15-CV-03221-RMW, 2016 WL 6540452, at *8 (N.D. Cal. Nov. 2, 2016), which predated the cases identified above. The only claim that survived dismissal there was one for breach of implied covenant of good faith and fair dealing. *Darnaa* is a very different case than this one. There, the defendant took actions against the economic interest of plaintiff and in favor of defendants' business partner. *Id.* at *8-9. That did not happen here, and the rationale of *Darnaa* does not save King's currently alleged claims. Each of King's currently alleged claims

---

[3] An "interactive computer service" is "any information service, system, or access software provider that that provides or enables computer access by multiple users to a computer server." 47 U.S.C. § 230(f)(2). Many courts have confirmed that Facebook it is an interactive computer service provider. *See Sikhs for Justice "SFJ", Inc. v. Facebook, Inc*., 144 F. Supp. 3d 1088, 1093 (N.D. Cal 205) (holding that Facebook is a platform that "provides or enables computer access by multiple users to a computer service as required by § 230"); *see also Obado*, 2014 WL 3778261, at *7.

7

is barred as a matter of law under the CDA.[4]

King's current claims against Facebook will be dismissed with prejudice. However, King argued at the hearing that he has alleged or could allege more clearly a claim for "retaliatory breach." That claim would not be based on Facebook's discrimination between speakers. Instead, it would be based on Facebook's specific targeting and blocking of King's speech that is critical of Facebook. This theory is the subject of at least two of King's post-hearing submissions. Dkt. Nos. 33, 40. Because this claim is not clearly alleged in the SAC, and given that King is proceeding *pro se*, I give him **limited leave to amend to expressly allege a claim for retaliatory breach of the ToS based on the treatment of his speech that is critical of Facebook**.

## CONCLUSION

Facebook's motion to dismiss the claims asserted against it (Claims 1-6) is GRANTED and those currently alleged claims are DISMISED WITH PREJUDICE as barred under the CDA. King is given limited leave to amend within 20 days of this Order to more clearly allege his claim that Facebook engaged in retaliatory conduct by removing his posts or suspending his accounts based on his speech that was critical of Facebook.

**IT IS SO ORDERED**.

Dated: September 5, 2019



William H. Orrick
United States District Judge

---

[4] I do not, therefore, reach Facebook's alternate argument that each claim must be dismissed for failure to allege sufficient facts. I also note, however, that plaintiff's Section 1981 claim of discrimination is barred because this exact claim was dismissed with prejudice from the Washington State case, an issue King failed to address in his opposition. *See Cruz v. Select Portfolio Servicing, Inc.*, No. 19-CV-00283-LHK, 2019 WL 2299857, at *8 (N.D. Cal. May 30, 2019) (dismissing prior-alleged claims due to *res judicata*).