KEKER, VAN NEST & PETERS LLP
PAVEN MALHOTRA - # 258429
pmalhotra@keker.com
MATAN SHACHAM - # 262348
mshacham@keker.com
WILLIAM S. HICKS - # 256095
whicks@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:    415 391 5400
Facsimile:    415 397 7188

Attorneys for Defendant Facebook, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| CHRISTOPHER KING, JD<br>A/K/A KingCast,<br><br><br>Plaintiff,<br><br>v.<br><br>FACEBOOK, INC., et al.<br><br>Defendants. | Case No. 3:19-cv-01987-WHO<br><br>**DEFENDANT FACEBOOK, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS**<br><br>Date:          December 11, 2019<br>Time:         2:00 p.m.<br>Judge:       Hon. William H. Orrick, Jr.<br>Dept.:        Courtroom 2<br><br>Date Filed: April 12, 2019<br><br>Trial Date:  Not Set |

1357939

## I.  INTRODUCTION

Plaintiff's opposition fails to meaningfully address the numerous pleading deficiencies identified in Facebook's motion to dismiss. Instead, it provides hearsay attacks, irrelevant musings, and arguments on why "judicial economy militates in favor of reviewing a First Amendment claim" that this Court never gave Plaintiff leave to assert in the first place. *See* Opp. at 9.

This Court gave Plaintiff "**limited leave to amend to expressly allege a claim for retaliatory breach of the ToS based on the treatment of his speech that is critical of Facebook**." Dkt. No. 44 at 8 (emphasis in original). Plaintiff's third amended complaint ("TAC") fails to allege any such claim. It is now ***undisputed*** that, among other deficiencies, the TAC:

- fails to identify the contractual obligation that Facebook is alleged to have breached;
- fails to allege any cognizable damages; and
- seeks to impose liability for conduct that Facebook's terms of use expressly allow.

Accordingly, Plaintiff's claim for retaliatory breach of contract fails as a matter of law.

To the extent Plaintiff seeks to assert other claims—for breach of the implied covenant of good faith and fair dealing or for violations of the First Amendment of the U.S. Constitution— those claims contravene the Court's order granting "limited leave." Dkt. No. 44 at 8. And even if that were not so, Plaintiff has not, and cannot, state a valid claim under either theory.

The Court should dismiss the claims against Facebook without leave to amend.

## II.  ARGUMENT

### A.   Plaintiff Has Failed to State a Claim for Retaliatory Breach of Contract.

#### 1.   The TAC identifies no contractual provision that has been breached.

"In an action for breach of a written contract, a plaintiff must allege the specific provisions in the contract creating the obligation the defendant is said to have breached." *Young v. Facebook, Inc.*, 790 F. Supp. 2d 1110, 1117 (N.D. Cal. 2011). Plaintiff concedes that he is obligated to identify the contractual provision at issue in order to proceed with his lawsuit. Opp. at 16. But it is undisputed that the TAC includes no such allegation.

1

1357939

1      Plaintiff asserts, without citation, that he "has time and time again pointed directly at the

2   hate speech policy that is incorporated into the Contract between the Parties and he hereby notes

3   he believes that FB ToS are indeed part of a Contract and are part of an abusive clickwrap scheme

4   anyway." Opp. at 17. But the TAC does not identify the "hate speech policy"—much less any

5   "specific provision"—as the predicate for Plaintiff's claim that Facebook purportedly has

6   retaliated against him for "speech that is critical of Facebook." *See* Dkt. No. 44 at 8. At most, the

7   TAC alleges that Facebook has put Plaintiff "in Facebook Jail" for posting content that Plaintiff

8   believes does not violate Facebook's "hate speech" policy. *See* SAC at ¶ 17.[1] For that reason

9   alone, Plaintiff's breach of contract claim fails as a matter of law and must be dismissed.[2]

10           **2.      Facebook's terms of use create no obligation to Plaintiff.**

