UNITED STATES DISTRICT FEDERAL COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER KING, JD<br>A/K/A KingCast,_<br><br>Plaintiff,<br><br>vs.<br><br>FACEBOOK, INC.<br>JENNIFER MARIE MALONE<br>JANE AND JOHN DOES,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) CASE NO 19-CV-1987<br><br>JUDGE WILLIAM ORRICK |

**PLAINTIFF'S RULE 59 MOTION**
**TO ALTER JUDGMENT AND/OR FOR NEW TRIAL**

I. <u>Preamble and Overview: Facebook Hates Niggers and Anyone who Questions Facebook and This Honorable Court must not Provide any Quarter for that Hatred</u>.

As Plaintiff noted on prior occasion:

This case, and many others like it, involves public speech rights on the World's largest speech platforms and whether or not these platforms are treating their users fairly or whether they are engaged in various types of viewpoint-based restrictions when Hate Speech is not actually involved.[1] See again the U.S.A. Today Feature on which he requested Judicial Notice on prior occasion:

https://www.usatoday.com/story/news/2019/04/24/facebook-while-black-zucked-users-say-they-get-blocked-racism-discussion/2859593002/?fbclid=IwAR1v3n_Duzo3ynbDepsmjtdfYDJyrkgmpIT8LpDXiW2M7vLzJ_V22NsxjoQ

**Facebook while black: Users call it getting 'Zucked,' say talking about racism is censored as hate speech**

<u>Platform Access is a Civil Right</u>.
A reflection on Lyndon Baines Johnson and the 1964 Civil Rights Act.
By **Will Chamberlain**
On May 3, 2019

---

[1] Recall that Defendant Facebook's Manifest Destiny was to become a virtual "Nation State" according to its first Director of Policy. To that end Facebook also owns

1

"We, as a society, do not *have* to allow private companies to violate Americans' civil rights."
https://humanevents.com/2019/05/03/platform-access-is-a-civil-right/

"It's tough enough to get all the way from Washington to Texas. We drive for hours and hours. We get hungry. But there's no place on the road we can stop and go in and eat. We drive some more. It gets pretty hot. We want to wash up. But the only bathroom we're allowed in is usually miles off the main highway. We keep goin' 'til night comes – 'til we get so tired we can't stay awake anymore. We're ready to pull in. But it takes another hour or so to find a place to sleep.

"You see, what I'm saying is that a colored man's got enough trouble getting across the South on his own, without having a dog along."

In Johnson's telling, hearing this story was jarring enough to permanently convince him of the necessity of protecting his employees – and every other African-American – from discrimination.

And it should change the view of any holdout radical libertarian who still thinks that the Civil Rights Act of 1964 was unjust.

Because you know what? Private property rights are great. But that does not mean that we, as a society, had to let private restaurant owners and private hotel managers turn away customers because they were black. We didn't have to accept a world in which black people had to defecate on the side of the road because they weren't allowed to use a privately-owned restroom.

We, as a society, do not *have* to allow private companies to violate Americans' civil rights. (Appendix A).

This is precisely what Plaintiff was saying thorough analysis of the old *Pruneyard* Law as well as burgeoning Federal law and developments supported by the District of Columbia as highly-esteemed Counsel from the Lawyer's Committee for Civil Righs under Law and the Washington Lawyers' Committee for Civil Rights and Urban Affairs noted below in the United States District Court of Appeals (DC Cir. ) *Freedom Watch/Laura Loomer v. Google, Facebook* et al., No. 19-7030. (Appendix B). Recall this case is being heard because the Appellate Court soundly rejected summary affirmance of

denial of Plaintiff's Sherman Act, First Amendment and Public Accommodation Complaints and ORDERED briefing on same, more on this later.

> On Appeal from the United States District Court for the District of Columbia
> No. 1:18-cv-02030-TNM
>
> **BRIEF OF *AMICI CURIAE* LAWYERS' COMMITTEE FOR CIVIL RIGHTS UNDER LAW AND THE WASHINGTON LAWYERS' COMMITTEE FOR CIVIL RIGHTS AND URBAN AFFAIRS IN SUPPORT OF NEITHER PARTY**
>
> Jon Greenbaum (DC Bar # 489887)  
> David Brody (DC Cir. Bar # 61933)  
> LAWYERS' COMMITTEE FOR CIVIL RIGHTS UNDER LAW  
> 1500 K Street N.W., Suite 900  
> Washington, D.C. 20005  
> (202) 662-8300  
> jgreenbaum@lawyerscommittee.org  
> dbrody@lawyerscommittee.org  
>
> Kaitlin Banner (DC Bar # 1000436)  
> Margaret Hart (DC Bar # 1030528)  
> WASHINGTON LAWYERS' COMMITTEE FOR CIVIL RIGHTS AND URBAN AFFAIRS  
> 700 14th Street, N.W., Suite 400  
> Washington, DC 20005  
> (202) 319-1000  
> kaitlin_banner@washlaw.org  
> margaret_hart@washlaw.org

II.     <u>Current Status of Case and Undecided Show Cause Order</u>.

The Court initially Dismissed Plaintiff's Case on or about September 5, 2019 after Oral Argument on 17 July 2019. Plaintiff filed several post-Hearing Memoranda in which he pointed out, *inter alia*, that Facebook was retaliating against him not only in terms of ultimate publication but as to management of his account in other ways that chilled his legitimate Rights of Expression on the World's Largest "Platform of Ideas."