11      Although the TAC does not identify the "hate speech" policy (much less any "specific

12   provision") as the basis for his retaliatory breach claim, even if it did, that would not save

13   Plaintiff's claim. Facebook's content-related policies, on their face, govern ***users'*** behavior; and

14   do not create any obligation to Plaintiff. Numerous courts have made this exact finding. *See*

15   *Caraccioli v. Facebook, Inc.*, 167 F. Supp. 3d 1056, 1064 (N.D. Cal. 2016) ("while Facebook's

16   Terms of Service 'place restrictions on users' behavior, they do not create affirmative

17   obligations'" (quoting *Young v. Facebook, Inc.*, 2010 WL 4269304 at *3 (N.D. Cal. Oct. 25,

18   2010)), *aff'd*, 700 F. App'x 588 (9th Cir. 2017).[3] Plaintiff fails to distinguish, much less address

19   these cases. This Court should follow the numerous other courts that have held Facebook's

20   content-related policies create no obligation to Plaintiff.

21   

22   [1] This Court has already held that the CDA bars claims based on such allegations. *See* Dkt. No. 44.

23   [2] *See, e.g., In re Facebook Internet Tracking Litig.*, 263 F. Supp. 3d 836, 848 (N.D. Cal. 2017)
     (dismissing breach of contract claim because plaintiff failed to identify the "specific provision" of
24   the contract alleged to have been breached; "Statements 'spread across a variety of pages in a
     variety of formats make it difficult to identify the terms of any actual and unambiguous
25   contractual obligations.'" (quoting *Woods v. Google Inc.*, 2011 WL 3501403, at *3 (N.D. Cal.
     Aug. 10, 2011)); *see also, e.g.*, *Ebeid v. Facebook, Inc.*, 2019 WL 2059662, at *7 (N.D. Cal. May
26   9, 2019) (dismissing contract claim against Facebook for failure to identify the specific provision
     allegedly breached); *Caraccioli v. Facebook, Inc.*, 167 F. Supp. 3d 1056, 1064 (N.D. Cal. 2016).
27   [3] *See also, e.g.*, *Cross v. Facebook, Inc.*, 14 Cal. App. 5th 190, 201 (2017); *Long v. Dorset*, 369 F.
28   Supp. 3d 939, 948–49 (N.D. Cal. 2019).

1357939

1    Recognizing the deficiency in his position, Plaintiff pivots and argues that the contract he

2    has **asserted** in this action is somehow "presumptively suspect" and unconscionable. Opp. at 17-

3    18. Nonsense. "The doctrine of unconscionability is . . . a defense to **enforcement** of a contract."

4    *Caraccioli*, 167 F. Supp. 3d at 1064 (internal quotations omitted). "Here, it is Plaintiff, not

5    Facebook, who asserts a breach of contract claim based on the Terms of Service. He therefore

6    cannot attempt to counter Facebook's arguments with defenses reserved for a defendant." *Id*.; *see*

7    *also Caraccioli*, 700 F. App'x at 590 ("We reject as without merit Caraccioli's argument that

8    Facebook's terms of service are unconscionable.").[4]

9    At bottom, Plaintiff is simply urging the Court to create an obligation that appears

10   nowhere in the contract. "This court, however, cannot rewrite the parties' agreement." *BTA, Inc.*

11   *v. Atl. Mut. Ins. Co*., 1999 WL 430751, at *3 (N.D. Cal. June 21, 1999).

### 3.    The TAC fails to allege any actionable conduct.

13   Even if Plaintiff could point to an affirmative contractual obligation, the TAC does not

14   allege facts supporting a reasonable inference that Facebook has retaliated against him for speech

15   critical of Facebook. *See* Mot. at 3; *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). "Factual

16   allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v.*

17   *Twombly*, 550 U.S. 544, 555 (2007); *see also Papasan v. Allain*, 478 U.S. 265, 286 (1986) ("on a

18   motion to dismiss, courts are not bound to accept as true a legal conclusion couched as a factual

19   allegation" (internal quotation omitted)). The allegations in the TAC do not come close to

20   meeting this standard, as explained in Facebook's opening brief. *See* Mot. at 3-4.