Plaintiff had tendered pending Expedited Discovery requests from Facebook regarding the Defamatory actions of one Jennifer Marie Malone, a woman whom Plaintiff made a video for because of her gripe with Geico Insurance and a New England car repair center.

https://christopher-king.blogspot.com/2018/05/kingcast-sees-geico-insurance-overpay.html
https://www.youtube.com/watch?v=LvwUXg7SxxU&feature=emb_logo
KingCast Sees Geico Insurance Overpay Ayers Collision on a Car
That Clearly Should Have Been Totaled.
KingCast, 16 May 2018



This individual had publicly claimed, on at least one occasion, that Plaintiff had traumatized other women and used and abused them, and had illicit affairs and that these women had come to her for help. Conduct of moral turpitude, Slander per se.

These Discovery responses would have been due on or about 10 December, 2019 but Facebook claims that it benefitted from the Court's *sua sponte* ORDER of 3 December 2019 dismissing all claims (Docket #55. Plaintiff disputed this contention in his response to the Court's 3 December 2019 Show Cause Order and left it up to the Court to decide:

********

> Also, nice way for your client to drag its feet on my Discovery Request. It had PLENTY of time to answer the request as I tendered it back on 14 Nov and it is now 5 Dec. Hell, your client only had a few more days left anyway.
>
> Like I said I will inform the Court of your position and whatever the Court does, the Court does. I will be suing that jackass in State Court in Massachusetts where I can run my pesky cameras, then I will as you say use "other mechanisms to obtain discovery from third parties" i.e. your jackass client should the Court concur in your position and reward your client for dragging its feet on a simple Discovery Request.
>
> I will then produce my documentary (including some of you) in front of my pesky cameras in Washington State. And these emails will be posited with the Court later today or tomorrow. Bottoms up fellas and lady! (Docket # 56).
> https://www.youtube.com/watch?v=lZra_SqnPR8



III.  Summary of Court Position Vis a Vis Plaintiff's Actual Arguments.

A.  First Amendment and Adhesion Contracts.

First of all it is unclear why the Court never granted leave for Plaintiff to address first Amendment concerns in light of burgeoning Law: The Court wrote:

With respect to the new First Amendment claim, plaintiff was not given leave to assert it under my prior Order granting Facebook's motion to dismiss. The claim, therefore, is not properly in this case and I will not address it.4[2]

---

[2] Even if I were to address it, the claim would fail because Facebook is not a "state actor" or performing an exclusive "public function" such that the First Amendment would apply to its conduct. See Fed. Agency of News LLC v. Facebook, Inc., 395 F. Supp. 3d 1295, 1311 (N.D. Cal. 2019) ("by operating its social media website, Facebook has not engaged in any functions exclusively reserved for the government. Therefore, Facebook does not operate as a public forum, so Facebook's actions do not amount to state action under the public function test."); see also Prager U. v. Google LLC, 17-CV-06064-LHK, 2018 WL 1471939, at *8 (N.D. Cal. Mar. 26, 2018) (YouTube service did not turn Google into a state actor)

5

The Court held: Assuming that the contractual basis for King's breach claim is the Terms of Use (Terms) which Facebook requires users to agree to, the claim lacks merit. As courts in this District have explained, while Facebook's Terms "place restrictions on users' behavior," they "do not create affirmative obligations" on Facebook.

First of all, Plaintiff addressed the cases cited by the Court in its Fn above but the Court did not address Plaintiff's rationale whatsoever. To wit:

> Judge Koh's Order in *Fed. Agency of News LLC v. Facebook, Inc* does not cite to *Pruneyard or California Law*, but rather to Lloyd and Landgon v. Google, 474 F.Supp.2d 622 (2007).[3] *Langdon* is a case that in Internet terms is ancient history. In 2007 Facebook was barely a household name. The intervening twelve years have completely changed the character of breath of Facebook and the Court's rationale – also reiterated in *Prager Univ. v. Google LLC* 2018 WL 1471939 (another Judge Koh Decision) is just flat out wrong on a *Pruneyard* analysis because Facebook is totally a public forum. *It is the core function of the thing in itself.* It is used by politicians World Wide. It is used by Billions of people who exchange political and social thoughts, dreams, and desires on the world's largest social media platform and as such, Plaintiff challenges this Court to recognize the obvious error of Judge Koh's reasoning.
>
> Her Honor also cited to *Lloyd Corp., Ltd. v. Tanner*, 407 U.S. 551 (1972) but *Lloyd* is inapposite here because the holding in Lloyd was that there has been no dedication of petitioner's privately owned and operated shopping center to public use so as to entitle respondents to exercise First Amendment rights therein that are unrelated to the center's operations.