21   Plaintiff attempts to remedy this deficiency in his pleading by submitting with his

22   opposition brief a "Facebook Violation Appendix" (Appendix B) that purports to supplement the

23   allegations in his TAC. *See* Opp. at 16, App. B. But Plaintiff's new factual allegations "are

24   irrelevant for Rule 12(b)(6) purposes. *Schneider v. Cal. Dep't of Corr*., 151 F.3d 1194, 1197 n.1

25   (9th Cir. 1998). In ruling on the sufficiency of a complaint, the Court "may not consider matters

---

[4] Even if Plaintiff's assertion about Facebook's contract being adhesive were correct—and
Facebook does not agree it is—it would not matter. In California, adhesion contracts are not
"presumptively suspect," much less per se unconscionable. *Poublon v. C.H. Robinson Co*., 846
F.3d 1251, 1261–62 (9th Cir. 2017).

3

1357939

1   outside the complaint." *Payne v. California Dep't of Corr. & Rehab.*, 2017 WL 10560641, at *5

2   (C.D. Cal. Sept. 27, 2017) (internal quotations omitted).

3        In any event, nothing in Plaintiff's belated appendix supports a "claim for retaliatory

4   breach of the ToS based on the treatment of his speech that is critical of Facebook." Dkt. No. 44

5   at 8. For instance, the appendix provides screenshots that Plaintiff describes as showing that he

6   was improperly "[t]hrown into Facebook Hoosegow For saying the Sheriff treated me like a

7   nigger by ignoring this hateful white male who dropped 5 F-Bombs on me." App. B at 1. But

8   Plaintiff does not explain how this post—which does not even mention Facebook—could

9   plausibly support a theory that Facebook has retaliated against him for speech that is critical of

10  Facebook.

11       To the extent the retaliatory breach that Plaintiff claims these screenshots show is based

12  on Facebook allegedly violating its own policy "allow[ing] members in a racial or ethnic or other

13  identified group to self-refer in terms that might be otherwise derogatory" (Opp. at 2), any such

14  claim fails because, as discussed above, Facebook's content policies create no obligations to

15  Plaintiff. Moreover, any such claim would run headlong into the protections afforded Facebook

16  under the Communications Decency Act (the "CDA")—something this Court discussed at length

17  in its prior dismissal order. *See* Dkt. No. 44.

18       Plaintiff's appendix also provides a different set of images purporting to show that

19  Facebook has applied its Community Standards to block posts stating that "Facebook gunned

20  down another nigger." *See* App. B at 4-6. Plaintiff contends that these posts do not violate

21  Facebook's Community Standards. But the Court has already held that Facebook enjoys CDA

22  immunity against claims (including for breach of contract) based on ***the same*** allegation. *See* Dkt.

23  No. 44 at 3.[5] To the extent Plaintiff now contends that Facebook has retaliated against him for

24

---

25  [5] Plaintiff also asserts in his appendix that "[t]wo white women could not access their Instagram
    Accounts moments after they shared info on my Facebook Hearing in Seattle and noting shirts

26  they designed 'Black Voices Matter.'" *See also* TAC, ¶ 18(g) (reciting similar allegations). But
    this assertion regarding supposed treatment of a third party does not support Plaintiff's breach

27  claim against Facebook. In this action, Plaintiff has sued Facebook, not Instagram, and he has no
    right to "assert[] the rights or legal interests of others in order to obtain relief from injury to

28  themselves." *Warth v. Seldin*, 422 U.S. 490, 509 (1975).