Further the absolute ability to do whatever Facebook desires while placing all matter of conditions on users is fascinating in and of itself because that begs Plaintiff's entire point on the First Amendment as well as the Contractual issue:

The Adhesion Contract is, in and of itself, a mere adhesion clause, clickwrap illusory Contract that is subject to the very analysis set forth by His Honor in *Wadler et al v. Custard Insurance Adjusters, Inc*, 17-CV-05840 (11 April 2018), the Court DID NOT address in its Dismissal. To wit from Plaintiff's Memorandum Contra 12(b)(6):

---

3 This is significant because an individual State, may, under its own auspices, afford greater Constitutional protections than granted in the Federal Scheme, but it may not afford less. California affords more. Regardless, Judge Koh's rationale is also wrong for other reasons explained herein.

6

In this case we have an overly harsh situation and His Honor is already aware of the harsh nature of clickwrap/adhesion clause agreements and finds them presumptively suspect. As Plaintiff has noted on prior occasion at his blog that Defendant hates, see *Wadler et al v. Custard Insurance Adjusters, Inc*, 17-CV-05840 (11 April 2018), Fees awarded five (5) days after Oral Argument in the case at bar, or 22 July 2019. The case involved clickwrap or adhesion-clause abuse in an unequal arms-length situation. Mark Zuckerberg alone is worth $85B. Plaintiff is worth approximately $30,000.00 at the moment, or .0000003529% of that. From *Wadler*:

Procedural unconscionability occurs where a contract or clause involves oppression, consisting of a lack of negotiation and meaningful choice, or surprise, such as where the term at issue is hidden within a wordy document. Id. "California law treats contracts of adhesion, or at least terms over which a party of lesser bargaining power had no opportunity to negotiate, as procedurally unconscionable to at least some degree." *Bridge Fund Capital Corp. v. Fastbucks Franchise Corp*., 622 F.3d 996, 1004 (9th Cir. 2010).

Substantive unconscionability occurs where the provision at issue "reallocates risks in an objectively unreasonable or unexpected manner." *Lhotka*, 181 Cal. App. 4th at 821 (citation omitted). "Substantive unconscionability focuses on the one-sidedness or overly harsh effect of the contract term or clause." Id. at 824–25 (citation omitted)......... https://howtosuefacebook.blogspot.com/2019/08/judge-in-facebook-cda- 230-immunity.html….

….How long can this consumer and user abuse continue while entities like Facebook can just run amok and make a mockery of our Laws and larger implications of First Amendment Freedoms in the "the modern public square" as Justice Kennedy calls it? Facebook Amicus Counsel David P. Lukmire said it should have ended a long time ago:

*Can the Courts Tame the Communications Decency Act? The Reverberations of Zeran v. America Online*. Attorney Lukmire has written *Amici* Briefs alongside and in support of Facebook and Microsoft: He is an Industry expert: http://migration.nyulaw.me/sites/default/files/upload_documents/NYU-Annual-Survey-66-2- Lukmire.pdf
Second, before deciding whether an online entity is immune because of the type of entity it is or the type of role it played in disseminating illegal content, courts should consider whether section 230 should apply based on the theory of liability advanced by the plaintiff.

The case for restricting the subject matter of section 230 immunity is equally strong...... **One thing is for certain: unless courts narrow their interpretations of section 230, deserving plaintiffs will be without redress.**

7

In the *Freedom Watch* case the relevant issues before the Court of Appeals are as follows:

> 4. The First Amendment to the United States Constitution. Plaintiff's Complaint alleged, *inter alia*,
>
> 17. According to Senator Ted Cruz, as reported in the New York Times, "if internet companies are not a 'neutral platform,' they should not be protected by a law known as Section 230 of the Communications Decency Act, which (some claim) gives companies broad legal immunity for what people put on their services."[4]
>
> 18. In the same article, Rep. Kevin McCarthy stated, "Social media platforms are increasingly serving as today's town squares....But sadly, conservatives are too often finding their voices silenced."[1]
>
> 98. Defendants created, operate, and control public platforms that are for public use and public benefit and invite the public to utilize their platforms as a forum for free speech.
>
> 99. Defendants act as quasi-state actors because they regulate their public platforms, thereby regulating free speech within their public forums, Google/YouTube, Facebook, and Twitter, Apple, Instagram as well as the other social media companies or entities.