1357939

1    speech critical of Facebook, screenshots purporting to show that Facebook has blocked content

2    reciting the n-word do not "raise a right to relief above the speculative level." *Twombly*, 550 U.S.

3    at 555.

4         Although the TAC does not allege facts permitting an inference that Facebook has done

5    anything other than apply its policies in a manner that Plaintiff believes is incorrect, even if that

6    were not so, the CDA would still bar Plaintiff's breach of contract claim. *See* Mot. at 6 n.6. As the

7    Ninth Circuit has explained, the name of the cause of action is immaterial for purposes of CDA

8    immunity—"what matters is whether the cause of action inherently requires the court to treat the

9    defendant as the 'publisher or speaker' of content provided by another." *Barnes v. Yahoo!, Inc.*,

10   570 F.3d 1096, 1101-02 (9th Cir. 2009) ("publication involves reviewing, editing, and ***deciding***

11   ***whether to publish or to withdraw from publicatio****n* third-party content" (emphasis added)).

12   "[A]ny activity that can be boiled down to deciding whether to exclude material that third parties

13   seek to post online is perforce immune under section 230." *Fair Hous. Council of San Fernando*

14   *Valley v. Roommates.Com, LLC*, 521 F.3d 1157, 1170–71 (9th Cir. 2008); *Carafano v.*

15   *Metrosplash.com, Inc.,* 339 F.3d 1119, 1124 (9th Cir. 2003) ("So long as a third party willingly

16   provides the essential published content, the interactive service provider receives full immunity

17   regardless of the editing or selection process."). Here, Plaintiff's retaliatory breach theory

18   necessarily seeks to hold Facebook liable for its decisions regarding whether to exclude material

19   provided by a third party (Plaintiff). Accordingly, CDA Section 230(c)(1) would immunize

20   Facebook from Plaintiff's claim, even if Plaintiff could otherwise allege facts that could plausibly

21   support such a theory.

22        **4.**     **Facebook's terms of use give it the express right to remove Plaintiff's**
           **content.**

23        Facebook's removal of Plaintiff's content cannot, as a matter of law, give rise to liability

24   for breach of contract because Facebook's own terms give Facebook that right. Plaintiff does not

25   dispute that the terms of use to which he agreed give Facebook the express right to remove user

26   content—including content posted by Plaintiff. *See* Mot. at 4; Duffey Decl., ¶¶ 4-6, Ex. A ("You

27   understand and agree that the Company may, but is not obligated to, review the Site and may

28

5

1357939

1   delete or remove (without notice) any Site Content or User Content in its sole discretion, for any

2   reason or no reason…"); Ex. B ("Facebook may, in its sole discretion, remove or disable access to

3   any User Content"); *see also* Exs. C-I, Section 5.2.

4        Not surprisingly, other courts have held that Facebook's decisions whether to remove user

5   content cannot, as a matter of law, give rise to liability for breach of contract. *See, e.g., Caraccioli*

6   *v. Facebook, Inc*., 700 F. App'x at 590 ("district court properly dismissed Caraccioli's breach of

7   contract claim and UCL claim, to the extent it was premised on an alleged breach of contract,

8   because these claims are barred by Facebook's terms of service, which expressly disclaim

9   Facebook's responsibility for the content published by third parties"); *Klayman v. Zuckerberg,*

10  753 F.3d 1354, 1359 (D.C. Cir. 2014) (rejecting plaintiff's argument that Facebook's terms of

11  service give rise to a duty to remove offensive content because "[t]he plain text of the [terms of

12  service] thus disavows the legal relationship that [plaintiff] asserts"). This Court should hold the

13  same.

**5.   Plaintiff has failed to allege any damages caused by any purported breach.**

14

15       Finally, Plaintiff's contract claim must be dismissed because the TAC fails to allege any

16  cognizable damages. Mot. at 5; *see also Aguilera v. Pirelli Armstrong Tire Corp*., 223 F.3d 1010,

17  1015 (9th Cir. 2000); *Rudgayzer v. Yahoo! Inc*., 2012 WL 5471149, at \*7 (N.D. Cal. Nov. 9,

18  2012); *Low v. LinkedIn Corp*., 900 F. Supp. 2d 1010, 1028 (N.D. Cal. 2012).