The Amici Lawyers argue, *inter alia*, almost exactly what Plaintiff is arguing.

> Racial discrimination and bigotry are just as common online as in brick-andmortar storefront operations. When the D.C. Council gives D.C. residents the right to "equal opportunity to participate in all aspects of life," D.C. Code § 2-1402.01, equal opportunity in online commerce is a subset of such right. (p.6).
>
> Businesses that offer goods or services to the general public over the Internet are a subset of "all places included in the meaning of such terms as . . . establishments dealing with goods or services of any kind." Id. (emphasis added). This clause must be "generously construed." Lively, 830 A.2d at 887; Blodgett, 930 A.2d at 218; accord Exec. Sandwich Shoppe, 749 A.2d at 732. Whether goods or services are offered on a website, Internet-enabled app, or brick-and-mortar storefront makes no difference under the DCHRA; the plain text is all-inclusive. (p. 19).

---

[4] So too are blacks. Protected Class. Insular Minority. We all know the Rules here. All of it has to stop, and when a particular Plaintiff can show the presence of active bad faith and deceit, that Plaintiff is entitled to a Jury Trial, just as Facebook Amicus Attorney Lukmire opined on prior occasion in his NYLaw Note. The emperor has no clothes….. not in today's day and age.

**B.     Appellees are places of public accommodation with regard to the online goods or services they offer to District residents.**

When Appellees Google, Facebook, Twitter, and Apple offer consumer goods or services to District residents, they are places of public accommodation under the DCHRA. Google offers numerous goods and services, including consumer electronics and computers; software; YouTube; and an online marketplace for media, video games, and third-party software. Facebook offers social media and entertainment services through websites and apps for its namesake platform, Instagram, Messenger, and WhatsApp, as well as various online marketplace services.

Twitter offers social media services. Google, Facebook, and Twitter allow any user to buy online advertisements. Apple sells consumer electronics and computers, as well as myriad software and online services to use with such hardware; it also operates an online marketplace where anyone can buy or sell apps and other media. Notably, Apple also has two physical stores in the District at 1229 Wisconsin Avenue NW and 801 K Street NW. (pp24-25).

While the particular Statute they are addressing is the public accommodations portion, it is all the same issue: Absolute Immunity under 47 USC 230 is a thing of the past and wholly inappropriate under certain contexts, as noted by Facebook's own Amicus Counsel David P. Lukmire on multiple occasions. He's a bright man. He knows.

B.     <u>Breach of Contract</u>.

Plaintiff reiterates all that precedes and reminds Defendants, the Court and the entire free World that Defendant must not enjoy the right to unilaterally prevent people from liking Plaintiff's posts, hide Plaintiff's content in the UK when such content was NOT against policy nor may it simply sit on Plaintiff's requested appeal for two weeks out of a 4-week suspension. That's ridiculous. Plaintiff adhered to the contract so how is it that Facebook can get away with then acting on its own whimsy. Again the essence of the purported Contract is this, from Plaintiff Memorandum in Opp. (Docket 53 at p5).

**********

II.     The Duffy Declaration is Not Dispositive and Actually Helps Plaintiff.

Let's examine the salient portions of the Duffey Declaration that point toward the Retaliatory Breech of Contract here:

**Safety**
We do our best to keep Facebook safe, but we cannot guarantee it. We need your help to do that, which includes the following germane commitments:
   6. You will not bully, intimidate, or harass any user.
   7. You will not post content that is hateful, threatening, pornographic, or that contains nudity or graphic or gratuitous violence.

**Protecting Other People's Rights**
We respect other people's rights, and expect you to do the same.
   1. You will not post content or take any action on Facebook that infringes or violates someone else's rights or otherwise violates the law.
   2. We can remove any content or information you post on Facebook if we believe that it violates this Statement.

III.     Conclusion.

The writing is on the wall folks. The District of Columbia lawyers know it. Plaintiff knows it. Defendant and Counsel for Defendant know it. This Court knows it. As Bob Dylan would (and did) say:

1. The Times they are A-Changing.
2. I Ain't Working on Maggie's Farm no more.

The Eric Goldmans and other CDA absolutists be dammed. These white men of privilege and their silicon valley brothers (and a few sisters) own and control the means of social discourse not only in this Country but throughout the World. Should this Court continue to allow Facebook's wanton abuses of privilege then that is on the Court's conscience, but it will never be on Plaintiff's: He is going to continue fighting this War until is it won, and it most assuredly will be won. This Court has a unique opportunity to stand for what is right… or it can provide negative reinforcement for all that is wrong. Respectfully submitted,

_____
Christopher King, J.D.