19       Plaintiff concedes that he has suffered no economic harm, but asserts that he is still

20  entitled to damages for emotional distress. Opp. at 20. Not so. The TAC does not allege that

21  Plaintiff has suffered any sort of emotional distress, nor does it seek emotional distress damages.

22  In any event, damages for emotional distress are available in breach of contract actions only if

23  "the defendant has assumed a duty to plaintiff in which the emotional condition of the plaintiff is

24  an object." *Erlich v. Menezes*, 21 Cal. 4th 543, 555–56 (1999). "Even then, with rare exceptions,

25  a breach of the duty must threaten physical injury. . . ." *Id*. Here, Plaintiff candidly admits that

26  "the underlying contract is not for mental and emotional well-being" (Opp. at 20), and he does

27  not allege (nor can he) that Facebook has breached a duty that threatens physical injury.

28

6

1357939

1    Accordingly, emotional distress damages are not recoverable.

2           Plaintiff also asserts, without citation, that "even if monetary damages cannot be

3    quantified he is at least allowed Specific Performance and Declaratory Judgment." Opp. at 20.

4    But the TAC fails even to mention "declaratory judgment," much less identify the relief sought,

5    or establish the threshold requirement of "a *very* significant possibility of *future* harm." *San*

6    *Diego Cnty. Gun Rights Comm. v. Reno*, 98 F.3d 1121, 1126 (9th Cir. 1996) (emphasis in

7    original).[6] And while the TAC does purport to demand, by way of "Injunctive Relief," a "Finding

8    of Fact and Conclusion of Law that Plaintiff has not used the term 'nigger' or criticized

9    Defendant in a way that violates Defendant's Terms of Service or Community Standards" (TAC

10   at 16; Demands, ¶ 3), the CDA precludes such relief, as this Court has already held. *See* Dkt. No.

11   44 (holding that Facebook enjoys CDA immunity against Plaintiff's claims that Facebook

12   improperly applied its Community Standards to block or remove Plaintiff's content).

13          **B.      The TAC Fails to State a Valid Claim for Breach of the Implied Covenant of**
             **Good Faith and Fair Dealing.**

14          To the extent the TAC purports to assert a claim for breach of the implied covenant of

15   good faith and fair dealing,[7] that claim contradicts the Court's Order granting "limited leave to

16   amend to expressly allege a claim for retaliatory breach of the ToS . . . ." Dkt. No. 44 at 8.

17   "[B]reach of contract and breach of the implied covenant of good faith and fair dealing are ***two***

18   ***distinct claims***." *Swearengin v. Cont'l Ins. Co*., 2002 WL 34439648, at *3 (C.D. Cal. Oct. 3,

19   2002) (emphasis added) (citing *Love v. Fire Ins. Exch.,* 221 Cal. App. 3d 1136, 1143 (1990). By

20   granting "limited leave" to assert a claim for breach of contract, this Court did not authorize

21

22

23

24   _____

25   [6] *See also Imtiaz Khan v. K2 Pure Sols., LP*, 2013 WL 4734006, at *4 (N.D. Cal. Sept. 3, 2013)
     ("Simply put, the Court may not 'consider a claim to be ripe for judicial resolution if it rests upon
     contingent future events that may not occur as anticipated, or indeed may not occur at all.'").

26   [7] Plaintiff asserts in his opposition that the covenant of good faith and fair dealing "rides along
     with the Notion of Retaliatory Breach," Opp. at 19, but it is unclear whether Plaintiff is
27   attempting to assert a claim for breach of the implied covenant, a claim for breach of contract, or
     both.
28

1357939

1    Plaintiff to assert a claim for breach of the implied covenant of good faith and fair dealing.[8]

2         But even if Plaintiff is permitted to assert a claim for breach of the implied covenant, that

3    claim fails as a matter of law for the reasons set forth below and in Facebook's opening brief. *See*

4    Mot. at 7 n.7.

5         ***First***, the TAC fails to allege the specific contractual obligation that Plaintiff contends

6    gives rise to an implied duty. "[T]o state a claim for breach of an implied covenant of good faith

7    and fair dealing, the specific contractual obligation from which the implied covenant of good faith

8    and fair dealing arose must be alleged." *Inter–Mark USA, Inc. v. Intuit, Inc.*, 2008 WL 552482, *6

9    (N.D. Cal. Feb. 27, 2008). This limitation is critical; as the Supreme Court of California has

10   recognized, "[t]he covenant of good faith is read into contracts in order to protect the express

11   covenants or promises of the contract, not to protect some general public policy interest not

12   directly tied to the contract's purposes." *Foley v. Interactive Data Corp.*, 47 Cal. 3d 654, 690

13   (1988).

14        Here, the TAC fails to identify any express contractual obligation, as explained above, and

15   Plaintiff fails to explain how reading in an implied duty is necessary to "protect the express

16   covenants or promises in the contract." *Id*. Instead, Plaintiff seeks only to vindicate his personal

17   belief, untethered to any contractual obligation, that "Congress did not intend to allow [Facebook]

18   to own the entire Country as it does, and this Court ought help put a stop to it." Opp. at 3.

19        ***Second***, Plaintiff's implied covenant theory, like his breach of contract claim, is premised

20   on conduct (blocking and removing user content) that Facebook's terms of use expressly permit.

21   *See supra*; *see also* Mot. at 4. "[A] party cannot be held liable on a bad faith claim for doing what

22

23   _____

     [8] To the extent Plaintiff contends that he has asserted a claim for breach of contract *and* a distinct
     claim for breach of the implied covenant, the Court should disregard his implied covenant theory
24   as superfluous because it relies on the same allegations, and seeks the same relief, as the contract
     claim. *See, e.g., Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*, 222 Cal. App. 3d 1371, 1395 (1990),
25   *as modified on denial of reh'g* (Oct. 31, 2001) ("If the allegations do not go beyond the statement
     of a mere contract breach and, relying on the same alleged acts, simply seek the same damages or
26   other relief already claimed in a companion contract cause of action, they may be disregarded as
     superfluous as no additional claim is actually stated."); *Carlson v. Clapper*, 2019 WL 2211196, at
27   *5 (N.D. Cal. May 22, 2019) (granting motion to dismiss claim for breach of the implied
     covenant of good faith and fair dealing where plaintiffs' breach of contract and implied covenant
28   claims relied on the same factual allegations and sought the same damages).

1357939

1  is expressly permitted in the agreement." *Solomon v. N. Am. Life & Cas. Ins. Co*., 151 F.3d 1132,

2  1137 (9th Cir. 1998); *Carma Developers (Cal.), Inc. v. Marathon Dev. California, Inc*., 2 Cal. 4th

3  342, 374 (1992) ("implied terms should never be read to vary express terms"); *Ebeid v.*

4  *Facebook, Inc*., 2019 WL 2059662, at \*8 (N.D. Cal. May 9, 2019) (rejecting implied covenant

5  theory because "plaintiff has conceded that Facebook had the contractual right to remove or

6  disapprove any post or ad at Facebook's sole discretion.").  Yet, that is exactly what Plaintiff

7  seeks to do here.

8       *Third*, as explained above, the TAC does not allege facts supporting a reasonable

9  inference that Facebook has retaliated against Plaintiff for speech that is critical of Facebook. Just

10  as Plaintiff's speculative and conclusory assertions of retaliation do not state a claim for breach of

11  contract, such allegations likewise cannot support a reasonable inference that Facebook has

12  violated any implied duty. *Iqbal,* 556 U.S. at 678 (allegations in the complaint must "allow the

13  court to draw the reasonable inference that that the defendant is liable for the misconduct

14  alleged").

15       Moreover, because Plaintiff's implied covenant theory necessarily seeks to hold Facebook

16  liable for its decisions "whether to publish or to withdraw from publication third-party content,"

17  *Barnes*, 570 F.3d at 1101-02, CDA Section 230(c)(1) would bar Plaintiff's claim even if he had

18  alleged supporting facts, as explained above. *See supra; see also* Mot. at 6 n.6.

19       *Fourth*, Plaintiff has alleged no cognizable damages. "Causation resulting in damage is an

20  essential element of a claim for breach of contract as well as a claim for breach of the implied

21  covenant of good faith and fair dealing." *Britz Fertilizers, Inc. v. Bayer Corp*., 665 F. Supp. 2d

22  1142, 1167 (E.D. Cal. 2009) (citing *Thompson Pacific Construction, Inc. v. City of Sunnyvale*,

23  155 Cal. App. 4th 525, 541 (2007). Here, Plaintiff has admittedly suffered no economic damages.

24  And no "special relationship" exists between the parties such that tort damages could conceivably

25  be recovered for breach of the implied covenant. *See Centigram Argentina, S.A. v. Centigram*

26  *Inc.,* 60 F. Supp. 2d 1003, 1013–14 (N.D. Cal. 1999) (lack of "special relationship" between the

27  parties precluded tort damages for breach of implied covenant of good faith and fair dealing).

28

1357939

**C.     The TAC Fails to State a Valid Claim for Violation of the First Amendment of the U.S. Constitution.**

Plaintiff's purported First Amendment claim should also be dismissed at the outset because it contradicts the Court's Order granting "limited leave to amend to expressly allege a claim for retaliatory breach of the ToS . . . ." Dkt. No. 44, at 8. In any event, that claim is facially deficient, as explained in Facebook's opening brief. Opp. at 6. Facebook is a private entity, not a state actor. Accordingly, it is not subject to the First Amendment, as numerous courts have held. *See, e.g., Ebeid*, 2019 WL 2059662, at \*6; *Davison v. Facebook, Inc.*, 370 F. Supp. 3d 621, 629 (E.D. Va.), *aff'd*, 774 F. App'x 162 (4th Cir. 2019); *Fed. Agency of News LLC v. Facebook, Inc.*, 2019 WL 3254208, at \*8 (N.D. Cal. July 20, 2019); *Fehrenbach v. Zeldin*, 2018 WL 4242452, at \*3 (E.D.N.Y. Aug. 6, 2018), *report and recommendation adopted,* 2018 WL 4242453 (E.D.N.Y. Sept. 5, 2018).[9]

**III.     CONCLUSION**

For the foregoing reasons, Facebook respectfully requests the Court to dismiss the case with prejudice as to Facebook.

Dated:  November 27, 2019                                             KEKER, VAN NEST & PETERS LLP


                                                            By:     /s/ *William S. Hicks*
                                                                    WILLIAM S. HICKS

                                                                    Attorneys for Defendant Facebook, Inc.

---

[9] Courts have already rejected Plaintiff's argument that the Supreme Court's decision in *Packingham v. North Carolina*, 137 S. Ct. 1730 (2017), supports application of the First Amendment to social media platforms like Facebook. *See, e.g., Prager Univ. v. Google LLC*, 2018 WL 1471939, at \*8 (N.D. Cal. Mar. 26, 2018); *Freedom Watch, Inc. v. Google*, Inc., 368 F. Supp. 3d 30, 40-41 (D.D.C. 2019).

REPLY IN SUPPORT OF MOTION TO DISMISS
Case No. 3:19-cv-01987-WHO

1357939